IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

**ANTONIO MOORE,**             :        Case No. C-1-02-430

    **Plaintiff,**              :

v.                             :        Judge Weber

**KROGER COMPANY, et. al.,**   :

    **Defendants**              : _____

                                                      :

**MOTION OF DEFENDANT, THE KROGER COMPANY,
FOR SUMMARY JUDGMENT**

    Comes now Defendant, The Kroger Company, and moves this Court for summary judgment in its favor pursuant to Rule 56 of the Federal Rules of Civil Procedure. This Motion is based upon the pleadings, the depositions of Plaintiff, Defendants, Marcus McNeil, and Michael Schulte, applicable law, and the attached memorandum, all of which demonstrate that there is no genuine issue as to any material fact and Defendant, The Kroger Company, is entitled to judgment in its favor against Plaintiff on all issues as a matter of law.

                                                     S/ *Lawrence E. Barbiere*
                                                     Lawrence E. Barbiere (0027106)
                                                     Attorney for Defendant,
                                                     The Kroger Company
                                                   **SCHROEDER, MAUNDRELL, BARBIERE & POWERS**
                                                   11935 Mason Road, Suite 110
                                                   Cincinnati, OH 45249-3703
                                                   (513)583-4210
                                                   (513)583-4203 (fax)
                                                   lbarbiere@schroederlaw.com

**MEMORANDUM**

I.  **INTRODUCTION**

Plaintiff filed this suit against The Kroger Company ("Kroger"), Marcus McNeil, Michael Schulte, and Dale Bley, Cincinnati police officers, arising from an incident which occurred on June 21, 2001 in the parking lot of a Kroger store located at 477 Kenard Avenue, Cincinnati, Ohio. On that date, Plaintiff was asked by officer McNeil to remove his truck from a parking spot near the door of the Kroger store marked with a sign "Reserved for Police Cars." Plaintiff refused to do so; a crowd gathered and began shouting; and officer McNeil dispatched the police department for assistance. Officers Schulte and Bley came to assist and eventually Plaintiff was arrested on a charge of disorderly conduct. Plaintiff asserts claims under **42 U.S.C. § 1983,** for alleged deprivation of constitutional rights; under **42 U.S.C. § 1985**, for conspiracy to deprive Plaintiff of his constitutional rights; and under **42 U.S.C. § 1988** for attorney's fees. He asserts a First Amendment retaliation claim. Plaintiff also asserts state law claims for malicious prosecution, arrest without probable cause, retaliation, intentional infliction of emotional distress, false imprisonment, tortious interference with business relations, negligent supervision and for punitive damages.

Defendant Kroger moves for summary judgment on all claims of Plaintiff. Kroger is not a state actor and cannot be liable pursuant to **42 U.S.C. §§ 1983, 1985** or **1988.** Defendants Schulte and Bley were not employees of Kroger. Defendant McNeil was a uniformed, off-duty Cincinnati police officer employed to provide security at the Kroger location. Kroger is not responsible for the actions of Defendant McNeil in connection with the arrest of Plaintiff because he was acting solely within the scope of his authority as a police officer of the City of Cincinnati in connection therewith. Additionally, Plaintiff has failed to make a showing sufficient to establish the existence of the elements necessary to establish his case with respect to each federal and state claim. Finally, if the Court grants Kroger's Motion for Summary Judgment as to Plaintiff's federal

claims, all claims pursuant to state law should be dismissed without prejudice. If the court decides to exercise jurisdiction over the state law claims, Kroger is entitled to summary judgment on those claims as well.

## II.    STATEMENT OF FACTS

On June 21, 2001, Plaintiff went to the Kroger store located on Kenard Street off Mitchell Avenue in Cincinnati, Ohio for the purpose of making a deposit at the Fifth/Third Bank located inside the store. (Compl. ¶ 11). Plaintiff regularly visited this Kroger store; had parked in the spot marked "Reserved for Police Cars" on a few occasions; and had been told once by officer McNeil, and once by another officer, that he should not park in that spot. (Pltf. dep. p. 16, 23, 26). On the prior occasion when officer McNeil told him he was not supposed to park there Plaintiff simply responded "Okay". (Pltf. dep. p. 27). On the other occasion, Plaintiff did not respond to the officer who told him that the spot was for police officers. (Pltf. dep. p. 26). In any event, Plaintiff's car was not towed, and he was not arrested, on those prior occasions. Plaintiff concedes that there is nothing written on any of the signs around the parking spot indicating that if someone parked there they would be towed or arrested. (Pltf. dep. p. 21-22).

On June 21, 2001, Plaintiff again pulled his truck into a space marked with a sign that said "Reserved for Police Cars." (Compl. ¶ 18-19). Plaintiff did not comply with McNeil's request to move his vehicle. (Pltf. dep. p. 40-41). There were no Kroger employees outside the store in the area when Plaintiff was told to move his truck. (Pltf. dep. p. 40). There is no contention by Plaintiff that any Kroger employee directed McNeil to tell Plaintiff to move his truck. (Pltf. dep. p. 42). A dialog ensued between Plaintiff and officer McNeil which lasted a few minutes. (Pltf. dep. p. 43; McNeil dep. p. 46). The truck was never moved.

