IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| **ANTONIO MOORE,** | : | Case No. C-1-02-430 |
| Plaintiff, | : | |
| v. | : | Judge Weber |
| **KROGER COMPANY, et. al.,** | : | |
| Defendants | : | |
| | : | |

**PROPOSED FINDINGS OF FACT
AND CONCLUSIONS OF LAW
ON BEHALF OF DEFENDANT THE KROGER COMPANY**

I. **FINDINGS OF FACT**

1. Plaintiff filed this suit against The Kroger Company ("Kroger"), Marcus McNeil, Michael Schulte, and Dale Bley, Cincinnati police officers, arising from an incident which occurred on June 21, 2001 in the parking lot of a Kroger store located at 477 Kenard Avenue, Cincinnati, Ohio.

2. On June 21, 2001, Plaintiff went to a Kroger store for the purpose of making a deposit at the Fifth/Third Bank located inside the store. (Compl. ¶ 11).

3. Plaintiff regularly visited this Kroger store; had parked in the spot marked "Reserved for Police Cars" on prior occasions and had been told once by officer McNeil, and once by another officer, that he should not park in that spot. (Pltf. dep. p. 16, 23, 26). On those prior occasions, no discussions ensued with the officer and Plaintiff was not arrested nor was his truck towed. (Pltf. dep. p. 26-27).

4. There is nothing written on any of the signs around the parking spot

indicating that if someone parked there they would be towed or arrested. (Pltf. dep. p. 21-22).

    5.    On June 21, 2001, McNeil was working a detail assignment at Kroger which is off-duty work that a Cincinnati police officer does for an establishment that requires a police officer presence. (McNeil dep. p. 13). Officers assigned to such details are employed by the establishment, as the result of a sign-up at the police district. They are selected by the detail co-ordinator of the Cincinnati Police Department. (McNeil dep. p. 14-15). As an off-duty officer doing detail work for Kroger, McNeil's duties consisted of basic police patrol work. (McNeil dep. p. 17-18). McNeil was not told anything about rules and regulations of Kroger while doing detail work for the Kroger Company. McNeil never received a Kroger employee manual instructing him in any rules and regulations of Kroger. (McNeil dep. p. 27). McNeil was in full Cincinnati police uniform consisting of a duty weapon, night stick and radio. (McNeil dep. p. 41).

    6.    McNeil had been a police officer with the City of Cincinnati for about three years, and had worked Kroger details for approximately a year, at the time of the incident. (McNeil dep. p. 6; 19). Prior to becoming a Cincinnati police officer, he received 22 weeks of training in all aspects of law enforcement, including field training, classroom training, etc. (McNeil dep. p. 9). Part of that training included training on how to effectuate an arrest, including training in the law of probable cause. (McNeil dep. p. 9-10). McNeil also received training related to citations for non-moving violations. (McNeil dep. p. 11-12).

    7.    On June 21, 2001, Plaintiff again pulled his truck into a space marked with

a sign that said "Reserved for Police Cars." (Compl. ¶ 18-19). Officer McNeil requested that he move his truck. Plaintiff did not comply with McNeil's request. (Pltf. dep. p. 40-41).

8.  There were no Kroger employees outside the store in the area when Plaintiff was asked to move his truck. (Pltf. dep. p. 40). No Kroger employee directed McNeil to tell Plaintiff to move his truck. (Pltf. dep. p. 42).

9.  A dialog ensued between Plaintiff and officer McNeil which lasted a few minutes. (Pltf. dep. p. 43; McNeil dep. p. 46). The truck was never moved.

10. McNeil asked Plaintiff to move his vehicle several times. (McNeil dep. p. 46). A crowd of over 10 people gathered and began shouting in a profane way that Plaintiff did not have to abide by McNeil's direction. (McNeil dep. p. 47). The crowd was located behind McNeil. (McNeil dep. p. 47). Eventually, McNeil called dispatch for backup. (Pltf. dep. p. 46; McNeil dep. p. 46).

11. McNeil did not put Plaintiff in handcuffs. He did not physically touch or hold on to Plaintiff. Plaintiff never attempted to walk into the store. (Pltf. dep. p. 46-47; McNeil dep. p. 48). McNeil did not tell Plaintiff he could not go inside the Kroger store. McNeil never tried to stop him in any way from doing so. (McNeil dep. p. 48).

