HEHEMANN v. CITY OF CINCINNATI

45 F.3d 430, 1994 WL 714387 (6th Cir. (Ohio))

45 F.3d 430 (Table)
**Unpublished Disposition**

Page 1

(Cite as: 45 F.3d 430, 1994 WL 714387 (6th Cir.(Ohio)))

▷
NOTICE: THIS IS AN UNPUBLISHED OPINION.

(The Court's decision is referenced in a "Table of Decisions Without Reported Opinions" appearing in the Federal Reporter. Use FI CTA6 Rule 28 and FI CTA6 IOP 206 for rules regarding the citation of unpublished opinions.)

United States Court of Appeals, Sixth Circuit.

John HEHEMANN, Plaintiff-Appellant;
Jennifer C. Young Hehemann, Plaintiff,
v.
CITY OF CINCINNATI, et al., Defendants;
Swallen's, Inc., Defendant-Appellee.

No. 93-3766.

Dec. 21, 1994.

On Appeal from the United States District Court for the Southern District of Ohio, No. 92-00303; Carl B. Rubin, Judge.

S.D.Ohio

AFFIRMED.

Before: JONES and BATCHELDER, Circuit Judges, and HOOD, District Judge. [FN*]

PER CURIAM.

**1 Counsel for plaintiff John Hehemann appeals the district court's imposition of Rule 11 sanctions against her for naming as a defendant in this action Swallen's, Inc. without an objectively reasonable basis in fact to believe Swallen's participated in a conspiracy to deprive Mr. Hehemann of his civil rights. We affirm.

I

In March 1991, the Cincinnati Police Department conducted an internal investigation of several police officers suspected of knowingly purchasing lumber from Swallen's, Inc. below the list or sale price. After the police investigators alerted him to the reported thefts, Frank Rhodes, Swallen's' Director of Corporate Security, confronted employee Dennis Westfelt, who admitted, in the presence of the police, that he had sold lumber to Hehemann and others at reduced prices without authorization and had accepted from Hehemann a $50.00 gratuity. The police asked Rhodes to notify the police department if Hehemann or any other police officer attempted to pick up building materials purchased from Westfelt. Rhodes agreed to do so.

In April, Rhodes twice notified the Cincinnati police department that Cincinnati police officers, including Hehemann, had arrived to retrieve the lumber they had purchased from Westfelt. The police instructed store personnel not to assist or supervise any police officer in loading materials, and the employees complied. Rhodes met with police investigators in a nearby parking lot to observe Hehemann and also permitted one investigator to establish surveillance within the warehouse. Besides Swallen's employees' cooperation when later subpoenaed to testify or to produce records, Swallen's had no further contact with the police department on this matter. Swallen's did not file a criminal complaint against Hehemann or any other officer.

Upon his arrest, Hehemann was suspended without pay and arraigned on felony criminal charges. When the grand jury refused to indict, the police department pursued misdemeanor charges against Hehemann, which did not result in conviction. After a lengthy suspension, Hehemann worked as a communications officer and as a patrolman. On November 18, 1991, he retired from the police force.

On May 18, 1992, Hehemann filed an amended complaint alleging Swallen's, Westfelt, and members of the Cincinnati police department conspired to deny Hehemann procedural due process and terminate his employment, in violation

Copr. © West 2003 No Claim to Orig. U.S. Govt. Works

45 F.3d 430 (Table)    Page 2
**Unpublished Disposition**

**(Cite as: 45 F.3d 430, 1994 WL 714387 (6th Cir.(Ohio)))**

of 42 U.S.C. § 1983. The complaint also alleged malicious prosecution and other state law torts.

