UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| **ANTONIO MOORE** | : | Case No: C-1-02-0430 |
| 3740 Washington Avenue | | |
| **Cincinnati, Ohio 45229** | : | (Judge Weber) |
| **Plaintiff,** | : | |
| | : | POLICE OFFICER MARCUS MCNEIL ET AL.'S |
| vs. | | MOTION FOR |
| | : | SUMMARY JUDGMENT |
| **POLICE OFFICER MARCUS** | | |
| **MCNEIL ET AL.** | : | |
| 801 Plum Street | | |
| **Cincinnati, Ohio 45202** | : | |
| **Defendant.** | : | |

Now comes officer Marcus McNeil, et al., by and through counsel and respectfully request this Honorable Court for an order granting summary judgment in their favor pursuant to Fed. R. Civ. Pro. 56. Defendants are entitled to summary judgment on the grounds that there are no genuine issues of material fact and the Defendants are entitled to summary judgment as a matter of law. A Memorandum in support of this motion is set forth below.

                   Respectfully submitted,

                   Julia L. McNeil (0043535)
                   City Solicitor

                   <u>/s/Thomas J. Harris</u>
                   Thomas J. Harris III (0065946)
                   Assistant City Solicitor
                   City of Cincinnati
                   Room 214, City Hall
                   Cincinnati, Ohio 45202
                   (513) 352-3321
                   Fax: (513)352-1515
                   Email: tom.harris@cincinnati-oh.gov

## **MEMORANDUM IN SUPPORT**

**I.    FACTS**

On June 21, 2001, at or around 8:00 p.m., Plaintiff parked his truck in a parking space reserved for City of Cincinnati Police Officers on a parking lot owned by Krogers Grocery Stores. *(Moore Deposition. Pg. 25; McNeil Deposition. Pg. 43).* Prior to entering the store, Plaintiff was directed to move his truck by Officer Marcus McNeil. *(Moore Deposition. Pg. 26; McNeil Deposition. Pg. 43 ).* Officer McNeil was working a special duty detail for the Kroger company. *(McNeil Deposition. Pg. 40).* This off-duty detail required Officer McNeil to provide security for the store and the Kroger parking lot. *(McNeil Deposition. Pg.31).* While patrolling the parking lot, Officer McNeil witnessed Plaintiff exit from his truck parked in the parking space reserved for police cars. *(McNeil Deposition. Pg.43).* This was not the first time Plaintiff parked in the reserved parking space for police officers nor was it the first time Officer McNeil asked Plaintiff not to park in the space. *(McNeil Deposition. Pgs. 50-51; Moore Deposition. Pg.25).* On previous occasions, Plaintiff simply walked past Officer McNeil without comment when directed by Officer McNeil or other Officers not to park in the reserved parking space. *(McNeil Deposition. Pgs. 50-51; Moore Deposition. Pg. 25).* On June 21, 2001, however, Plaintiff stopped and confronted Officer McNeil about his request. *(McNeil Deposition. Pg. 50).*

While expressing his displeasure about Officer McNeil's request, Plaintiff became loud, confrontational and agitated. *(McNeil Deposition. Pg. 43).* Plaintiff's conduct attracted a crowd of approximately ten people who gathered behind Officer McNeil. *(McNeil Deposition. Pg. 47).* Concerned about Plaintiff's conduct and the uncertainty of the crowds reaction to the confrontation he was having with Plaintiff, Officer McNeil called for a backup patrol car. *(McNeil Deposition. Pg.53).* Officer Michael Schulte, responded to the call. *(Schulte Deposition.*

*Pg. 15).* Upon arriving at the Krogers parking lot, Officer Schulte saw a crowd of approximately ten people near Officer McNeil. *(Schulte Deposition. Pg. 18 ).* In an effort to calm Plaintiff and disperse the crowd of approximately 10-12 onlookers, Officer Schulte asked Plaintiff to move his car and continue on with his affairs. *(Schulte Deposition. Pg. 21-22).* Plaintiff, refused Officer Schulte's request and again became agitated displaying unruly and offensive conduct in front of the gathered crowd. *(Schulte Deposition. Pg. 22,23).* Officer Schulte tried even after Plaintiff's earlier disorderly and offensive conduct to calm Plaintiff. *(Schulte Deposition. Pg. 22,23,26).* Plaintiff, however, continued his unruly and disorderly behavior. *(Schulte Deposition. Pg.24).* For this reason, Officer Schulte placed Plaintiff under arrest for disorderly conduct. (Schulte deposition. Pg. 24). Shortly after Plaintiff was handcuffed and placed in Officer Schulte's patrol car, Sgt. Dale Bley arrived on scene. *(Bley Deposition. Pg. ).* Sgt. Bley, as did Officer Schulte before him, spoke with Plaintiff and asked him to simply move his car and continue on with his day. (Moore Deposition. Pgs. 55-61). Plaintiff again refused. *(Bley Deposition. Pgs. 57-61).*