At the time, McNeil had been a police officer with the City of Cincinnati for about three years, and had worked Kroger details for approximately a year. (McNeil dep. p. 6; 19). Prior to

3

becoming a Cincinnati police officer, he received 22 weeks of training in all aspects of law enforcement, including field training, classroom training, etc. (McNeil dep. p. 9). Part of that training included training on how to effectuate an arrest, including training in the law of probable cause. (McNeil dep. p. 9-10). McNeil also received training related to citations for non-moving violations. (McNeil dep. p. 11-12).

On June 21, 2001, McNeil was working a detail assignment at Kroger. A detail assignment is off-duty work that a Cincinnati police officer does for an establishment that requires a police officer presence. (McNeil dep. p. 13). Those officers assigned to such details are employed by the establishment as the result of a sign-up at the police district. They are selected by the detail co-ordinator of the Cincinnati Police Department. (McNeil dep. p. 14-15). As an off-duty officer doing detail work for Kroger, McNeil's duties consisted of basic police patrol work. (McNeil dep. p. 17-18). McNeil testified in his deposition:

> Q.  Okay. Were you told anything about rules and regulations or anything like that that you needed to follow while you were doing detail work for the Kroger Company?
>
> A.  No. Just, just have a presence while you were there, basically.
> (McNeil dep. p. 22, l. 4-9)

McNeil never received a Kroger employee manual instructing him in any rules and regulations of Kroger. (McNeil dep. p. 27).

McNeil was in full Cincinnati police uniform consisting of a duty weapon, night stick and radio. (McNeil dep. p. 41). McNeil asked Plaintiff to move his vehicle several times. (McNeil dep. p. 46). A crowd of over 10 people gathered and began shouting in a profane way that Plaintiff did not have to abide by McNeil's request. (McNeil dep. p. 47). The crowd was located behind McNeil. (McNeil dep. p. 47). Eventually, McNeil called dispatch for backup. (Pltf. dep. p. 46; McNeil dep. p. 46). There was no manger or other employee from the administration of Kroger in the vicinity and McNeil never attempted to contact anyone from Kroger about the incident. (McNeil dep. p. 45-

46).

Plaintiff admitted that McNeil never put him in handcuffs and did not physically hold on to him. Nevertheless, Plaintiff did not attempt to walk into the store. (Pltf. dep. p. 46-47; McNeil dep. p. 48). McNeil did not tell Plaintiff he could not go inside the Kroger store; and McNeil never tried to stop him in any way from doing so. (McNeil dep. p. 48).

Officer McNeil testified that on past occasions when he told Plaintiff that he was not allowed to park in the space marked "Reserved for Police Cars", Plaintiff merely went on with his business. (McNeil dep. p. 50-51). McNeil was disturbed that on this occasion Plaintiff chose to stay out in the parking lot "and have a confrontation with me". (McNeil dep. p. 50). Additionally, McNeil became concerned when the crowd began to gather and "the first outburst came from behind me." (McNeil dep. p. 53). McNeil concluded that it was the actions of Plaintiff that were causing the crowd behind him to get involved. (McNeil dep. p. 54). As a result, McNeil asked for backup from the dispatcher reporting that he had a "disorderly subject". (McNeil dep. p . 55). In response, Defendants Schulte and Bley eventually arrived in separate vehicles. (McNeil dep. p. 55).

Immediately after his dispatch for backup, McNeil told Plaintiff that he was going to be arrested for disorderly conduct. (McNeil dep. p. 58).[1] When Schulte arrived at the scene, McNeil advised him about Plaintiff's actions. (McNeil dep. p. 60). Schulte told McNeil Plaintiff could be charged with disorderly conduct. (Schulte dep. p. 22). Schulte asked Plaintiff to move his truck. (Schulte dep. p. 23, l. 12-20). Plaintiff seemed to understand that if he moved the truck he would neither be arrested nor given a ticket. Plaintiff testified:

Q. Was your impression that if you moved the truck, you would not be arrested and not be given a ticket or what?

A. That's what they said, if I moved the truck – when I was in the back

---

[1] Plaintiff's testimony was that it was immediately before the dispatch he was told by McNeil "You're going to jail." (Pltf. dep. p. 46).

5

>   of the police car, they said, "Just move the truck, and we won't have
>   to do this." (Pltf. dep. p. 48, l. 18-24).