12. On prior occasions when he told Plaintiff that he was not allowed to park in the space marked "Reserved for Police Cars", Plaintiff merely went on with his business. (McNeil dep. p. 50-51).

13. McNeil was disturbed that on this occasion Plaintiff chose to stay out in the parking lot and have a confrontation with him. (McNeil dep. p. 50). Additionally, McNeil became concerned when the crowd began to gather and an outburst came from

behind him. (McNeil dep. p. 53).

14. McNeil concluded that it was the actions of Plaintiff that were causing the crowd behind him to get involved. (McNeil dep. p. 54).

15. McNeil asked for backup from the dispatcher reporting that he had a "disorderly subject". Defendants Schulte and Bley eventually responded in separate vehicles. (McNeil dep. p. 55).

16. During the entire incident, there was no manger or other employee from the administration of Kroger in the vicinity and McNeil never attempted to contact anyone from Kroger about the incident. (McNeil dep. p. 45-46).

17. When Schulte arrived at the scene, McNeil advised him about Plaintiff's actions. (McNeil dep. p. 60). Schulte told McNeil Plaintiff could be charged with disorderly conduct. (Schulte dep. p. 22).

18. Schulte asked Plaintiff to move his truck. (Schulte dep. p. 23, l. 12-20).

19. Plaintiff's response indicated that he understood that if he moved the truck he would neither be arrested nor given a ticket. He acknowledged Schulte said, "Just move the truck, and we won't have to do this." (Pltf. dep. p. 48, l. 18-24). Nevertheless, Plaintiff responded "If you could, give me a ticket or tow it." (Pltf. dep. p. 48, l. 12-13, 18-24).

20. By the time officer Bley arrived, Plaintiff had been handcuffed and placed in the back of Defendant Schulte's vehicle. (Pltf. dep. p. 56). Plaintiff was not injured in any way in the process of being handcuffed. (Pltf. dep. p. 55).

21. Bley also made an offer to Plaintiff to resolve the matter without an arrest if he would simply move his truck. (Pltf. dep. p. 57, l. 3-6).

22. Plaintiff was arrested for disorderly conduct. (McNeil dep. p. 67; Schulte dep. p. 33-34, Exh.2).

23. Officer McNeil did not ask anyone from Kroger to sign a complaint against Plaintiff or if they wanted to have his vehicle towed. (McNeil dep. p. 63, l. 14-23). There was no Kroger manager outside the store during this incident with whom he spoke about the incident. (McNeil dep. p. 63-64).

24. No one from Kroger was present or directed officer Schulte to do anything with respect to Plaintiff. (Schulte dep. p. 50).

25. Plaintiff's actions were the basis for the arrest, not the "police only" parking sign. (Schulte dep. p. 50).

## II.  CONCLUSIONS OF LAW

1. The plain language of Rule 56(c) mandates the entry of summary judgment against a party who fails to make a showing sufficient to establish the existence an element of that party's case and on which that party will bear the burden of proof at trial. **Celotex Corp. v. Catrett** **477 U.S. 317, 322 (1986).** There is no burden on the party moving for summary judgment to produce evidence showing the absence of a genuine issue of fact, even with respect to an issue on which the non-moving party bears the burden. **477 U.S. at 325**. The burden on the party moving may be discharged by showing that there is an absence of evidence to support the non-moving party's case. **477 U.S. at 325**.

2. The provisions of **42 U.S.C. §1983** apply only to persons who 1) both deprive others of a right secured by the Constitution or laws of the United States and 2)

act under color of a state statute, ordinance, regulation, custom or usage. **Adickes v. S.H. Kress & Co., 398 U.S. 144, 150, 26 L.Ed.2d 142, 90 S.Ct. 1598 (1970)**.

3. When a constitutional claim is asserted against a private party, to be classified as state actor under color of law, that party must be jointly engaged with state officials in the conduct allegedly violating the federal right. **Carey v. Continental Airlines, Inc., 823 F.2d 1402 (10th Cir. 1987)**.