On December 11, 1992, the district court ruled on defendants Swallen's and Westfelt's motion for summary judgment. The court could find no facts to support the claim that Swallen's or Westfelt conspired with the police to deprive Officer Hehemann of his right to procedural due process; therefore the court granted summary judgment on the § 1983 claim. The court then dismissed the pendent state claims without prejudice on the basis of lack of jurisdiction. Hehemann thereafter settled the case. On June 4, 1993, the district court granted Swallen's motion for Rule 11 sanctions against Theresa Cunningham, the plaintiff's counsel, in the amount of $500.00. This appeal concerns the Rule 11 sanctions only.

II

**\*\*2** The notice of appeal reads,
> NOW COMES plaintiff, John Hehemann, by and through counsel, and hereby gives notice of appeal to the Court of Appeals for the Sixth Circuit, from the judgment granting attorney fees to defendant Swallen[']s....

Swallen's challenges this court's jurisdiction on the grounds that the notice fails to name the appealing party. Swallen's argues that the only party who may appeal an award of sanctions is the party against whom the sanctions were levied. Because sanctions were imposed on Ms. Cunningham, and not on the plaintiffs themselves, Swallen's contends that the notice is insufficient to confer jurisdiction over the appeal.

The notice of appeal in this case was filed on July 2, 1993. At that time, Federal Rule of Appellate Procedure 3(c) read in part,
> The notice of appeal shall specify the party or parties taking the appeal.... An appeal shall not be dismissed for informality of form or title of the notice of appeal.

Fed.R.App.P. 3(c) (as amended in 1989). If we were to apply this version of Rule 3(c), the question of whether the notice confers jurisdiction would be a substantial one. [FN1] However, we need not apply the version of Rule 3(c) in effect when the notice was filed.

The amendments to Rule 3(c) became effective December 1, 1993, five months after the plaintiffs filed the notice of appeal. The new rule adds,
> An appeal will not be dismissed for informality of form or title of the notice of appeal, *or for failure to name a party whose intent to appeal is otherwise clear from the notice.*

Fed.R.App.P. 3(c) (effective Dec. 1, 1993) (emphasis added). The Advisory Committee Notes clarify this addition: "If a court determines it is objectively clear that a party intended to appeal, there are neither administrative concerns nor fairness concerns that should prevent the appeal from going forward." Fed.R.App.P. 3(c) (Advisory Committee Notes regarding 1993 amendment).

The Sixth Circuit has not published a ruling on the retroactivity of amended Rule 3(c). *See Street v. City of Dearborn Heights,* No. 93-1374, 1994 WL 615672 (6th Cir. Nov. 4, 1994) (applying amended Rule 3(c) retroactively to permit review of sanctions award appealed by client). We find the retroactive application of amended Rule 3(c) to be just and practicable in this case. *See* Order of April 22, 113 S.Ct. Preface 819 (1993). Ms. Cunningham's intent to appeal is clear from the notice because, as Swallen's concedes, she is the only person affected by the ruling appealed from. Thus, this court has jurisdiction over the instant appeal. *See Garcia v. Wash,* 20 F.3d 608, 609-610 (5th Cir.1994) (applying amended rule to permit review of sanctions award where notice names client only); *see also Cleveland v. Porca Co.,* 38 F.3d 289, 294 (7th Cir.1994) (applying Rule 3(c) retroactively); *Dodger's Bar & Grill, Inc. v. Johnson County Board of County Comm'rs,* 32 F.3d 1436, 1440-41 (10th Cir.1994) (same).

II. The Sanctions Award

**\*\*3** The district court awarded Swallen's $500.00 in attorney's fees to be paid by the plaintiff's attorney, Ms. Cunningham, because the complaint against Swallen's had no basis in fact. In determining whether an attorney violated Rule 11, the district court must measure the attorney's conduct by an objective standard of reasonableness under the circumstances. *Century Products, Inc. v. Sutter,* 837 F.2d 247, 250-51 (6th Cir.1988). This court reviews the imposition of Rule 11 sanctions

Copr. © West 2003 No Claim to Orig. U.S. Govt. Works

45 F.3d 430 (Table)  
Unpublished Disposition

Page 3

(Cite as: 45 F.3d 430, 1994 WL 714387 (6th Cir.(Ohio)))

for abuse of discretion. *Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384, 405 (1990).