     Plaintiff brings this action against the various named Defendants under 42 U.S.C. Sections 1983, 1985 and 1988. He further asserts a First Amendment retaliation claim and several pendent state law claims.

## II. STANDARD OF REVIEW

     According to Fed. R. Civ. Pro. 56., summary judgment is appropriate when there is no genuine issue of material fact for trial, and the moving party is entitled to judgment as a matter of law. In deciding a motion for summary judgment, the court must view the evidence and draw all reasonable inferences in favor of the non-moving party. *See. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 474 U.S. 574, 587 (1986),* The judge is not to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial.

*Anderson v. Liberty Lobby, Inc. 477 U.S. 242, 249 (1986).* A genuine issue for trial exists when there is sufficient "evidence on which the jury could reasonably find for the plaintiff." *Id. at 252.* Because no genuine issue of material fact exits in this case, summary judgment must be granted in favor of Officer McNeil, Officer Schulte and Lt. Bley, for the various alleged 42 U.S.C. Section 1983, Section 1985, Section 1988, First Amendment retaliation claims and the pendent state law claims.

II.  **ARGUMENT**

    **A. Defendants are entitled to qualified immunity.**

For purposes of qualified immunity analysis, "Government officials who perform discretionary functions are generally entitled to qualified immunity and are protected from civil damages so long as their conduct does not violate a clearly established statutory or constitutional right of which a reasonable person would have known." *Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982).* Accordingly, it is first important to determine if the individual has alleged a violation of a clearly established constitutional right. *Dickerson v. McClellan, 101 F.3d 1151, 1158 (6th Cir.1996).* The court thereafter must then discern whether or not a violation of this right has occurred and whether or not "the plaintiff has alleged sufficient facts supported by sufficient evidence to indicate that what the official did was objectively unreasonable in light of the clearly established constitutional rights. *Id*.

    **B. Officer's McNeil, Schulte and Sgt. Bley did not violate a clearly established constitutional right.**

    **1. Officer's McNeil and Schulte had probable cause to arrest.**

According to established law, Officers acting under color of state law cannot arrest a person without probable cause. *Monroe v. Pape, 81 S.Ct. 473 (1961).* Probable cause has been

defined as "a reasonable grounds for belief, supported by less than *prima facie* proof but more than mere suspicion." *United States v. Bennett, 905 F.2d 931, 934 (6th Cir. 1990).* Moreover, probable cause exists if there can be determined that there was a "fair probability" at the time of the arrest that the person arrested committed an offense. *Sherwood v. Muldhill, 113 F.3d 396, (3rd Cir. 1997).* This standard is established if the facts within the arresting officers knowledge would lead a reasonable officer in the same or similar situation to determine that a crime has been or is being committed by the person arrested. *Orsatti v. New Jersey State Police, 71 F.3d 482 (3rd Cir. 1995).*

To be sure, Plaintiff's actions on July 22, 2000, at 3:00 a.m. established reasonable grounds for Officer's McNeil and Schulte to conclude that Plaintiff was committing the crime of Disorderly Conduct. Ohio Revised Code 2917.11(A)(5) defines disorderly conduct as:

> Creating a condition that is physically offensive to persons or that presents a risk of physical harm to persons or property, by any act that serves no lawful and reasonable purpose of the offender.

Juxtaposing the facts of the case at bar and the reasons Officers McNeil and Schulte articulated concerning their respective decisions to arrest Plaintiff with the elements of Disorderly Conduct, a violation of O.R.C. 2917.11(A)(5), it is clear that Officer's McNeil and Schulte had probable cause to arrest Plaintiff.