Nevertheless, he said "If you could, give me a ticket or tow it." (Pltf. dep. p. 48, l. 12-13, 18-24). By this point it was after 8 o'clock so and the bank was closed. (Pltf. dep. p. 48, l. 14-16). Even though the bank was closed, and he would no longer be able to make his deposit, Plaintiff continued to refuse to move the truck. (Pltf. dep. p. 50, l. 8-18). Defendant Schulte testified in his deposition as follows:

>   Q.   Okay. So if Mr. Moore would have then moved his vehicle he could
>        have just driven off?
>
>   A.   He didn't have to leave, he can go into Kroger's, that's not up to me.
>        Like I said, we were there because of Officer McNeil and I was trying
>        to quell the situation. Obviously there's a sign there that says you
>        can't park there, you know. We're not going to tow his car, at least
>        I wasn't gonna tow his car, but he's in violation of a sign, you know,
>        and – you know his conduct is, you know, not acceptable, I'm just
>        like, you know, why don't you just help us out here a little bit, move
>        your truck  calm down, go do what you got to do and go home.
>        (Schulte dep. p. 26, l. 3-16).

Lieutenant Bley was a supervisor. (Pltf. dep. p. 48, l. 5-6). By the time Bley arrived, Plaintiff had been handcuffed and placed in the back of Defendant Schulte's vehicle. (Pltf. dep. p. 56). Plaintiff was not injured in any way in the process of being handcuffed. (Pltf. dep. p. 55).

Bley also made an offer to Plaintiff to resolve the matter without an arrest if he would simply move his truck. Plaintiff testified:

>   Q.   And what did Lieutenant Bley say to you?
>
>   A.   "Just move the truck, and this will all go away." (Pltf. dep. p. 57, l.
>        3-6).

In his testimony, Plaintiff refused to admit that Bley's offer that "this will all go away" meant he would be free to go home. He testified:

>   Q.   Well, what was your understanding of what he meant by, "This will
>        all go away"?

> A. I didn't take it any way.
>
> Q. You didn't.
>
> A. No.
>
> Q. It didn't occur to you that that meant you would be free to go home without being processed or arrested?
>
> A. It may have, I don't, why I was in the cruiser for parking in that spot.
> (Pltf. dep. p. 58, l. 13-24).

Essentially, at that point, it appears Plaintiff wanted the arrest to continue. (Pltf. dep. p. 59, l. 18. p. 60, l. 24).

Plaintiff was arrested for disorderly conduct, not for parking in the spot designated for police cars only. (McNeil dep. p. 67; Schulte dep. p. 33-34; Exh. 2). Officer McNeil did not ask anyone from Kroger to sign a complaint against Plaintiff or if they wanted to have his vehicle towed. (McNeil dep. p. 63, l. 14-23). There was no Kroger manager outside the store during this incident with whom he spoke about the incident. (McNeil dep. p. 63-64). Officer Schulte testified that no one from Kroger was present or directed him to do anything with respect to Plaintiff on the day in question. (Schulte dep. p. 50). Further, it was only Plaintiff's behavior that was at issue when he made the arrest, not the police only parking sign. (Schulte dep. p. 50).

### III.   ARGUMENT

#### A.   DEFENDANT IS ENTITLED TO JUDGMENT AS A MATTER OF LAW ON PLAINTIFF'S FEDERAL LAW CLAIMS.

In ***Celotex Corp. v. Catrett* 477 U.S. 317 (1986),** the Supreme Court held "the plain language of Rule 56(c) mandates the entry of Summary Judgment . . . against the party who fails to make a showing sufficient to establish the existence an element of that party's case and on which that party will bear the burden of proof at trial." **477 U.S. at 322-323.** The Court held that there is no burden "on the party moving for Summary Judgment to produce evidence showing the absence of a genuine issue of fact, even with respect to an issue on which the non-moving party

bears the burden." **477 U.S. at 325**. Instead, "the burden on the party moving may be discharged by 'showing' . . . that there is an absence of evidence to support the non-moving party's case." **477 U.S. at 325**. Plaintiff asserts constitutional claims pursuant to **42 U.S.C. § 1983** alleging violations of the First, Fourth and Fourteenth Amendments against Defendant Kroger. He also asserts a claim pursuant to **42 U.S.C. §1985** alleging a conspiracy to deprive Plaintiff of his constitutional rights. Plaintiff also seeks attorneys fees under **42 U.S.C. § 1988**. For the reasons set forth below, Kroger submits there is an absence of evidence to support a claim that the Kroger Company is a state actor subject to liability pursuant to **42 U.S.C. § 1983, 1985**, and **1988** and, therefore, it is entitled to judgment as a matter of law on all Plaintiff's federal claims.