4. In order to prove liability pursuant to **42 U.S.C. §1983** against a private retailer, the plaintiff must prove a preconceived plan to arrest the persons without any independent investigation by the officer. **Morgan v. City of DeSoto, Texas, 900 F.2d 811 (5th Cir. 1990); and Syms v. Jefferson Downs Racing Assn., 778 F.2d 1068, 1079 (5th Cir. 1985).**

5. Kroger was not a state actor. No employee of Kroger acting in that capacity, had any role whatsoever in the decision of Defendant Cincinnati police officers McNeil, Schulte and Bley to arrest Plaintiff for disorderly conduct.

6. When a security officer acts solely in his capacity as a Cincinnati police officer, Kroger may not be held vicariously liable for his conduct as an employer. **Evans v. Smith, 97 Ohio App.3d 59, 66 (1994)**. Even if the security officer is acting in a dual capacity as an employee of Kroger and as a Cincinnati police officer when an arrest is made, Kroger may be held vicariously liable for tortious conduct only if the officer "was acting outside the public duties of a police officer and if his conduct was within the scope of his employment by Kroger and solely for the benefit of Kroger or was otherwise authorized or ratified by Kroger." **97 Ohio App.3d at 66**.

7. Officer McNeil was acting solely in his capacity as a Cincinnati police officer when he engaged in the conduct resulting in the arrest of Plaintiff. Therefore, Kroger cannot be held vicariously liable for any of the actions of Defendant McNeil. **Cooper v. City of Dayton, 120 Ohio App.3d 34, 45 (1997).**

8. Defendants McNeil, Schulte, and Bley did not act in concert with any employee of Kroger. The decision by those officers to arrest Plaintiff was made solely in their capacity as police officers, independent of Kroger. Kroger cannot be held liable under **42 U.S.C. § 1983** since it was not a state actor under color of law.

9. Kroger cannot be held liable pursuant to **42 U.S.C. § 1985** on the basis of a conspiracy to interfere with Plaintiff's constitutional rights. In **Hooks v. Hooks, 771 F.2d 935, 973 (6th Cir. 1985)**, the Sixth Circuit set forth the most basic element for proving civil conspiracy, namely an agreement between two or more persons to injure another by unlawful action. The absence of one iota of evidence of a meeting of the minds is fatal to a claim of a conspiracy to deprive a plaintiff of his civil rights. **Hehemann v. City of Cincinnati, 1994 WL 714367 (6th Cir. 1994)** (copy attached).

10. No one from Kroger participated in the decision of Defendants McNeil, Schulte and Bley to make the arrest. As a result, Plaintiff cannot maintain an action pursuant to **42 U.S.C. § 1985**.

11. Since Plaintiff cannot maintain actions pursuant to either **42 U.S.C. § 1983** or **42 U.S.C. § 1985**, his claim for attorney's fees pursuant to **42 U.S.C. § 1988** must also fail.

12. Once Plaintiff's federal claims under **42 U.S.C. § 1983** and **42 U.S.C. §**

**1985** are dismissed, there is no basis for subject matter jurisdiction over Plaintiff's state law claims. The Sixth Circuit has held "where a District Court exercises its jurisdiction over state law claims solely by virtue of pendent jurisdiction and the federal claims are dismissed prior to trial, the state law claims should ordinarily by dismissed without reaching their merits." **Wolotsky v. Huhn**, 960 F.2d 1331, 1338 (6th Cir. 1992). Therefore, Plaintiff's state law claims for malicious prosecution, intentional infliction of emotional distress, false arrest, false imprisonment, tortious interference with business relations, retaliation, negligent supervision and vicarious liability should be dismissed for lack of jurisdiction.

13. Suits for malicious prosecution are not favored by the courts because they act as a restraint upon the right to resort to the courts for lawful redress. **Woyczynski v. Wolf**, 11 Ohio App.3d 226, 227, 464 N.E.2d 612, 614 (1983); **Trussel v. General Motors Corp.**, 53 Ohio St.3d 142, 146, 559 N.E.2d 732, 736 (1990).

14. The elements of the tort of malicious prosecution are: (1) malice in instituting or continuing the prosecution, (2) lack of probable cause, and (3) termination of the prosecution in favor of the accused. **Trussel v. General Motors Corp.**, **supra**; and **Criss v. Springfield Twp.**, 56 Ohio St.3d 82, 564 N.E. 2d 440 (1990). The failure to satisfy any of the elements of a claim for malicious prosecution will result in a finding in favor of the defendants. **Delk v. Colonial Finance Co.**, 118 Ohio App. 451, 194 N.E. 2d 885 (1963).