### A

Cunningham first argues that awarding sanctions was an abuse of discretion because the record contains evidence of Swallen's' conspiracy with the Cincinnati police to deprive Hehemann of his civil rights. In *Hooks v. Hooks*, 771 F.2d 935 (6th Cir.1985), this court set forth the standard for proving civil conspiracy:

> A civil conspiracy is an agreement between two or more persons to injure another by unlawful action.... All that must be shown is that there was a single plan, that the alleged coconspirator shared in the general conspiratorial objective, and that an overt act was committed in furtherance of the conspiracy that caused injury to the complainant.

*Id.* at 943-44; *see also Moore v. City of Paducah*, 890 F.2d 831, 834-35 (6th Cir.1989).

Hehemann complained generally of a conspiracy to terminate his employment with the police department. However,

> The Fourteenth Amendment does not protect against all deprivations of liberty. It protects only against deprivations of liberty accomplished "without due process of law."

*Baker v. McCollan*, 443 U.S. 137, 145 (1979). Hehemann did not allege that the officers lacked probable cause for his arrest. Rather, the due process violation of which Hehemann specifically complained was the Department's failure to issue an order of reduction, suspension, or removal, as required by Ohio Rev.Code § 124.34.

In support of the claimed due process violation, Cunningham points to Swallen's' participation in Hehemann's arrest: Swallen's communicated with the Cincinnati police about transactions with police officers, permitted the police to establish surveillance within the warehouse, and instructed employees not to assist Hehemann or other officers in any way on the date of pick-up. Cunningham also implies that Westfelt, who was fired for selling the lumber at reduced prices, acted in concert with Swallen's as a member of the conspiracy against Hehemann.

The district court properly found this evidence insufficient to bear even a remote inference of conspiracy to deprive Hehemann of due process. There is not one iota of evidence linking Swallen's to the alleged failure to provide the order of reduction, suspension, or removal; there is not one iota of evidence of a "meeting of the minds"; and there is not one iota of evidence of a conspiratorial objective.

### B

Cunningham also argues that she lacked the opportunity to obtain facts permitting re-evaluation of the claims because the district court granted summary judgment twenty-one days before the discovery deadline.

**\*\*4** This argument is disingenuous. Summary judgment was granted on December 11, 1992, eight months after the initial complaint was filed. The discovery deadline was January 1, 1993. Cunningham deposed two defendants on December 9, 1992, just one day before the district court's hearing on the motion for summary judgment, but did not file the depositions with the court until mid-January. She deposed several other defendants at the end of December, but again these were not filed until after the discovery deadline.

Cunningham also argues that had the defendants framed their interrogatories properly, she would have revealed the factual and legal bases for the allegations. Because the interrogatories and responses do not appear in the joint appendix, the record is simply inadequate to evaluate this claim.

Despite ample time to depose the defendants, Cunningham failed to present any deposition testimony to the district court for evaluation during the hearing on summary judgment. Therefore, the timing of the district court's judgment was not an abuse of discretion.

### C

Last, Cunningham argues that allegations of malicious prosecution are a proper ground for a § 1983 claim. Under the facts of this case, Cunningham's argument lacks merit.