**2. Officer McNeil's probable cause to arrest Plaintiff.**

As noted, Officer McNeil was working an off-duty security detail for Krogers. *(McNeil Deposition. Pg. 40).* He was the first Officer to have contact with Plaintiff on July 21, 2001. *(McNeil Deposition. Pg. 43).* He witnessed Plaintiff exit his truck which was parked in a spot designated by Krogers for police vehicles only. *(McNeil Deposition. Pg. 43).* He directed Plaintiff to move his vehicle as he had done on at least two other occasions. *(McNeil Deposition.*

5

*Pgs. 50-51).* Plaintiff refused and confronted Officer McNeil in an agitated manner. *(McNeil Deposition. Pgs. 43,49).* Plaintiff's conduct caused a crowd of approximately 10 citizens to gather behind Officer McNeil. *(McNeil Deposition. Pgs. 44,46,47; Schulte Deposition. Pg.  Bley Deposition. Pg. ).* Concerned for his safety, Officer McNeil called a dispatch operator and requested assistance from other Officers in the area to help calm the situation. *(McNeil Deposition. Pg. 53).*

During Officer McNeil's deposition to further illustrate his reasons for contacting a backup Officer and the concerns he had about Plaintiff's conduct at the scene and the crowd that was forming behind him, he stated the following after being asked a series of questions:

> *Q: But you say on this particular time, he remained outside and engaged in a conversation with you?*
>
> *A.  Engaged in a confrontation with me; yes.*
>
> *Q. Okay. Now, confrontation, why was it confrontational? Why was he confrontational?*
>
> *A. Because he was argumentative over the parking spot and what was goin' on with the current news with the Police Department and his, his actions became to the point where it involved-it started to get everybody involved in it.*
>
> *Q. Okay. His actions or his-When you say his, "actions," body language or verbal language?*
>
> *A. Body actions, some verbal, some hand gestures, movement, just actions period.*
>
> *Q. Okay. Now he's argumentative; your conversation was totally about the parking space; is that correct?*
>
> *A. Initially, yes.*

6

> *Q. Okay. Initially, then what did it change to?*
>
> *A. His behavior....*
>
> *Q. At what point did your conversation turn to Mr. Moore's behavior?*
>
> *A. I quess the - What started to make me become more aware of the situation is when the first outburst came from behind me. The other people started to get involved.*
>
> *Q. Okay. So once the other people started to get involved, you then -*
>
> *A. Called for backup.*
>
> *(McNeil Deposition. Pgs. 52-53).*

To further illustrate his reasons for reasonably concluding that Plaintiff's actions were disorderly, Officer McNeil stated later in the deposition when asked a series of questions that:

> *Q. Now, just to make sure I have this clear, Mr. Moore was arrested for disorderly conduct?*
>
> *A. Correct?*
>
> *Q. And is it your testimony, Officer, that his behavior and-well, I'm sorry; you said, "his actions" you said he had a raised voice; is that correct?*
>
> *A. Yes.*
>
> *Q. You also said that he was doing different hand gestures that could have been perceived as threatening; is that correct?*
>
> *A. Correct.*
>
> *Q. And did you say his attitude was aggressive?*
>
> *A. His behavior didn't serve a lawful purpose, basically.*
>
> *Q. Okay. And based off of that, those were your reasons for arresting him for disorderly conduct?*

*A. Correct.*

*(McNeil Deposition. Pgs. 67-68).*

When asked why he called for backup concerning Plaintiff's disorderly behavior, Officer McNeil stated the following after being asked a series of questions:

*Q. Okay. Did you make any effort to control the situation prior to making the decision to put him under arrest, and by that I mean asking him to calm down, any kind of warning of a forthcoming arrest?*

*A. No, I just immediately called for another car because with what was going on behind me and what was going on in front of me, I had no control over that.*

*Q. Okay. And when you say what was going on behind you, you're referencing the people-*

*A. The crowd.*

*Q. making comments and the crowd -*

*A. Correct.*

*Q. -beginning to gather?*

*A. Correct.*

*(McNeil Deposition. Pgs. 69-70).*

Later, when asked specifically about his concerns related to the crowd, Officer McNeil stated the following:

*Q. After Mr. Moore was arrested, did the crowd disperse?*

*A. Yes.*

*Q. And what were your concerns about the crowd that was forming behind you before you arrested Mr. Moore.*

8

*A. Well, my concern was the overall safety and just the unknown of what can occur in large gatherings.*