> **1.    The Kroger Company is not a state actor and cannot be liable pursuant to *42 U.S.C. § 1983, 1985* or *1988.***

The provisions of **42 U.S.C. §1983** apply in general only to persons who 1) both deprive others of a right secured by the Constitution or laws of the United States and 2) act under color of a state statute, ordinance, regulation, custom or usage. **Adickes v. S.H. Kress & Co., 398 U.S. 144, 150, 26 L.Ed.2d 142, 90 S.Ct. 1598 (1970)**. When a constitutional claim is asserted against a private party, to be classified as state actor under color of law, it must be jointly engaged with state officials in the conduct allegedly violating the federal right. **Carey v. Continental Airlines, Inc., 823 F.2d 1402 (10th Cir. 1987)**. In order to prove liability pursuant to **42 U.S.C. §1983** against private retailers, the plaintiff must prove a preconceived plan to arrest the persons without any independent investigation by the officer. ***Morgan v. City of DeSoto, Texas*, 900 F.2d 811 (5th Cir. 1990);** and **Syms v. Jefferson Downs Racing Assn., 778 F.2d 1068, 1079 (5th Cir. 1985).**

In the case at bar, Kroger was not a state actor. There is no evidence that any employee of Kroger had any role whatsoever in the decision of Defendant Cincinnati police officers McNeil, Schulte and Bley to arrest Plaintiff for disorderly conduct. Plaintiff admitted he did not see any

Kroger employee outside the store in the area at the time that he first confronted officer McNeil when McNeil asked him to move his truck. (Pltf. dep. p. 40). None of officers McNeil, Schulte, nor Bley were directed by, or spoke with, any Kroger employee about the incident involving Plaintiff at any time.

McNeil was working a police detail as an off-duty officer for Kroger at the time of the incident pursuant to an arrangement between Kroger and the City of Cincinnati Police Department. It is undisputed that McNeil was a City of Cincinnati police officer who had received extensive training for that position and in the laws of arrest, search and seizure. It is undisputed that Plaintiff was arrested for a violation of R.C. §2917.11(A), for disorderly conduct. (Compl. ¶ 33). It is undisputed that officer McNeil, the only one of the three officers working a police detail at Kroger at the time, arrested Plaintiff in his capacity as a Cincinnati police officer not as a security guard on detail for Kroger. (McNeil dep. p. 77). His arrest was based upon his Cincinnati police officer training and experience and Plaintiff's actions. (McNeil dep. p. 77). He used his independent judgment and was not following any orders or suggestions by any Kroger employee at the time. (McNeil dep. p. 77).

Kroger submits that all of the actions alleged by Plaintiff upon which he bases his claims against Kroger, were solely within the scope and authority of Defendant McNeil as a Cincinnati police officer. None of the foregoing actions upon which Plaintiff bases his claims resulted from any order or suggestion by any Kroger employee. Therefore, as a matter of law Kroger is not vicariously liable for such actions.

The decisions of the First District Court of Appeals in **Evans v. Smith, 97 Ohio App.3d 59 (1994),** and the Second District Court of Appeals in **Cooper v. City of Dayton, 120 Ohio App.3d 34 (1997),** make it clear that pursuant to settled Ohio law, Kroger is entitled to summary judgment in its favor based upon the undisputed facts herein. In **Evans**, defendant Smith was a Cincinnati

police officer who was employed by The Kroger Company as a security guard. The court ruled that when a security officer acts solely in his capacity as a Cincinnati police officer, there are no circumstances under which Kroger could be held vicariously liable for his conduct. **97 Ohio App.3d at 66**. The court further held that even if the security officer was acting in a dual capacity as an employee of Kroger and as a Cincinnati police officer when an arrest is made, Kroger could be held vicariously liable for tortious conduct only if the officer "was acting outside the public duties of a police officer and if his conduct was within the scope of his employment by Kroger and solely for the benefit of Kroger or was otherwise authorized or ratified by Kroger." **97 Ohio App.3d at 66**.

Plaintiff has presented no evidence that Officer McNeil was acting outside his public duties as a police officer. He has presented no evidence that he was acting other than solely in his capacity as a Cincinnati police officer when he engaged in the conduct resulting in the arrest of Plaintiff. That conduct consisted of making a decision to arrest Plaintiff for disorderly conduct based upon the actions of Plaintiff, as McNeil viewed them, in his capacity as a Cincinnati police officer after McNeil asked Plaintiff to move his vehicle. Based upon the undisputed evidence, Kroger cannot be held vicariously liable for any of the actions of Defendant McNeil.

In ***Cooper,* supra**, the Second District of Ohio cited **Evans** with approval in its analysis of the capacity in which a police officer acting as a security officer is acting in making an arrest. In **Cooper**, the plaintiff, a customer arrested by an off duty police officer acting as a security guard at Kroger, made state law tort claims as well as a claim under **42 U.S.C. § 1983**. In finding that the defendant City improperly relied upon **Evans** in its defense, the court noted that an arrest could only be made pursuant to the authority of a police officer and said as follows:

> . . . Furthermore, the court's reasoning supports our belief that Cooper necessarily exercised police authority and acted as a city employee when he displayed his badge, drew his revolver, and ordered the suspects to stop. Under such circumstances, we must conclude that Cooper attempted to arrest the suspects –

something the *Evans* court acknowledged only a police officer lawfully could do. 120 Ohio App.3d at 45.