15. Kroger did not institute any proceedings against Plaintiff.

16. In a claim for malicious prosecution, malice requires "an improper

purpose, or any purpose other than the legitimate interest of bringing a defender to justice." **Criss v. Springfield Township, 56 Ohio St.3d 82, 85 (1990)**; **Garza v. Clarion Hotel, Inc., 119 Ohio App.3d 478 (1st Dist. 1997)**. There is no evidence that Kroger acted with the requisite malice to support a claim for malicious prosecution. There is no evidence that Defendant McNeil, or the other police officers, were directed to make the arrest by Kroger or of any ill will or malice on the part of any Kroger employee toward him. (Pltf. dep. p. 20-21). As a result, Plaintiff cannot prevail on his claim for malicious prosecution.

17. The essence of the tort of false imprisonment is the deprivation of a plaintiff of his or her liberty without justification by another private individual. **Garza v. Clarion Hotel, Inc., 119 Ohio App.3d 478, 483 (1997)**. Plaintiff has not presented evidence that any employee of Kroger unlawfully restrained his liberty.

18. Plaintiff has not produced evidence sufficient to establish a claim for false imprisonment and Kroger is entitled to summary judgment with respect to such claim.

19. In **Yeager v. Local Union 20, 6 Ohio St.3d 369 (1983),** the Ohio Supreme Court set forth the elements of the tort of intentional infliction of emotional distress as follows:

> One who by extreme and outrageous conduct intentionally or recklessly causes severe emotional distress to another is subject to liability for such emotional distress . . . Liability has been found only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized society. **6 Ohio St.3d at 374-375.**

20. Even if the actions of officer McNeil were attributable to Kroger, they were not so extreme or outrageous as to rise to the tort of intentional infliction of emotional

9

distress.

21.     Officer McNeil was acting solely in his capacity as a City of Cincinnati police officer, and not as an employee of Kroger, at the time he, along with Defendant police officers Schulte and Bley, arrested Plaintiff for disorderly conduct.  Therefore, Kroger is not vicariously liable for such actions.

22.     Plaintiff has presented no evidence to support his allegation that Defendant police officer McNeil was improperly trained or supervised.  The only evidence is that McNeil was adequately trained as a Cincinnati police officer.  In **Atkins v. Chudowsky**, 2001 WL 1339008 (9th Dist. 2001) (copy attached), the court sustained the granting of summary judgment against the plaintiff on a claim for failure to adequately train a security guard where the plaintiff failed to present any evidence of inadequate training.  Since Plaintiff may not rest merely upon unsupported allegations in the pleadings, there is no genuine issue of material fact with respect to his claim of failure to train or supervise and Kroger is entitled to judgment as a matter of law. **Harless v. Willis Day Warehousing Co.**, 54 Ohio St.2d 64, 66 (1978).

23.     Plaintiff asserts a claim for "vicarious liability" apparently on the basis of the actions of Defendants Schulte "as an agent of Defendant Kroger."  (Compl. ¶ 87). Vicarious liability may be found only when parties possess a special principal-agent relationship.  A principal agent relationship exists only when a party retains the right to control the actions of its agent and those actions are directed toward the attainment of an objective which the former party seeks.  **Hanson v. Kynast**, 24 Ohio St.3d 171 **(1986).**  It is undisputed that Defendant Schulte was a Cincinnati police officer.  There is

10

no contention that he was working for Kroger as a uniformed off-duty officer providing security as part of a police detail on June 21, 2001.  Defendant police officer Schulte was not the agent of Kroger.  Therefore, Kroger had no control over his actions and is not vicariously liable therefor.

24.    McNeil was acting solely as a Cincinnati police officer in connection with the events of June 21, 2001 up to and including the arrest of Plaintiff.  Since McNeil was acting as a Cincinnati police officer, there is no basis for a vicarious liability claim against Kroger under **Evans v.  Smith**, **supra**, and **Cooper v. City of Dayton**, **supra**.