Copr. © West 2003 No Claim to Orig. U.S. Govt. Works

45 F.3d 430 (Table)
**Unpublished Disposition**

Page 4

(Cite as: 45 F.3d 430, 1994 WL 714387 (6th Cir.(Ohio)))

At the time Cunningham filed the complaint against Swallen's, malicious prosecution could support a violation of § 1983 in the Sixth Circuit. [FN2] As a threshold matter, a party seeking § 1983 damages based on a claim of malicious prosecution had to prove each element of malicious prosecution under state law. *McMaster v. Cabinet for Human Resources*, 824 F.2d 518, 520 (6th Cir.1987). To recover for malicious prosecution under Ohio law, the plaintiff was required to prove (1) a maliciously instituted prior proceeding by the defendant against the plaintiff, (2) lack of probable cause for filing the prior action, and (3) termination of the prior action in the plaintiff's favor. *See Friedman v. United States*, 927 F.2d 259, 261-62 (6th Cir.1991). Even if all elements of the state cause were present, malicious prosecution was not actionable under § 1983 unless " 'the misuse of a legal proceeding is so egregious as to subject the aggrieved individual to a deprivation of constitutional dimension.' " *Coogan v. City of Wixom*, 820 F.2d 170, 175 (6th Cir.1987) (quoting *Dunn v. Tennessee*, 697 F.2d 121, 125 (6th Cir.1982), *cert. denied*, 460 U.S. 1086 (1983)).

Swallen's never instituted a proceeding against the plaintiff. Also, under Ohio law, a court's order binding the defendant over to the grand jury creates a rebuttable presumption of probable cause for the charge. *Hruska v. Severance Specialty, Inc.*, 498 F.2d 796, 802 (6th Cir.1974); *Adamson v. May Co.*, 456 N.E.2d 1212, 1215 (Ohio App.1982). Besides the grand jury's failure to indict, Hehemann presented no evidence to rebut the presumption. Therefore, the first two essential elements of the state cause were conspicuously lacking at the time Cunningham filed the complaint.

III

**5 Based on the foregoing, we conclude that the district court's award of sanctions against Ms. Cunningham was proper. However, we reach this conclusion with extreme caution. We acknowledge the concern that liberal imposition of sanctions in § 1983 cases would discourage attorneys from using § 1983 and would thus render the statute a dead letter. It goes without saying that § 1983 plays a critical role in the preservation of civil rights in this country. It guards the freedoms that form the core of the Constitution, and its invocation must remain unburdened in order to enable the vigilant protection of our most precious liberties. It is precisely because § 1983 is such an important tool in the enforcement of constitutional rights that this court cannot permit its strength to be diluted by utterly baseless claims.

We have reviewed Swallen's' request for costs of the appeal under Fed.R.App.P. 38 and conclude that an award of costs is not warranted. The district court's award of Rule 11 sanctions against Theresa Cunningham is AFFIRMED.

FN* The Honorable Joseph M. Hood, United States District Judge for the Eastern District of Kentucky, sitting by designation.

FN1. *See Torres v. Oakland Scavenger Co.*, 487 U.S. 312 (1988) (holding that failure to name a party in a notice of appeal is a jurisdictional bar to review, not just an "informality"); *see also DCPB, Inc. v. City of Lebanon*, 957 F.2d 913, 919 (1st Cir.1992) (applying *Torres* to bar review of a sanctions award against an attorney where the notice of appeal names only the client as the appealing party); *DeLuca v. Long Island Lighting Co., Inc.*, 862 F.2d 427, 429-30 (2d Cir.1988) (same); *Collier v. Marshall, Dennehey, Warner, Coleman & Goggin*, 977 F.2d 93, 94 (3d Cir.1992) (same); *May v. Houston Post Pension Plan*, 898 F.2d 1068, 1070-71 (5th Cir.1990) (same); *Federal Trade Comm'n v. Amy Travel Serv., Inc.*, 875 F.2d 564, 577 (7th Cir.), *cert. denied*, 493 U.S. 954 (1989) (same); *Estate of Bishop v. Bechtel Power Corp.*, 905 F.2d 1272, 1276 (9th Cir.1990) (same); *Riggs v. Scrivner, Inc.*, 927 F.2d 1146, 1149 (10th Cir.), *cert. denied*, 112 S.Ct. 196 (1991) (same). *But see Miltier v. Downes*, 935 F.2d 660, 663 n. 1 (4th Cir.1991) (permitting review of sanctions award where naming client as appealing party creates no risk of confusion or prejudice); *Aetna Life Ins. Co. v. Alla Medical Serv., Inc.*, 855 F.2d 1470, 1473 (9th Cir.1988)

Copr. © West 2003 No Claim to Orig. U.S. Govt. Works

45 F.3d 430 (Table)
**Unpublished Disposition**

Page 5

(Cite as: 45 F.3d 430, 1994 WL 714387 (6th Cir.(Ohio)))

(same).