*(McNeil Deposition. Pg. 78).*

3. **Officer Schulte's probable cause to arrest Plaintiff.**

Similar to Officer McNeil, Officer Schulte during his deposition also articulated his reasons for arresting Plaintiff for disorderly conduct. Specifically, Officer Schulte stated the following after being asked a series of questions:

*Q. Okay. And basically, I just want to make sure that I have this clear. You said that his, that Mr. Moore was, had become disorderly, you were giving him the alternative to calm down and move the vehicle-*

*A. Yeah.*

*Q. -Or be arrested?*

*A. Once, yes. Once he began cursing at me that was when I made the decision to place Mr. Moore under arrest, like I said.*

*Q. And you believe that cursing is disorderly conduct?*

*Mr. Harris: Objection, asked and answered, but you can answer again. Excuse me, you can answer it again.*

*A. Cursing alone, no, I don't believe that is disorderly conduct, but when you carry yourself in a manner that is offensive to other people and when you carry yourself in a manner that presents a risk of harm to somebody such as carrying yourself in a manner that causes a crowd to gather, okay, for one there were myself and two other officers there and we were outnumbered, like I said there was maybe 10 people there. I don't know I they were there just to watch, I didn't know if they knew Mr. Moore, I had no*

9

*idea, okay. So to answer your question, cursing alone, no, that is not disorderly conduct..., but when you use it doing it in such a manner that it's offensive to people, to children, you know, in a business such as Kroger's and you do it carrying yourself like Mr. Moore did, I believe that is disorderly conduct.*

    *(Schulte Deposition. Pgs. 27-28).*

Later during the deposition when asked specifically his concerns about the crowd, Officer Schulte stated that:

*A. No, I didn't like have to push anybody back or anything. Like I said, you know, you just kind of, you know, you just keep looking over your shoulder, you know, it's you know, an uneasy feeling, you know, but like I said, once Mr. Moore was taken into custody, you know everybody kind of just filtered off on their own, I quess, you know it was over with or whatever." (Schulte Deposition. Pg. 46.)*

Juxtaposing the facts of the case at bar and the reasons Officers McNeil and Schulte articulated concerning their respective and separate decisions to arrest Plaintiff for Obstructing Official Business, a violation of O.R.C. 2917.11(A)(5), it is clear that Officer's McNeil and Schulte had probable cause to arrest Plaintiff. Plaintiff's conduct outside of the Krogers' store entrance as determined by the Officers was offensive and served no lawful purpose. Additionally, his conduct presented a risk of physical harm to persons or property. Specifically, Plaintiff's actions as perceived by both Officers McNeil and Schulte presented a risk of serious harm to them. Both indicated as mentioned during their respective depositions that they had concerns about the crowd which formed because of Plaintiff's conduct. *(McNeil Deposition. Pg. Schulte Deposition. Pg. 26).* Officer McNeil was so concerned about the crowd that he requested backup and did not approach Plaintiff directly until after backup police officers arrived on the

10

scene. *(McNeil Deposition. Pgs. 52-53).* Upon arrival on the scene of the eventual arrest, Officer Schulte indicated that he was concerned by Plaintiff's actions because the crowd was watching the confrontation and he was fearful about what might happen because he and the other Officers were outnumbered. *(Schulte Deposition. Pgs. 27,49).*

**C. The Officer's actions were not unreasonable**.

Assuming for purposes of argument this Court believes that Officer McNeil and Officer Schulte violated Plaintiff's clearly established constitutional rights. The second prong of the qualified immunity analysis requires the Court to determine if the actions taken by the Officers where objectively unreasonable. As noted previously herein, public officials are entitled to qualified immunity if the right alleged to be breached by the official was not established at the time of the offense or if established, the actions taken by the official were reasonable. *Anderson v. Creighton, 483 U.S. 635,640 (1987), Saucier v. Katz, 533 U.S. 194, 200-201 (2001).*

Officer McNeil's actions concerning the events of July 22, 2000, were reasonable. When asked what he would have done if placed in the same or similar position that Officer McNeil found himself in, Officer Schulte stated that "if I was in Officer McNeil's situation I would have asked for backup, I also probably would have placed Mr. Moore into custody myself before the situation would have gotten out of hand." *(Schulte Deposition. Pg 51.)*