The actions of Defendant McNeil, as well as Defendants Schulte and Bley who had been dispatched to the scene upon the request by McNeil for assistance, were necessarily and solely an exercise of police authority to arrest an individual who they determined was in violation of R.C. §2917.11(A) for disorderly conduct. Under *Evans* and *Cooper*, Kroger cannot be held liable for the actions of Defendant McNeil since he was acting within the scope of his public duties as a police officer.

Since there is no evidence that Defendants McNeil, Schulte, and Bley "acted in concert" with any employee of Kroger, the decision by those officers to arrest Plaintiff was made solely by the police, independent of Kroger, and Kroger cannot be held liable under **42 U.S.C. § 1983** since it was not a state actor and did not act under color of law.

> 2.   **Plaintiff has failed to present evidence of a conspiracy to interfere with civil rights required to state a claim under *42 U.S.C. § 1985*.**

Similarly, Kroger cannot be held liable pursuant to **42 U.S.C. § 1985** on the basis of a conspiracy to interfere with Plaintiff's constitutional rights. In **Hooks v. Hooks, 771 F.2d 935 (6th Cir. 1985)**, the Sixth Circuit set forth the most basic element for proving civil conspiracy as follows:

> A civil conspiracy is an agreement between two or more persons to injure another by unlawful action . . . **771 F.2d at 943-944**.

In **Hehemann v. City of Cincinnati***,* **1994 WL 714367 (6th Cir. 1994)** (copy attached), the Sixth Circuit noted that the absence of "one iota of evidence of a 'meeting of the minds'" was fatal to a claim of a conspiracy to deprive a plaintiff of his civil rights. **1994 WL 714387 at \*3**. Since there is no evidence of any communication between any of Defendant police officers McNeil, Schulte or Bley with any employee of Kroger at any time, there is and can be no evidence of a prior agreement in the instant case. To the contrary, the undisputed evidence is that all three Defendant

11

Cincinnati police officers, acting solely in their capacity as Cincinnati police officers, made a determination based solely upon their own investigation and observations, that Plaintiff's conduct was sufficient under R.C. §2917.11(A) to constitute disorderly conduct and arrested him for that reason. The undisputed evidence is that no one from Kroger participated in any way in the decision of Defendants McNeil, Schulte and Bley acting solely in their capacity as Cincinnati police officers to make the arrest on the named grounds. As a result, Plaintiff cannot maintain an action pursuant to **42 U.S.C. § 1985**.

        **3.**      **Plaintiff has no claim under 42 U.S.C. § 1988.**

Since Plaintiff cannot maintain actions pursuant to either **42 U.S.C. § 1983** or **42 U.S.C. § 1985**, his claim for attorney's fees pursuant to **42 U.S.C. § 1988** must also fail.

**B.    PLAINTIFF'S STATE LAW CLAIMS SHOULD BE DISMISSED FOR LACK OF SUBJECT MATTER JURISDICTION.**

Once Plaintiff's federal claims under **42 U.S.C. § 1983, § 1985** and **§ 1988** are dismissed, there is no basis for subject matter jurisdiction over Plaintiff's state law claims. The Sixth Circuit has held "where a District Court exercises its jurisdiction over state law claims solely by virtue of pendent jurisdiction and the federal claims are dismissed prior to trial, the state law claims should ordinarily by dismissed without reaching their merits." **Wolotsky v. Huhn**, **960 F.2d 1331, 1338 (6th Cir. 1992).** Therefore, Plaintiff's state law claims for malicious prosecution, intentional infliction of emotional distress, false arrest, false imprisonment, tortious interference with business relations, retaliation, negligent supervision and vicarious liability should be dismissed for lack of jurisdiction.

**C.    PLAINTIFF HAS NOT PRESENTED SUFFICIENT EVIDENCE TO SUSTAIN A CLAIM AGAINST THE KROGER COMPANY FOR MALICIOUS PROSECUTION.**

Suits for malicious prosecution are not favored by the courts because they act as a restraint upon the right to resort to the courts for lawful redress. **Woyczynski v. Wolf, 11 Ohio App.3d**

**226, 227 (1983), 464 N.E.2d 612, 614; Trussel v. General Motors Corp., 53 Ohio St.3d 142, 146, 559 (1990), N.E.2d 732, 736.** The elements of the tort of malicious prosecution are: (1) malice in instituting or continuing the prosecution, (2) lack of probable cause, and (3) termination of the prosecution in favor of the accused. **Trussel v. General Motors Corp., supra; and Criss v. Springfield Twp., 56 Ohio St.3d 82, 564 N.E. 2d 440 (1990).** The failure to satisfy any of the elements of a claim for malicious prosecution will result in a finding in favor of the defendants. **Delk v. Colonial Finance Co.,118 Ohio App. 451, 194 N.E. 2d 885 (1963).**