25.    In **Brandeburg v.  Housing Authority of Irvine**, **253 F.3d 891 (6th Cir. 2001),** the court described the elements necessary for establishing a First Amendment retaliation claim as follows:

> A plaintiff seeking to establish a case of retaliation for free speech protected under the First Amendment must point to evidence sufficient to establish three elements: 1) the plaintiff engaged in constitutionally protected speech; 2) the plaintiff was subjected to adverse action or was deprived of some benefit; and 3) the protected speech was a 'substantial' or a 'motivating factor' in the adverse action.  **253 F.3d at 897.**

26.    The first element required for a claim of First Amendment retaliation is a constitutional violation committed by a state actor.  **Thaddeus-X v.  Blatter**, **175 F.3d 378, 386 (6th Cir. 1999).**  Plaintiff cannot establish a First Amendment retaliation claim since Kroger ws not a state actor.

27.    Constitutionally protected speech is political speech or speech on a matter of "public concern" within the specialized meaning of that phrase as required for a First Amendment retaliation claim. **Connick v.  Myers**, **461 U.S. 138 (1983).**  Any speech by Plaintiff was solely to address his own personal dissatisfaction with the fact that he

11

had been asked to move his truck from the parking space designated for police cars only.  A matter which addresses the plaintiff's own personal grievance does not satisfy the element of protected speech.  **Brown v.  City of Trenton**, **867 F.2d 318 (6th Cir. 1989)**.  Plaitniff did not engage in constitutionally protected speech.

28.    Plaintiff was not subjected to adverse action on the basis of protected speech.  He was arrested solely because of his actions which caused three City of Cincinnati police officers to conclude that he had engaged in disorderly conduct in violation of R.C. §2917.11(A).

29.    Kroger is entitled to judgment as a matter of law with respect to Plaintiff's claim for retaliation.

30.    Plaintiff's claim for false arrest under **42 U.S.C. § 1983** is without merit because Kroger was not a state actor.  Kroger is not subject to vicarious liability for the actions of Defendant McNeil since he acted solely in the scope of a Cincinnati police officer.  Kroger is not liable for a state law false arrest claim since Defendants McNeil, Schulte and  Bley, who together participated in making the arrest of Plaintiff for disorderly conduct, acted solely in their capacity as Cincinnati police officers in detaining and arresting Plaintiff.

31.    Kroger is entitled to judgment as a matter of law on Plaintiff's claim for tortious interference because the Defendants McNeil, Schulte and Bley arrested Plaintiff solely in their capacity as Cincinnati police officers.  Kroger is not vicariously liable for their actions.

32.    A claim of punitive damages requires evidence of ill will or malice.  Since

Plaintiff has admitted that Kroger has no ill will, malice or bad feelings toward him, Plaintiff's claim herein for punitive damages must fail. **Columbus Finance, Inc. v. Howard (1975), 42 Ohio St.2d 178, 183; Davis v. Tunison, 168 Ohio St. 471, 474 (1959).**

33.  For all of the foregoing reasons, Defendant, The Kroger Company, is entitled to judgment on all of Plaintiff's claims herein.

                                  Respectfully submitted,

                                  S/ *Lawrence E. Barbiere*
                                  Lawrence E. Barbiere (0027106)
                                  Attorney for Defendant
                                  The Kroger Company
                                  SCHROEDER, MAUNDRELL, BARBIERE & POWERS
                                  11935 Mason Road, Suite 110
                                  Cincinnati, OH 45249-3703
                                  (513)583-4210
                                  (513)583-4203 (fax)
                                  lbarbiere@schroederlaw.com

## **CERTIFICATE OF SERVICE**

      I hereby certify that on September _____, 2003, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following: Robert E. Manley, Esq. and Fanon A. Rucker, Esq. **Attorneys for Plaintiff**, Manley, Burke, 225 West Court Street, Cincinnati, OH 45202; Thomas Harris, Esq. **Attorney for Defendants, City of Cincinnati, McNeil, Schulte and Bley,** Assistant City Solicitor, City of Cincinnati, 214 City Hall, 801 Plum Street, Cincinnati, OH 45202.

                                  S/ *Lawrence E. Barbiere*
                                  Lawrence E. Barbiere, (0027106)
                                  Attorney for Defendant,
                                  The Kroger Company
                                  SCHROEDER, MAUNDRELL, BARBIERE & POWERS
                                  11935 Mason Road, Suite 110
                                  Cincinnati, Ohio 45249
                                  (513) 583-42l0
                                  (513) 583-4203 facsimile
                                  lbarbiere@schroederlaw.com