FN2. The Supreme Court has since foreclosed the use of § 1983 as an avenue for redress of malicious prosecution. *Albright v. Oliver,* --- U.S. ----, ----, 114 S.Ct. 807, 811 n. 4 (1994).

45 F.3d 430 (Table), 1994 WL 714387 (6th Cir.(Ohio)), Unpublished Disposition

END OF DOCUMENT

Copr. © West 2003 No Claim to Orig. U.S. Govt. Works

# ADKINS v. CHUDOWSKY

2001 WL 1339008 (Ohio App. 9 Dist.)

Not Reported in N.E.2d
2001-Ohio-1654
(Cite as: 2001 WL 1339008 (Ohio App. 9 Dist.))

Page 1

H
CHECK OHIO SUPREME COURT RULES FOR REPORTING OF OPINIONS AND WEIGHT OF LEGAL AUTHORITY.

Court of Appeals of Ohio, Ninth District, Lorain County.

Kevin ATKINS, Appellant,
v.
David CHUDOWSKY, et al., Appellees.

No. 01CA007834.

Oct. 31, 2001.

Appeal from Judgment Entered in the Court of Common Pleas, County of Lorain, Ohio, Case No. 00CV126078.

Kenneth R. Hurley, Attorney at Law, Columbia Station, OH, for Kevin Atkins appellant.

D. Chris Cook, Attorney at Law, Lorain, OH, for David Chudowsky appellee.

Ernest C. Pisanelli and Laurence F. Buzzelli, Attorneys at Law, Beachwood, OH, for Fountain Bleu Party Center, Ltd. and 635 Warriors, Ltd. appellees.

DECISION AND JOURNAL ENTRY

BAIRD, Judge.

*1 Appellant Kevin Atkins ("Atkins") appeals the decisions of the Lorain County Court of Common Pleas striking the affidavit of Kevin May, granting summary judgment to Appellee David Chudowsky ("Chudowsky"), and granting summary judgment to Appellees Fountain Bleu Party Center and 635 Warriors, Ltd. (collectively "Fountain Bleu"). [FN1] We affirm in part, reverse in part, and remand the cause for further proceedings.

FN1. Appellee Fountain Bleu is the owner of the business located on the premises, while Appellee 635 Warriors, Ltd. owns the property itself.

I.

Fountain Bleu Party Center is a party center with group meeting rooms for special occasions. On June 20, 1998, Atkins attended a wedding reception at the party center. On this particular evening, wedding receptions were being held in both of the party center's meeting rooms. One security guard was on duty. One of the two celebrations ended earlier than the other, and some guests from the first party joined the reception in the adjoining room.

Thereafter, members of the wedding party at the second reception, including Chudowsky, asked the uninvited guests to leave. Tempers flared, and arguments broke out on the premises. Atkins claims that while he was watching one of these altercations, Chudowsky assaulted him without warning.

On February 19, 1999, Atkins filed his complaint against Chudowsky asserting that Chudowsky assaulted him. Atkins also asserted a claim against Fountain Bleu claiming that the business and its employees were negligent, that the business was negligent in the training and supervision of its employees and in its failure to provide adequate security personnel. Both Fountain Bleu and Chudowsky filed motions for summary judgment. Atkins voluntarily dismissed the original action prior to the court ruling on the outstanding motions for summary judgment.