Officer Schulte further stated when asked a series of questions about the crowd that:

*Q. Okay. And you also testified that there was a crowd around Mr. Moore at the time of this incident. Did you have any concern that the situation would escalate beyond what it was at that time?*

*A. Yeah, I mean, you know, if I would have let it, you know, go any longer than when I did, you know, there's you know, that's always a concern when there's people there, like*

11

> *I said before, I don't know who those people are, I don't know what their intentions are, so that's, you know, that's always a concern especially when there's more people there at the time then you have police officers. (Schulte Deposition. Pg 49).*

Later during Officer Schulte's deposition he further stated that:

> Well, I told Officer McNeil, I said, you know, if he's acting like that,
> If that's what he's doing you know you can charge home with disorderly
> conduct, I mean you know, if there's all these people around, he's using
> vulgar language, you know, he's causing a crowd to gather, so, you know,
> I went like I said, I went and talked to Mr. Moore.
> *(Schulte Deposition. Pg 22).*

To be sure, neither of the officer's decision to arrest Plaintiff for disorderly conduct was unreasonable. Both indicated that a crowd of about 10 onlookers were outside the Kroger store watching what was going on. *(Schulte Deposition. Pg. 18; McNeil Deposition. Pgs. 44,46,47).* Both also indicated that they had concerns about the crowd's reaction to Plaintiff's disorderly conduct. *(Schulte Deposition. Pg . McNeil Deposition. Pgs. 52-53,69-70).* They were significantly outnumbered. *(Schulte Deposition. Pg. 49).* In an effort to calm the situation, both concluded that the best approach to quell the situation would be to arrest Plaintiff for his disorderly behavior. *(Schulte Deposition. Pg. 22; McNeil Deposition. Pg. 67).* After Plaintiff was arrested, the crowd dispersed. *(McNeil Deposition. Pg. 78).*

In short, based on the situation encountered by the Officers with Plaintiff, it was not unreasonable for them to conclude that the best option to resolve the confrontation before the crowd got out of hand was to place Plaintiff under arrest for his disorderly behavior. *(Schulte Deposition. Pg. 24).* The Officers concluded at the time of arrest that they had probable cause to arrest Plaintiff for his disorderly conduct and charge him with same because his conduct was offensive and served no lawful purpose. *(Schulte Deposition. Pgs. 27-28; McNeil Deposition. Pgs. 67-68).* Additionally and more specifically, the officers at the time of Plaintiff's arrest were

concerned that Plaintiff's conduct would encourage the gathered crowd of onlookers to threaten the Officer's safety. *(Schulte Deposition. Pgs.18, 46,49; McNeil Deposition. Pg. 47).* Officer McNeil was so concerned in fact, that he called for backup and did not approach Plaintiff to make an arrest until brother officers arrived on scene. *(McNeil Deposition. Pg. 53).*

**D. Lt. Dale Bley arrived after Plaintiff was arrested for his disorderly conduct.**

Lt. Bley arrived on the scene **after** Plaintiff was placed in the patrol car. Upon arrival, Lt. Bley saw, as described by both Officer McNeil and Officer Schulte that there were at least 10 to 12 people standing around the incident trying to see what was going to happen next. *(Bley Deposition. Pg 11).* Lt. Bley interviewed the Officers on scene and spoke with some of the onlookers. *(Bley Deposition. Pg 10).* He stated that during his interviews, the onlookers corroborated the Officers rendition of the earlier events. *(Bley Deposition. Pg 10).* Specifically, Lt. Bley stated during the deposition that "I spoke to a few of the onlookers that had gathered outside as to inquired from them to confirm what had happened and they basically solidified and corroborated the police officer's accounts of the events." *(Bley Deposition. Pg 11).*

Plaintiff does not specifically state in his deposition or from the Complaint filed in this action what if anything Lt. Bley did which violated his constitutional rights. Plaintiff requested the presence of a supervisor. *(Moore Deposition. Pg.48).* Lt. Bley was in the area and responded to the call for a supervisor from Officer McNeil. *(Lt. Bley Deposition. Pgs. 5-7).* Plaintiff indicated during his deposition that he had already been arrested and seated in the back of Officer Schulte's patrol car when Lt. Bley arrived on the scene. *(Moore Deposition. Pg. 56).* Lt. Bley asked Plaintiff to explain his version of the events which lead to the arrest. *(Bley Deposition. Pg 8).* After hearing all sides of the event, Officer Bley indicated to Plaintiff that the events which lead to the arrest could have been avoided had Plaintiff followed the Officers