There is no evidence that Kroger instituted any proceedings against Plaintiff with malice. First, there is no evidence that any employee of Kroger participated in any way in the decision of Defendant police officers McNeil, Schulte or Bley to arrest Plaintiff for disorderly conduct.[2] No Kroger employee was outside the store on the premises at the time that the incident occurred. No Kroger employee was consulted. No Kroger employee gave any input whatsoever into the decision to arrest Plaintiff. Further, no Kroger employee signed a criminal complaint against Plaintiff or participated in any way in his arrest by police officer Defendants, McNeil, Schulte or Bley. Second, no evidence exists that Kroger acted with the requisite malice to support a claim for malicious prosecution. In a claim for malicious prosecution, malice has been defined as "an improper purpose, or any purpose other than the legitimate interest of bringing a defender to justice." **Criss v. Springfield Township, 56 Ohio St.3d 82, 85 (1990); Garza v. Clarion Hotel, Inc., 119 Ohio App.3d 478 (1st Dist. 1997).** In his deposition, Plaintiff admitted that he had no evidence that Defendant McNeil, or the other police officers, were directed to make the arrest by Kroger or of any ill will or malice on the part of any Kroger employee toward him. (Pltf. dep. p. 20-21). As a result, Plaintiff cannot prevail on his claim for malicious prosecution.

---

[2] For the reasons set forth in preceding sections of this Memorandum, Kroger is not vicariously liable for the actions of police officer McNeil since those actions were taken solely in his capacity as a Cincinnati police officer.

### D. PLAINTIFF HAS FAILED TO PRESENT EVIDENCE SUFFICIENT TO SUSTAIN A CLAIM FOR FALSE IMPRISONMENT.

Plaintiff cannot prevail on a claim for false imprisonment against Kroger because neither Kroger, nor any of its employees, acting in the capacity of an employee of Kroger, arrested or detained Plaintiff. Assuming for purposes of argument only that Defendant McNeil improperly arrested or detained Plaintiff, it was solely in his capacity as a Cincinnati police officer which ultimately led to the arrest of Plaintiff for disorderly conduct under R.C. §2917.11(A). Based upon **Evans, supra,** Kroger may not be held vicariously liable for the actions of an off-duty police officer acting as a security officer where he was acting within the scope of his duties as a police officer. **97 Ohio App.3d at 66**.

The essence of the tort of false imprisonment is the deprivation of a plaintiff of his or her liberty without justification by another private individual. **Garza v. Clarion Hotel, Inc., supra, at 483**. As in **Garza**, there simply is no evidence that any employee of Kroger unlawfully restrained the liberty of Plaintiff. Further, until Plaintiff was placed under arrest for disorderly conduct under R.C. §2917.11(A), there is no evidence that he was restrained in any way. To the contrary, the only evidence is that Plaintiff could have moved his truck and left at any time; he could have gone into the Kroger store at any time whether or not he moved his truck as he had done in the past when he parked in the "Police Cars Only" spot; and neither officer McNeil nor the other police officers restrained him physically or in any other way from doing so until they were compelled to arrest him for disorderly conduct. Therefore, Plaintiff cannot produce evidence sufficient to establish a claim for false imprisonment and Kroger is entitled to summary judgment with respect to such claim.

### E. PLAINTIFF HAS FAILED TO PRESENT EVIDENCE SUFFICIENT TO ESTABLISH A CLAIM OF INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS.

In **Yeager v. Local Union 20**, 6 Ohio St.3d 369 (1983), the Ohio Supreme Court set forth the elements of the tort of intentional infliction of emotional distress as follows:

> One who by extreme and outrageous conduct intentionally or recklessly causes severe emotional distress to another is subject to liability for such emotional distress, and if bodily harm to the other results from it . . .
>
> It has not been enough if the defendant has acted with an intent which is tortuous or even criminal, or that he has intended to inflict emotional distress, or even if his conduct has been characterized by 'malice' or a degree of aggravation which would entitle the plaintiff to punitive damages for another tort. Liability has been found only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized society. **6 Ohio St.3d at 374-375.**

In the case at bar, even if the actions of officer McNeil were attributable to Kroger, they were not so extreme or outrageous as to rise to the tort of intentional infliction of emotional distress. To the contrary, the evidence is that Officer McNeil acted in a reasonable manner and made every effort not to arrest Plaintiff or charge him with a crime. Further, as previously indicated, Officer McNeil was acting solely in his capacity as a City of Cincinnati police officer, and not as an employee of Kroger, at the time he, along with Defendant police officers Schulte and Bley, arrested Plaintiff for disorderly conduct. Therefore, Kroger is not vicariously liable for such actions, in any event. Accordingly, since no employee of Kroger acting in such capacity took any action against Plaintiff, and since the actions of Defendant McNeil were not sufficient to establish the tort of intentional infliction of emotional distress as a matter of law, Kroger is entitled to Summary Judgment with respect to this claim.