Atkins re-filed his complaint on June 16, 2000. The trial court entered a pretrial order on October 31, 2000, stating

Case is re-filed. All fact discovery is completed except [deposition] of Kevin May. Plaintiff shall complete the [deposition] of Kevin May on or before 12-15-00. [Defendants] have previously filed Motion(s) for Summary Judgment; Plaintiff shall respond on or before 1-15-01; Reply(s), if any shall be filed on or before 1-31-01; Court to rule thereafter.

Atkins did not take Kevin May's ("May") deposition. Instead, Atkins filed May's affidavit on January 2, 2001. Chudowsky then filed a motion to strike May's affidavit. Atkins filed a brief in

Copr. © West 2003 No Claim to Orig. U.S. Govt. Works

Not Reported in N.E.2d  
2001-Ohio-1654  
(Cite as: 2001 WL 1339008 (Ohio App. 9 Dist.))

Page 2

opposition to Chudowsky's motion to strike.

On February 23, 2001, the trial court granted Chudowsky's motion to strike May's affidavit and granted Chudowsky's motion for summary judgment. On March 22, 2001, the court granted Fountain Bleu's motion for summary judgment.

Atkins timely appealed, presenting three assignments of error.

## II.
### First Assignment of Error

THE COURT ERRED IN GRANTING APPELLEE DAVID CHUDOWSKY'S MOTION TO STRIKE THE AFFIDAVIT OF KEVIN MAY.

In Atkins' first assignment of error, he argues that the trial court erred in granting Chudowsky's motion to strike May's affidavit. We agree.

*2 A trial court has broad discretion in the management of discovery procedure. *State ex rel. Daggett v. Gessaman* (1973), 34 Ohio St.2d 55, paragraph one of the syllabus. Furthermore, the Ohio Rules of Civil Procedure allow a court to exclude testimony as a sanction for failing to comply with discovery orders. See Civ.R. 37(B)(2)(b). A court's order managing discovery or a decision imposing sanctions for a violation of a discovery order will be upheld absent an abuse of discretion. *State ex rel. v. Cos. v. Marshall* (1998), 81 Ohio St.3d 467, 469. An abuse of discretion is more than merely an error of judgment; it connotes a decision that is unreasonable, arbitrary, or unconscionable. *Id.* When applying the abuse of discretion standard, an appellate court may not substitute its judgment for that of the trial court. *Berk v. Matthews* (1999), 53 Ohio St.3d 161, 169.

In this case, the trial court struck May's affidavit, stating that "Plaintiff has failed to comply with [the] court's order ....which ordered Plaintiff to complete the deposition of Kevin May on or before December 15, 2000[.]" The trial court's pretrial order of October 31, 2000 stated that Plaintiff "shall complete the [deposition] of Kevin May by December 15, 2000." The court entered the October 31 order in connection with a status conference. This order was not in response to a motion to compel, as the record reflects that no such motion was filed in this matter. Thus, the striking of the affidavit could not have been imposed as a sanction for failure to comply with a discovery order.

We find that the trial court abused its discretion in striking May's affidavit. Any fair reading of the trial court's order is that it merely established a time deadline for discovery. Atkins was free to decide if he would depose May. The trial court's order did not create an affirmative obligation for Atkins to depose May, and Atkins' failure to take May's deposition was not a failure to comply with a discovery order.

Therefore, the exclusion of May's affidavit was error. Atkins' first assignment of error is sustained.

## III.
### Second Assignment of Error
THE COURT ERRED IN GRANTING APPELLEE DAVID CHUDOWSKY'S MOTION FOR SUMMARY JUDGMENT.

In his second assignment of error, Atkins asserts that the trial court erred in granting Chudowsky's motion for summary judgment. We agree.

An appellate court reviews an award of summary judgment *de novo. Grafton v. Ohio Edison Co.* (1996), 77 Ohio St.3d 102, 105. We apply the same standard as the trial court, viewing the facts in the case in the light most favorable to the non-moving party and resolving any doubt in favor of the non-moving party. *Viock v. Stowe-Woodward Co.* (1983), 13 Ohio App.3d 7, 12.