13

original request not to park in the space reserved for police officers. *(Bley Deposition. Pg 9).*

Lt Bley did not direct the Officers to do anything during his short stay at the scene. He spoke with all of the parties involved as well as several onlookers who corroborated the Officers version of the events and verified from the officers that Plaintiff's arrest was based upon his disorderly conduct. *(Bley Deposition. Pg 8).*

**E. The Officers did not violate a constitutional right afforded to Plaintiff and the Officers actions were reasonable so there is no valid First Amendment retaliation claim or a claim for tortuous interference with a business relationship.**

As argued in detail above, the officers had probable cause to arrest Plaintiff for his disorderly behavior pursuant to R.C. 2917.11(A) because he was not engaged in constitutionally protected speech at the time of his arrest. *Brandenburg v. Ohio 395 U.S. 444, 447 (1969).* Plaintiff was arrested and charged with the disorderly conduct offense because his actions and conduct were unlawful. As previously stated herein, Plaintiff's actions served no lawful purpose. His actions gathered a crowd of onlookers which made both Officer McNeil and Officer Schulte concerned for their personal safety. Officer McNeil was so concerned about Plaintiff's conduct and the gathering crowd that he called for backup before approaching Plaintiff.

**F. There is no evidence of a conspiracy to interfere with Plaintiff's civil rights pursuant to 42 U.S.C Section 1985.**

According to well established law, a conspiracy pursuant to 42 U.S.C. Section 1985, requires a showing of an agreement between two or more persons designed to harm another person by some unlawful action. *Hooks v. Hooks, 771 F.2d 935 (6th Cir. 1985).* In the instant case, there is no evidence that the Officers conspired to inflict harm upon Plaintiff by some unlawful action. As mentioned earlier, both Officer Schulte and McNeil, fully and thoroughly explained during their depositions concerning this case that Plaintiff was arrested because of his disorderly behavior after being asked to move his truck pursuant to the disorderly conduct statue

R.C. 2917.11(A). Each Officer independently decided to charge Plaintiff with the above offense based solely upon his conduct.

**G. Plaintiff's 42 U.S.C. Section 1988 claim.**

Plaintiff as noted has not presented merit based claims pursuant to 42 U.S.C. Section 1983 or 42 U.S.C. Section 1985 as a matter of fact and of law. As such, any claim for attorneys fees pursuant to 42 U.S.C Section 1988 are invalid.

**H. Plaintiff's Pendent State Law claims should be dismissed for lack of subject matter jurisdiction.**

Plaintiff's pendent state law claims should be dismissed for lack of subject matter jurisdiction. Plaintiff has not presented a legitimate claim pursuant to 42 U.S.C, Section 1983, 1985 or 1988. The Sixth Circuit Court of Appeals indicated in *Taylor v. First of Am. Bank-Wayne, 973 F.2d 1284,1287 (6th Cir. 1992),* that "[g]enerally, if the federal claims are dismissed before trial, the state claims should be dismissed as well."

**Conclusion**

For the above stated reasons, Officer Marcus McNeil, Officer Michael Schulte and Lt. Dale Bley are entitled to summary judgment as a matter of law on all of Plaintiff's claims raised herein.

    Respectfully submitted,

    Julia L. McNeil (0043535)
    City Solicitor


    /s/ Thomas J. Harris
    Thomas J. Harris (0065946)
    Assistant City Solicitor
    Room 214, City Hall
    Cincinnati, Ohio 45202
    (513) 352-3321
    Fax: (513) 352-1515
    Email: tom.harris@cincinnati-oh.gov

## CERTIFICATE OF SERVICE

I hereby certify that a true copy of the foregoing Motion has been sent by regular U.S. Mail to Margaret Allen, Esq. Manley Burke, 225 W. Court Street, Cincinnati, Ohio 45202, Lawrence Barbiere, Esq. Schroeder, Maundrell, Barbiere & Powers, 11935 Mason Road, Suite 110, Cincinnati, Ohio 45249, this 19th day of September 2003.

>                             /s/ Thomas J. Harris
>                             Thomas J. Harris (0065946)
>                             Assistant City Solicitor