    **F.    PLAINTIFF HAS FAILED TO PRESENT EVIDENCE SUFFICIENT TO SUSTAIN A CLAIM AGAINST KROGER FOR NEGLIGENT SUPERVISION.**

Plaintiff claims that Kroger is liable to Plaintiff based on its failure to "properly educate and supervise the special duty officer" involved in the arrest of Plaintiff. (Compl. ¶ 79). First, it is undisputed that Defendant officer McNeil, who worked a special police detail as a uniformed officer on June 21, 2001, had been a Cincinnati police officer for several years and received extensive training from the police department in the laws of arrest, search and seizure. (McNeil dep. p. 9-10).

15

Accordingly, it is undisputed that McNeil was a well trained police officer. Second, Plaintiff has presented no evidence to support his allegation that Defendant police officer McNeil was improperly trained or supervised. The only evidence is that McNeil was adequately trained as a Cincinnati police officer. In **Atkins v. Chudowsky, 2001 WL 1339008 (9th Dist. 2001)** (copy attached), the court sustained the granting of summary judgment against the plaintiff on a claim for failure to adequately train a security guard where the plaintiff failed to present any evidence of inadequate training. In the instant case, the only evidence is that Defendant McNeil was a fully trained Cincinnati police officer. Plaintiff has presented no evidence in support of his claim of inadequate training. Since Plaintiff may not rest merely upon "unsupported allegations in the pleadings," there is no genuine issue of material fact with respect to his claim of failure to train or supervise and Kroger is entitled to judgment as a matter of law. **Harless v. Willis Day Warehousing Co., 54 Ohio St.2d 64, 66 (1978)**.

    **G.    PLAINTIFF HAS NOT PRESENTED EVIDENCE SUFFICIENT TO SUSTAIN A CLAIM AGAINST KROGER ON HIS CLAIM FOR VICARIOUS LIABILITY.**

In paragraphs 86 through 88 of the Complaint, Plaintiff asserts a claim for "vicarious liability" apparently on the basis of the actions of Defendants Schulte "as an agent of Defendant Kroger." (Compl. ¶ 87). It is undisputed that Defendant Schulte was a Cincinnati police officer. There is no contention that he was working for Kroger as a uniformed off-duty officer providing security as part of a police detail on June 21, 2001. Vicarious liability can be found only when parties possess a special principal-agent relationship. A principal agent relationship exists only when a party retains the right to control the actions of its agent and those actions are directed toward the attainment of an objective which the former party seeks. **Hanson v. Kynast, 24 Ohio St.3d 171 (1986).** Defendant police officer Schulte was clearly not the agent of Kroger. He was a Cincinnati police officer. He responded to the scene at Kroger on the night in question as a result of a request for

assistance by another Cincinnati police officer. And he was not employed in any capacity by Kroger. Therefore, Kroger had no control over his actions.

Additionally, to the extent that Plaintiff is attempting to assert a claim for vicarious liability on the basis of any action by Defendant McNeil, based upon the undisputed evidence and for reasons set forth previously in this Memorandum, McNeil was acting solely as a Cincinnati police officer in connection with the events of June 21, 2001 up to and including the arrest of Plaintiff. Since McNeil was acting as a Cincinnati police officer, there is no basis for a vicarious liability claim against Kroger under **Evans v. Smith**, supra, and **Cooper v. City of Dayton**, supra.

### H. PLAINTIFF HAS NOT PRESENTED EVIDENCE SUFFICIENT TO SUSTAIN A CLAIM FOR RETALIATION.

In **Brandeburg v. Housing Authority of Irvine, 253 F.3d 891 (6th Cir. 2001),** the court described the elements necessary for establishing a First Amendment retaliation claim as follows:

> A plaintiff seeking to establish a case of retaliation for free speech protected under the First Amendment must point to evidence sufficient to establish three elements: 1) the plaintiff engaged in constitutionally protected speech; 2) the plaintiff was subjected to adverse action or was deprived of some benefit; and 3) the protected speech was a 'substantial' or a 'motivating factor' in the adverse action. **253 F.3d at 897.**

The first element required for a claim of First Amendment retaliation is a constitutional violation committed by a state actor. **Thaddeus-X v. Blatter, 175 F.3d 378, 386 (6th Cir. 1999).** For all the reasons set forth in section A1 of this Memorandum addressing the basis for Kroger's position that it is not a state actor, and cannot be liable pursuant to **42 U.S.C. § 1983** or **§ 1985**, Plaintiff cannot establish a First Amendment retaliation claim which also requires action by a state actor.

Additionally, there is no evidence that Plaintiff engaged in constitutionally protected speech. There is no evidence in this case that Plaintiff engaged in political speech or any speech which was a matter of "public concern" within the specialized meaning of that phrase as required for a First Amendment retaliation claim. **Connick v. Myers, 461 U.S. 138 (1983).** In this case, if Plaintiff

17

engaged in speech of any nature, it was solely to address his own personal dissatisfaction with the fact that he had been asked to move his truck from the parking space designated for police cars only. In **Brown v. City of Trenton, 867 F.2d 318 (6th Cir. 1989),** the Sixth Circuit made it clear that a matter which addresses the plaintiff's own personal grievance does not satisfy the element of protected speech.