Pursuant to Civil Rule 56(C), summary judgment is proper if:
> (1) No genuine issue as to any material fact remains to be litigated; (2) the moving party is entitled to judgment as a matter of law; and (3) it appears from the evidence that reasonable minds can come to but one conclusion, and viewing such evidence most strongly in favor of the party against whom the motion for summary judgment is made, that conclusion is adverse to that party.

*3 *Temple v. Wean United, Inc.* (1977), 50 Ohio St.2d 317, 327. To prevail on a motion for summary judgment, the party moving for summary judgment must be able to point to evidentiary materials that show that there is no genuine issue as to any material fact, and that the moving party is entitled to

Copr. © West 2003 No Claim to Orig. U.S. Govt. Works

Not Reported in N.E.2d
2001-Ohio-1654
(Cite as: 2001 WL 1339008 (Ohio App. 9 Dist.))

Page 3

judgment as a matter of law. *Dresher v. Burt* (1996), 75 Ohio St.3d 280, 293. The non-moving party must then present evidence that some issue of material fact remains for the trial court to resolve. *Id.*

Where the non-moving party would have the burden of proving a number of elements in order to prevail at trial, the party moving for summary judgment may point to evidence that the non-moving party cannot possibly prevail on an essential element of the claim. See, *e.g., Stivison v. Goodyear Tire & Rubber Co.* (1997), 80 Ohio St.3d 498, 499. The moving party "bears the initial burden of demonstrating that there are no genuine issues of material fact concerning an essential element of the opponent's case." *Dresher*, 75 Ohio St.3d at 292. The burden then shifts to the non-moving party to show that there is a genuine issue of material fact as to that element. *Id.* at 293. "Mere reliance upon the pleadings is insufficient." *Carr v. Nemer* (Dec. 16, 1992), Summit App. No. 15575, unreported, at 2.

In this case, Chudowsky submitted deposition testimony and answers to requests for admissions in support of his motion for summary judgment. Chudowsky claimed that Atkins could provide no evidence to prove that Chudowsky was the one who assaulted him. Chudowsky further claimed that if he did assault Atkins, the defense of privilege applied.

Atkins submitted the affidavit of May in opposition to Chudowsky's motion for summary judgment. In his affidavit, May states that he was working at Fountain Bleu Party Center on the day in question, and May identifies Chudowsky as the man he observed strike Atkins.

The trial court did not consider May's affidavit when it reviewed Chudowsky's motion for summary judgment because it struck the affidavit from the record. We have already held that the decision to strike was error, and the trial court should have considered the affidavit in its review of the motion for summary judgment. The trial court's order setting a deadline for Atkins to respond to Appellees' motions for summary judgment did not limit the response to any particular form. Thus, Atkins could have responded by presenting any evidence as is authorized under Civ.R. 56, including an affidavit.

May's affidavit creates a genuine issue of material fact. As such, summary judgment was improper. Atkins' first assignment of error is therefore sustained.

Third Assignment of Error

THE COURT ERRED IN GRANTING APPELLEES FOUNTAIN BLEU PARTY CENTER LTD. AND 635 WARRIORS, LTD'S MOTION FOR SUMMARY JUDGMENT.

In his third and final assignment of error, Atkins argues that the trial court erred when it granted Fountain Bleu and 635 Warriors' motion for summary judgment. We disagree.

*4 We have already set out the law governing our review of an order granting summary judgment. Atkins argues that the trial court disregarded his brief in opposition to Fountain Bleu's motion for summary judgment and an affidavit of a security expert attached to the brief. Atkins asserts that the brief and affidavit create an issue of material fact, thus rendering summary judgment improper. However, the brief and affidavit are not a part of the record in this case. Furthermore, the record reflects that no such documents were ever filed in this case. Atkins did not file any other response to Fountain Bleu's motion for summary judgment. Therefore, in our review of Fountain Bleu's summary judgment, we will consider only Fountain Bleu's motion and exhibits and pleadings filed in this case.