Further, there is no evidence that Plaintiff was subjected to adverse action on the basis of protected speech. Rather, he was arrested solely because of his actions which caused three City of Cincinnati police officers to conclude that he had engaged in disorderly conduct in violation of R.C. §2917.11(A).

In summary, Plaintiff's retaliation claim fails because: 1) Kroger was not a state actor; 2) Plaintiff did not engage in protected speech; 3) there was no adverse action taken against Plaintiff as a result of protected speech and; 4) even if any action by Defendant police officer McNeil were considered to have been retaliation against Plaintiff in the exercise for his right to free speech, Kroger is not vicariously liable therefor since such action was undertaken by Defendant police Officer McNeil solely in his capacity as a City of Cincinnati police officer and not as an employee of Kroger. Therefore, Kroger is entitled to judgment as a matter of law with respect to Plaintiff's claim for retaliation.

### I. PLAINTIFF HAS FAILED TO PRESENT EVIDENCE SUFFICIENT TO SUSTAIN A CLAIM OF FALSE ARREST.

Plaintiff's Count One appears to be a claim for false arrest. To the extent that Plaintiff is asserting a claim under **42 U.S.C. § 1983,** that claim is subject to the defenses that Kroger was not a state actor, and is not subject to vicarious liability for the actions of Defendant McNeil since he acted solely in the scope of a Cincinnati police officer. To the extent that Plaintiff is asserting a state law false arrest claim, Kroger is also not liable as a matter of law for similar reasons since Defendant McNeil, and Defendants Schulte and Bley, who together participated in making the

arrest of Plaintiff for disorderly conduct, acted solely in their capacity as Cincinnati police officers in detaining and arresting Plaintiff. There is no evidence linking Kroger with an unlawful detention of Plaintiff since it is undisputed that all of the actions of Defendant McNeil were in his capacity as a Cincinnati police officer. Therefore, Kroger may not be held liable for this claim.

### J. PLAINTIFF HAS FAILED TO PRESENT EVIDENCE SUFFICIENT TO SUSTAIN A CLAIM OF TORTIOUS INTERFERENCE WITH A BUSINESS RELATIONSHIP.

This claim set forth in Plaintiff's Count Six appears to make a claim solely against Defendant Schulte since it alleges that Defendant Schulte caused Plaintiff to be arrested unlawfully interfering with his conduct of business with Fifth/Third Bank. (Compl. ¶ 74-76). Additionally, Defendant Kroger is not vicariously liable for the actions of any of the Defendant Cincinnati police officers, McNeil, Schulte or Bley, since their actions in causing Plaintiff to be arrested were undertaken solely in their capacity as Cincinnati police officers. Therefore, Defendant Kroger is entitled to judgment as a matter of law on Plaintiff's claim for tortious interference.

### K. PLAINTIFF IS NOT ENTITLED TO PUNITIVE DAMAGES.

There is no evidence of any malice or ill will on the part of Kroger sufficient to support a claim for punitive damages. To the contrary, Plaintiff has admitted that Kroger has no ill will, malice or bad feelings toward him. (Pltf. dep. p. 20-21). Since a claim of punitive damages requires evidence of ill will or malice, Plaintiff's claim herein for punitive damages must fail. **_Columbus Finance, Inc. v. Howard_, 42 Ohio St.2d 178, 183 (1975); _Davis v. Tunison_, 168 Ohio St. 471, 474 (1959)**.

### IV.     CONCLUSION

For all of the foregoing reasons, Defendant, The Kroger Company, is entitled to judgment on all of Plaintiff's claims herein.

Respectfully submitted,

S/ *Lawrence E.  Barbiere*
Lawrence E.  Barbiere (0027106)
Attorney for Defendant
The Kroger Company
**SCHROEDER, MAUNDRELL, BARBIERE & POWERS**
11935 Mason Road, Suite 110
Cincinnati, OH 45249-3703
(513)583-4210
(513)583-4203 (fax)
lbarbiere@schroederlaw.com

### CERTIFICATE OF SERVICE

I hereby certify that on September _____, 2003, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following: Robert E.  Manley, Esq.  and Fanon A.  Rucker, Esq. **Attorneys for Plaintiff**, Manley, Burke, 225 West Court Street, Cincinnati, OH 45202, Thomas Harris, Esq. **Attorney for Defendants, City of Cincinnati, McNeil, Schulte and Bley,** Assistant City Solicitor, City of Cincinnati, 214 City Hall, 801 Plum Street, Cincinnati, OH  45202.

S/ *Lawrence E.  Barbiere*
Lawrence E.  Barbiere, (0027106)
Attorney for Defendant,
The Kroger Company
SCHROEDER, MAUNDRELL, BARBIERE & POWERS
11935 Mason Road, Suite 110
Cincinnati, Ohio 45249
(513) 583-42l0
(513) 583-4203 facsimile
lbarbiere@schroederlaw.com