Atkins asserts that Fountain Bleu breached its duty of ordinary care by not providing adequate security to prevent the assault from occurring. A business owner has the duty to warn business invitees of or to protect them from the criminal acts of third parties if the business owner knows, or, in the exercise of ordinary care, should have known of the danger to the invitee. *Howard v. Rogers* (1969), 19 Ohio St.2d 42, 47. However, the business owner is not an insurer of the invitee's safety. *Id.* Instead, liability depends upon whether the business owner should have reasonably known or anticipated that a third party was likely to cause injury to the invitee and if such injury occurs from the business' failure to warn or protect the invitee. *Id.* at 47-48.

In this case, Atkins must prove that Fountain Bleu owed him a duty and subsequently breached that

Copr. © West 2003 No Claim to Orig. U.S. Govt. Works

Not Reported in N.E.2d  
2001-Ohio-1654  
(Cite as: 2001 WL 1339008 (Ohio App. 9 Dist.))

Page 4

duty. In other words, the trial court had to determine whether Fountain Bleu had a duty to anticipate that violence would erupt among the wedding guests and breached that duty by failing to provide adequate security.

Fountain Bleu first claims that Atkins cannot show that Fountain Bleu had prior knowledge of any criminal activity or that it had any reason to suspect the likelihood of such activity. Fountain Bleu states that Atkins has failed to develop any discovery on this issue. However, Fountain Bleu provides no evidence of the type listed in Civ.R. 56 to support this motion. In order to prevail on its motion for summary judgment on the basis that Atkins cannot possibly prove prior knowledge, Fountain Bleu must be able identify the portion of the record, whether it be in the pleadings, depositions, answers to interrogatories, written admissions, affidavits, or transcripts of evidence, that demonstrates the absence of proof of this element. While Fountain Bleu asserts that Atkins has completed no discovery on this issue, Fountain Bleu has failed to point to evidence in the record supporting this assertion as is required.

However, Fountain Bleu also argues that Atkins cannot show any breach on behalf of Fountain Bleu. Fountain Bleu submitted testimony from Chudowsky's deposition in support of its motion for summary judgment. Chudowsky testified that Fountain Bleu's security guard broke up a fight between Chudowsky's brother and another person. Chudowsky further testified that the security guard responded quickly, and that the total time it took for the situation to escalate was "maybe a minute, two minutes." The testimony further reveals that Fountain Bleu's employees acted quickly in calling the police to the scene once the fighting began. Chudowsky also testified that he did not have any encounters with security during the wedding reception that were anything remarkable at the time, and that the guests attending his reception were behaving themselves and having a great time.

*5 Atkins provided no evidence that the actions of the security guard contributed to his injury, or that the training the guard received from Fountain Bleu was inadequate. To the contrary, the testimony provided shows that the guard acted quickly in diffusing the situation. In this instance, Atkins has created no genuine issue as to material fact and Fountain Bleu was entitled to judgment as a matter of law. Viewing the evidence in the light most favorable to Atkins, reasonable minds can come to only one conclusion, and that conclusion is against Atkins. Summary judgment was proper. Therefore, Atkins' third assignment of error is overruled.

Having sustained Atkins' first and second assignments of error and overruled his third assignment of error, we affirm the decision of the trial court in part, reverse in part, and remand for further proceedings.

Judgment affirmed in part, reversed in part, and cause remanded.

The Court finds that there were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Lorain, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(E).

Costs taxed to both parties equally.

Exceptions.

BATCHELDER, P.J. and SLABY, J., concur.

2001 WL 1339008 (Ohio App. 9 Dist.), 2001-Ohio-1654

END OF DOCUMENT

Copr. © West 2003 No Claim to Orig. U.S. Govt. Works