## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
## WESTERN DIVISION

| | | |
|---|---|---|
| **ANTONIO MOORE,** | : | |
| **Plaintiff,** | : | **Case No. C-1-02-0430** |
| | : | **(J. Weber)** |
| **v.** | : | |
| | | **PLAINTIFF'S MEMORANDUM** |
| **KROGER COMPANY, et al.,** | : | **IN OPPOSITION TO** |
| | | **DEFENDANTS' MOTIONS FOR** |
| **Defendants.** | : | **SUMMARY JUDGMENT** |
| | | **(ORAL ARGUMENT** |
| | : | **REQUESTED)** |
| | : | |

---

## MEMORANDUM

### I.    INTRODUCTION

The record evidence brought forth by Plaintiff Antonio Moore ("Moore") establishes that

Moore was arrested for a violation of Defendant Kroger's parking policy by one Defendant off-

duty Cincinnati Police officer who was acting as an employee of Krogers, and by two other on-

duty Cincinnati Police officers. These three officers, acting under color of state law, utilizing the

full power and authority vested in them by the State of Ohio to arrest, and while wearing the

uniform of the City of Cincinnati Police Department and City issued guns and badges, arrested

and incarcerated Moore because he parked in a parking spot marked "Reserved for Police" by

Kroger. That parking infraction in a private merchant's parking lot was not even an arguable

violation of any state law or city ordinance allowing arrest, and thus could not possibly be

supported by probable cause. While Krogers and the Defendant officers attempt to argue that

some other unspecified "disorderly conduct" of Moore was the justification for his arrest, the record is devoid of any such evidence. This illegal arrest, completely unsupported by any existing law, was a blatant violation of Moore's constitutional rights under the Fourth Amendment, and strips the Defendant Officers of qualified immunity; the basis for their current Motion.

Kroger now attempts to distance itself from its usage of state authority in the form of Cincinnati Police Officers as security personnel, arguing it is entitled to summary judgment because it did not act as a state actor and cannot be held liable for the actions of the officer it hired. But the actions taken by the off-duty officer were taken as a Kroger's employee to enforce Kroger's private parking policy, and not to enforce any public law or ordinance. Kroger is wrong as a matter of law. The facts of this case are vigorously disputed, credibility issues run throughout and summary judgment is inappropriate.

II.    **FACTS**

Moore is self-employed, and owns his own business. Moore does the banking for his business at the Fifth Third Bank branch located in the Defendant Kroger grocery store at 4777 Kenard Avenue, in Cincinnati. (Moore Affidavit ¶ 2; Moore Depo. p. 16). On June 21, 2001, Moore needed to make a deposit for his business after work, and arrived at Krogers shortly before the Kroger store was scheduled to close. (Moore Affidavit ¶ 3; Moore Depo. p. 18).

A Cincinnati Police substation is located within the Kroger's store, for use by on-duty police officers and for off-duty detail officers who are working at Krogers. (Schulte Depo. p. 13-14). Defendant Kroger hires off-duty police officers to work for the store on a 24 hour rotational basis; Defendant McNeil among is among them. (McNeil Depo. p. 13-14, 18, 21, 25). As part of

2

the off-duty detail requirements at Kroger, Officers would sign in inside the store, and patrol inside and outside on the store property. (McNeil Depo. p. 19-20). Officers receive briefings from Kroger's managers on specific problems regarding the store. (McNeil Depo. p. 20-21). Among the duties off-duty officers perform are enforcing parking regulations in the parking lots of the stores. (McNeil Depo. p. 16). Defendant McNeil considers himself an employee of Kroger while working the off-duty detail, and is paid by Krogers. (McNeil Depo. p. 21, 23-24). Defendant Lt. Bley also considers off-duty detail officers, (a group which has included Lt. Bley), to be employees of the particular business for which they are doing the assignment. (Bley Depo. p. 17). The off-duty officers report any employment problems to Kroger management. (McNeil Depo. p. 24). Kroger's managers are made aware of any police activity in the property. (McNeil Depo. p. 29).

On June 21, 2001, Defendant McNeil was on duty as an off-duty officer of Defendant Kroger. Defendant McNeil was wearing his regular Cincinnati Police Division uniform. (McNeil Depo. p. 41). Defendant McNeil possessed his badge and utility belt with a City-issued nightstick, service weapon and radio. *Id.*

When Moore arrived at the store shortly before 8 p.m., Moore saw an empty parking space near the door of the Kroger store. A sign marked "Reserved for Police Cars" was on the pole in front of the parking space. (McNeil Depo. p. 43, Exhibit 1). The sign was Kroger's sign. (McNeil Depo. p. 71). According to Defendant McNeil, parking in the spot by a non-police person is a parking infraction for Krogers, and is a violation of "Kroger law, not police law." (McNeil Depo. p. 33, 63, 71). Moore parked in the parking space due to the lateness of the hour and the fullness of the parking lot, and the fact that he still had to count the deposit items and fill

out the deposit slip. (Moore Depo. 29, 36). In fact, Moore on previous occasions parked in that

parking space while in Defendant McNeil's presence. (McNeil Depo. p. 50-51). Unmarked cars

and sport utility vehicles regularly parked in the space marked "Reserved for Police Cars."

(Moore Affidavit ¶ 5).

After Moore left his car, Defendant McNeil stopped Moore and in a very rude and

offensive voice, demanded he move his vehicle. (Moore Affidavit ¶ 6). Moore explained that he

needed to make a deposit before the bank closed, that he would only be a minute, and that he

could ticket the car or tow it if he had to do that. *Id.* Defendant McNeil responded that Moore

could "move his vehicle or go to jail." (Moore Affidavit ¶ 6). Moore again told Defendant

McNeil to ticket the vehicle or tow it if he had to, but that he really needed to make the deposit.

*Id.* Defendant McNeil responded with "your going to jail." *Id.* Moore demanded to speak to

McNeil's supervisor; a request which was ignored by Defendant McNeil. *Id.*

Normally, Defendant McNeil agrees he would ask the Kroger Manager how to handle

this specific situation, and it would be their decision as to how to handle it. (McNeil Depo. p.

34). Kroger's parking lot is private. (McNeil Depo. p. 37). Defendant McNeil did not do so on

this occasion. (McNeil Depo. p. 45-46). Defendant McNeil requested more uniformed Cincinnati

Police officers respond to the scene.  Defendant Schulte responded to the request, which he says

was not "an emergency" call. (Schulte Depo. p. 16-17). Defendant Schulte handcuffed Moore,

put him in the back of his police car and eventually was the officer who signed the complaint

against Moore for "disorderly conduct." (Schulte Depo. p. 34, 29).

The complaint relates that Moore's refusal to move his car was the factual basis for the

disorderly conduct charge. (Schulte Depo. p. 34-37, Deposition Exhibit 2). A witness to the

events, Mr. Arafa Abdul-Bari, states in his Affidavit, (filed with this memorandum), that

Defendant McNeil made it repeatedly clear during his conversation with Moore that he was

going to be arrested for refusing to move his car, and, in fact, did arrest Moore for just that.

(Abdul-Bari Affidavit, ¶ 6-7). Mr. Abdul-Bari testifies there was never any "crowd" gathered

around, and says that Moore never engaged in any offensive, unruly, disorderly, disruptive,

aggressive or threatening conduct of any sort during any of the events. (Abdul-Bari Affidavit ¶

4).

        Defendant Lieutenant Dale Bley, ("Lt. Bley'), was the final officer to arrive at the scene

in response to the radio request from Officer McNeil. (Bley Depo. p. 5, 7).  By this time, Moore

was already under arrest, in handcuffs, and was in the back seat of Officer Shulte's police car.

(Bley Depo. p. 6). Moore was never informed by any of the officers of the charge for which he

was under arrest. (Moore Affidavit ¶ 9).  Defendant Lt. Bley asked Defendant McNeil after he

arrived on the scene "your not arresting him because he parked in that parking place, are

you....?" (Lt. Bley Depo. p. 8). (Lt. Bley later was told to instruct Defendant Schulte that "those

signs were not enforceable as far as police powers were concerned" after an after-the-fact

investigation of the entire incident by the Department.) (Lt. Bley Depo. p. 19).      Defendant Lt.

Bley spoke to Moore at the scene and admits he told him that "this whole thing could have been

avoided had he not parked his truck there to begin with, and the purpose for the sign there..." and

Defendant McNeil states Moore was asked to "just move your car back and we'll just let all this

stuff go." (Bley Depo. p. 8-9; McNeil Depo. p. 62; Moore Affidavit ¶ 8-13). Moore, who had

already been arrested, handcuffed and placed in the back of a police car before patrons and

employees of a store where he regularly was seen and conducted business, again refused. (Bley

Depo. p. 8-9; McNeil Depo. p. 62; Moore Affidavit ¶ 8-13). Defendant McNeil believes he reported the arrest to Kroger management that evening. (McNeil Depo. p. 70).

Defendant Schulte transported Moore to the Hamilton County Justice Center where Moore was photographed and fingerprinted, and Moore was incarcerated for several hours before he was released on bond. (Moore Affidavit ¶ 13-14). Moore was not told of the actual charge for which he was arrested until after he was incarcerated in the Justice Center. (Moore Affidavit ¶ 9). Moore was charged with a violation of Ohio Revised Code §2917.11A, a fourth degree misdemeanor, for "engaging in conduct that was physically offensive and served no lawful purpose."

Moore hired an attorney to defend against the criminal charge assigned case number /01/CRB/204079 on the docket of the Hamilton County Municipal Court. The transcript of the criminal trial is attached as Exhibit B to the Moore Affidavit. On July 24, 2001, after the State presented its evidence, Hamilton County Municipal Court Judge John Burlew dismissed the charge pursuant to Ohio Criminal Rule 29, which provides the Court shall acquit a defendant if the evidence is insufficient to sustain a conviction.

## II.    ARGUMENT

### A.    The Standard For Summary Judgment

Summary judgment is appropriate only when no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law. *Celotex v. Catrett*, (1986), 477 U.S. 317, Syll. ¶ 1, 106 S. Ct. 2548, 91 L. Ed. 2d 265. "It is not enough to move for summary judgment without supporting the motion in any way or with a conclusory assertion that the plaintiff has no evidence to prove his case." *Id.* at 328. In considering a motion for summary

judgment, the Court must construe the evidence in favor of the nonmoving party and give that

party the benefit of all inferences that can be drawn therefrom.  *Cornett v. Roadway Express,*

*Inc.*, (S.D. Ohio 1988), 704 F. Supp. 804, 806. When the record evidence of this case is

reviewed, it is apparent that Defendants fail to meet their burden of demonstrating that no

genuine issues of material fact exist, and summary judgment in favor of the Defendants must be

denied.

> **B.**     **Summary Judgment In Favor Of Officers McNeil, Schulte And Bley Must Be
> Denied As There Is Ample Evidence That Officers McNeil, Schulte and Bley
> Violated Clearly Established Rights Guaranteed To Plaintiff Under The
> Fourth Amendment To The United States Constitution.**

"Government officials who perform discretionary functions are generally entitled to

qualified immunity and are protected from civil damages so long as their conduct does not

violate a clearly established statutory or constitutional right of which a reasonable person would

have known." *Harlow v. Fitzgerald* (1982), 457 U.S. 800, 818. Defendants McNeil, Schulte and

Lt. Bley are not entitled to the shield of qualified immunity under the standards set forth in

*Harlow v. Fitzgerald* (1982), 457 U.S. 800 applicable to 42 U.S.C. § 1983 claims. Moore had a

clearly established constitutional right under the Fourth Amendment right to be free from

unreasonable seizure, (made applicable to the states through the Fourteenth Amendment), for

violation of Kroger's private parking policy on a private lot, for which the Defendants

themselves admit there simply is no criminal statute nor ordinance which would authorize

Moore's arrest. (Lt. Bley Depo. p. 19; McNeil Depo. p. 33, 63, 71; Schulte Depo. p. 44-48).

Probable cause *could not* exist for Moore's arrest for violation of Kroger's parking policy.

Even if any credence is given the Defendant Officers' assertion that Moore's arrest was

based upon some conduct other than his parking in the "Reserved for Police" parking spot, (an

assertion completely unsupported by the record evidence), this gives rise to, at best, a question of

credibility and an issue of material fact not suitable for summary judgment. The Defendant

Officers' assertion that this issue is appropriate for summary judgment is belied by the case law

relied upon by Defendant Kroger in its Memorandum. In the case of *Evans v. Smith* (Hamilton

Cty. 1994), 97 Ohio App.3d 59, the court stated:

> The issue of probable cause, which is ordinarily one of fact to be
> resolved at trial, may be determined as a matter of law upon a
> record that allows for only one reasonable conclusion. *McFinley,
> supra,* 79 Ohio App.3d at 617, 607 N.E.2d at 939 (citing *Huber,
> supra* ). ***However, when, as here, the resolution of the issue of
> probable cause (and, by inference, the issue of malice) depends
> on whether the trier of fact believes the plaintiff or the defendant,
> summary disposition of a malicious prosecution claim is
> inappropriate.*** See *Trussell, supra,* 53 Ohio St.3d at 146, 559
> N.E.2d at 736 (holding that a directed verdict on plaintiff's
> malicious prosecution claim was inappropriate when resolution of
> the probable-cause issue depended on whether the trier of fact
> believed plaintiff or defendant). We, therefore, hold that the trial
> court erred in granting summary judgment for the defendants on
> the plaintiffs' malicious prosecution claim.

*Evans v. Smith* (Ohio App. 1 Dist.,1994), 97 Ohio App.3d 59, 69, 646 N.E.2d 217, 223.

(Emphasis supplied).

The case of *Dickerson v. McClellan* (6th Cir. 1996), 101 F.3d 1151, cited by the

Defendant Officers in support of their assertion that their actions were "reasonable" as a matter

of law, involves facts and legal issues bearing no resemblance to the issues at hand. *Dickerson*

involved a no-knock search which resulted in a shooting of the suspect by the officers involved.

The officers in *Dickerson* clearly had sufficient undisputed facts from which they could have

made a reasonable determination of their need to enter the premises without knocking first to protect lives, having received a report of hearing shots fired from within. The "no knock" search justification involves a determination of reasonableness, just as does the issue of probable cause to arrest for disorderly conduct. But the similarity, and the relevance, of the *Dickerson* case to this one ends there.

There are no neutral third party reports of illegal conduct on which to base a finding of probable cause in the instant case as a matter of law. In fact, just the opposite is true. Statements admittedly made by the Defendant Officers themselves at the scene, (which amount to admissions), their written criminal complaint, the statement of the one neutral non-party witness present at the scene, Mr. Abdul-Bari, and Moore's testimony all contradict the Defendant Officers' claims that Mr. Moore's arrest was for some "disorderly conduct" other than parking in the "Reserved for Police" parking spot. All three Defendant Officers understood parking in the reserved space on the private Kroger's lot was not an arrestable offense, yet they all three participated in Moore's arrest. Apparently understanding the problematic nature of the arrest, Defendant Lt. Bley offered Moore the chance to "undo" the arrest by simply moving his car and "making it all go away." Yet even though he was a Lieutenant, and a supervisor, he did nothing to correct the situation. The issue of whether the Defendant Officers had probable cause to arrest Moore is a disputed question of fact for the jury and summary judgment should be denied.

**C.**     **Krogers Is A State Actor For Purposes Of Liability Under 42 U.S.C. Section 1983 And Is Liable For The Actions Of Defendant Officers McNeil, Schulte And Bley And Summary Judgment In Favor of Krogers Must Be Denied.**

Although Krogers strives to characterize itself as not being a state actor for purposes of

Moore's claims under 42 U.S.C. § 1983, it can not seek to use the power of the state in having

uniformed and armed Cincinnati Police Officers backed by the authority and power of state law

serve as employee security for its store and accept the benefits of that relationship, yet escape the

accompanying burdens and responsibilities. Krogers attempts to mischaracterize the facts in the

record to support is claim of entitlement to summary judgment, but it is clear that there is a sharp

factual dispute with regard to the assumptions Krogers wants the court to make for purposes of

its Motion. First, Krogers states that "it is undisputed that Plaintiff was arrested for a violation of

R.C. § 2917.11(A), for disorderly conduct." (Kroger's Memorandum, p. 9). Nothing could be

further from the truth. As pointed out above, Moore stringently contests that he was arrested for

any conduct other parking in the parking spot marked by Kroger's as "Reserved for Police." This

was not an illegal offense for which he could be arrested, but a violation of a parking policy of

Krogers. Kroger's employee, Defendant off-duty detail Officer McNeil, and the two Defendant

on-duty Cincinnati Police Officers Schulte and Bley were acting to implement and further

Kroger's private parking policy when they arrested Moore, and using the color of state law to do

so.  And far from arresting Moore without any "orders or suggestions by any Kroger employee at

the time," (Kroger's Memorandum p. 9), Defendant McNeil and the on-duty officers were

operating pursuant to and in accordance with Kroger's parking policy, and not any state law or

city ordinance which prohibited Moore from parking in the space.

Defendant Krogers misrepresents the legal authority which it cites the court to in support

of its Motion. The case of *Cooper v. City of Dayton* (1997),120 Ohio App.3d 34, cited by

Krogers at p. 10 of its Memorandum, is certainly not on point. Despite Kroger's representation to

the court at p. 10 of its Memorandum, *Cooper* involved no 42 U.S.C. § 1983 claim nor any state

tort law claim by any Plaintiff who was arrested. The Plaintiff in *Cooper* was the off-duty officer who was injured in making an arrest and the issue was whether the injury was compensable under worker's compensation, and is clearly not on point here.

Defendant Kroger's reliance on the case of *Evans v. Smith* (Hamilton Cty.1994), 97 Ohio App. 3d 59, is more understandable, given that *Evans* at least involves facts that are arguably similar to the case at hand; but with one very important distinction for purposes of Moore's 42 U.S.C. § 1983 claim against Krogers. First, it should be noted that *Evans* supports Moore's state law supplementary claims of malicious prosecution, false arrest and false imprisonment. Kroger's, however, cites *Evans* for the proposition that it can not be held liable for the actions of McNeil or the two on-duty officers vicariously or otherwise under Section 1983. That proposition is incorrect.

Even should the court accept the analysis of the *Evans* court, (*Evans* also involved a claim against Krogers), with regard to vicarious liability under Section 1983, (which Plaintiff respectfully suggest is incorrect and will show why below), the facts of *Evans* make it inapposite to Moore's Section 1983 claim. In *Evans,* the officer, Smith, personally witnessed conduct by the Plaintiff which constituted a crime—shoplifting—under Ohio law, a violation of R.C. 2913.02(A)(1). Furthermore, Officer Smith found that an outstanding probation violation in Plaintiff's records during the course of events. Those two violations of state law were what gave rise to Officer Smith's authority to arrest Evans. As stated by the court in Evans:

> When, as here, the basis for a Section 1983 action is the Fourth
> Amendment, the distinction between Smith's status as a municipal police
> officer and his status as a Kroger security guard assumes considerable
> significance. It is well established that the Fourth Amendment prohibition
> against unreasonable searches and seizures applies only to the actions of
> the government and its officers, and not to the actions of private
> individuals or entities. *Burdeau v. McDowell* (1921), 256 U.S. 465, 41

11

S.Ct. 574, 65 L.Ed. 1048. R.C. 2935.041 does not, for purposes of the
Fourth Amendment, operate to confer upon a merchant or its employee the
status of a law enforcement officer. *73 *State v. Bolan* (1971), 27 Ohio
St.2d 15, 56 O.O.2d 8, 271 N.E.2d 839; *McDaniel, supra; accord State v.
Edwards* (1976), 50 Ohio App.2d 63, 64-65, 4 O.O.3d 44, 44-45, 361
N.E.2d 1083, 1084-1085. Thus, the plaintiffs' Section 1983 claim may be
premised upon an arrest and detention undertaken by Smith in his capacity
as a municipal police officer, but not upon a detention undertaken by
Smith, pursuant to R.C. 2935.041, as a Kroger employee, and Kroger can
under no circumstances be held liable for the conduct giving rise to the
plaintiffs' Section 1983 claim. We, therefore, hold that summary judgment
was appropriately entered for Kroger, but was improvidently granted for
Smith on the plaintiffs' Section 1983 claim.

*Evans v. Smith* (Ohio App. 1 Dist.,1994), 97 Ohio App.3d 59, *73, 646 N.E.2d 217, 226. Thus,

the court held that Krogers could not be vicariously liable on Evans' Section 1983 claims. *Id.*

But in the case at hand, the critical distinction is that no violation of state or city law

forms the basis for Moore's arrest by McNeil and the two on-duty officers; thus there is no legal

authority which takes their actions out of the realm of acting on behalf of the private interests of

Kroger's while clothed in the authority of state law and into the realm of acting solely as police

officers protecting a public right and preventing violation of a public statute.

The issues raised by Krogers are not as well settled as Krogers would have the court

believe, and Krogers ignores contrary authority from other federal courts which squarely applies,

*Groom v. Safeway, Inc.* (W.D. Washington 1997), 973 F.Supp. 987. In the *Groom* case, the

Plaintiff sued a grocery store, Safeway, and an off-duty police officer hired by the store for

violating her civil rights pursuant to Section 1983. Grooms and a friend were shopping in

Safeway when the store manager noticed Grooms was no longer carrying some prawns she had

just ordered. He suspected she may have hidden them somewhere to shoplift them. (In reality she

had placed them in the friend's cart with whom she was shopping). The manager informed the

12

off-duty officer, who was armed, and in uniform of the Seattle police, and being paid by Safeway, that Grooms may be attempting to shoplift. The officer ended up arresting Grooms, incorrectly. She was released when her friend showed the prawns to the officer and manager. Grooms obtained a large jury verdict against the defendants, including the store, under the legal theory that Safeway had been reckless in failing to provide training to the police officers it hired on how to deal with store customers, and instead gave the off-duty officers unlimited discretion.

Safeway's argument in post-trial motions, similar to Krogers, was that it did not act under color of state law, that its actions did not cause Plaintiff's injuries and that it could not be vicariously liable for the conduct of the off-duty officer under Section 1983. The court rejected Safeway's arguments using sound analysis that addresses issues not directly addressed by the court in *Evans*. The *Evans* court found that Safeway had acted under color of state law, finding the employment relationship with the off-duty officer significant in that "Safeway may act under color of state law by virtue of the employment relationship and yet be held liable [under Section 1983] only for its actions, not officer Hori's." *Id* at 990, ft. nt. 2. The court stated the widely cited principal that "a private entity acts under color of state law where it is a willful participant in joint action with the State or its agents," citing to *Adickes v. S.H. Kress & Co.*(1970), 398 U.S. 144. *Id.* The court stated:

> In the instant case, Safeway did more than cloak itself with the authority of the state: it hired an instrument of the state's power. Officer Hori, his uniform, his badge, and his gun were all hired to serve Safeway's goal of deterring theft in its stores. Although Hori acted in his capacity as a police officer, he did so on Safeway's time. Safeway stresses that the way in which Hori performed his duties was not subject to Safeway's control, but Hori nonetheless performed those duties in Safeway's store and on Safeway's behalf; presumably he could not have wandered out of the store to patrol the surrounding neighborhood. Thus, the employment relationship gives the private entity and the state agent an overlapping identity and interest and sufficiently involves the state in the relevant

13

actions of the private entity to bring those actions under color of state law.

*Groom v. Safeway, Inc.* (W.D.Wash.,1997), 973 F.Supp. 987, 991  However, the court also went

further and questioned the premise that Safeway, like a public entity, could not be held liable

under the doctrine of *respondeat superior*. The court stated that there was no reason to find that

*respondeat superior* did not apply to private employers clothed with the authority of the state, as

the same policy considerations which apply to public employers, requiring an official policy or

custom resulting in a constitutional violation, do not apply in this context. *Id* at 992.

> This Court sees no reason why the private employer of a police officer
> should not be vicariously liable for the officer's acts committed within the
> scope of his employment. Similarly, the Court sees not reason why the
> acts of Safeway's regular employees, such as Vargas and Johnson, should
> not be attributable to Safeway, both as willing participation in joint
> activity with Hori and as potential violations of § 1983 themselves.

*Groom v. Safeway, Inc.*  (W.D.Wash.,1997), 973 F.Supp. 987, 992. The court held, however, that

the evidence against Safeway supported a finding of liability regardless of whether *respondeat*

*superior* applied or whether an "official policy or custom" of Safeway which caused the harm

was required to be shown, because the Plaintiff had shown Safeway had failed to adequately

train the off-duty officers.

Whether viewed from a standpoint of *respondeat superior*, affirmatively engaging in

joint action or a conspiracy with the officers, or from a standpoint of failing to adequately train

the off-duty officers who are employees of Krogers, Krogers is not entitled to summary

judgment. The Defendant Officers in the case at hand were acting to implement and enforce

Kroger's official private parking policy as embodied in its posted sign, and not in furtherance of

preventing violation of or enforcing any state or local law. Defendant McNeil was doing so as

14

Kroger's employee, and Kroger admittedly provided no training to officer McNeil whatsoever on whether or how to enforce the parking policy nor any other aspect of his employment there. (McNeil Depo. p. 21-34). The result of this is obvious; Defendant McNeil tried more than once to enforce Kroger's parking policy with regard to this parking spot, unsure as to how to implement and enforce it. His unfettered discretion resulted in Moore being publicly arrested in front of patrons and employees of a store he frequented on a regular basis and being incarcerated, all over a parking violation in a private parking lot. Kroger's inaction in failing to instruct employees such as Defendant McNeil on how to enforce its parking restrictions resulted in a violation of Moore's Fourth Amendment Constitutional rights that should never have happened. Krogers can not seek to use the power and authority of state law in the form of employees who offer official police protection and wield it so recklessly as it did here, then expect to back away from its use of state power and claim to be a private actor. Summary judgment in favor of Kroger's is inappropriate.

### D.    Moore's State Law Claims Are Not Appropriate For Summary Judgment.

Both the Defendant Officers and Krogers argue that summary judgment should be granted on Moore's state law claims of malicious prosecution, false arrest and imprisonment, and intentional infliction of emotional distress, as well as tortious interference. (Defendants also misguidedly argue Plaintiff's punitive damages claim ought to be addressed on summary judgment; that is incorrect as it is simply a claim which is derivative of Plaintiff's substantive claims and an issue to be addressed when the case goes to trial in jury instructions after the evidence is presented).[1]

---

[1] Defendants also argue that Plaintiff's state supplementary claims must be dismissed if summary judgment on Plaintiff's federal claims is granted. Although Plaintiff's federal claims are not appropriate for summary judgment, Defendants are incorrect in any event. A federal court may, in its discretion, exercise supplemental jurisdiction

15

Genuine issues of material fact abound with regard to Plaintiff's state law claims as well and they are inappropriate for summary judgment. The thrust of Defendants' arguments on each of these claims is practically identical to that already made with regard to the Plaintiff's Section 1983 claims, namely that the Defendant Officers were acting solely in their capacity as Cincinnati Police Officers enforcing the law. As pointed out above, that is insupportable when the record evidence is reviewed. The Defendant Officers were implementing and enforcing Kroger's private parking policy, not any state or local law. And it is abundantly clear that respondeat superior liability does exist for Moore's state tort law claims. *See Evans, supra.*

With regard to Moore's malicious prosecution claim, malice may be inferred from a lack of probable cause, which is sharply disputed here. *See Evans, supra.* Defendants rely upon the City of Cincinnati's training of the Defendant Officers to argue that Plaintiff's negligent supervision claim fails as a matter of law. Again, Defendants miss the point. The Defendant Officers were not acting as Cincinnati Police Officers to enforce the laws of either Ohio or the City of Cincinnati. Officer McNeil was acting as an employee of Krogers, and what was being enforced was Kroger's parking policy. No matter how much the Defendants would like to erase and ignore the evidence that Moore was arrested for violating a private parking policy of Krogers, the facts in the record speak for themselves. City of Cincinnati Police officers do not, as

---

pursuant to 28 U.S.C. 1367 over state law claims arising from the same case or controversy as a federal claim. This is true even where the federal claim has been dismissed prior to trial. The Sixth Circuit has held:

"It is apparent that trial courts do possess some discretion to decide a pendent state law claim once the federal basis for jurisdiction is dismissed. A trial court must balance the interests in avoiding needless state law decisions . . . against the "common sense" policies of judicial economy . . . when deciding whether to resolve a pendent state claim on the merits." Aschinger v. Columbus Showcase Co., 934 F.2d 1402, 1412 (6th Cir. 1991) (internal citation omitted).

Although a district court may dismiss state law claims where the federal claims are dismissed before trial, dismissal is certainly not mandatory. See id. at 1412-13; see also Taylor v. First of America Bank-Wayne, 973 F.2d 1284, 1287 (6th Cir. 1992).

16

part of their official duties, enforce Kroger's parking policies under state law by arresting persons who park in privately reserved parking spots. Kroger had an obligation to train its employee off-duty officers as to how to enforce its parking policy without violating its customers rights. It utterly failed in that duty, to the point of recklessness. *See Groom, supra.* Finally, with regard to Moore's claim for intentional infliction of emotional distress, it certainly is within the purview of the jury to find that arresting and incarcerating the Plaintiff for something which the Defendant Officers knew was not an arrestable offense, in a public manner at a place where the Plaintiff did business on a regular basis is so outrageous as to justify liability for this tort.

## IV.    **CONCLUSION**

For the reasons contained herein, Plaintiff respectfully requests that Defendants' Motions for Summary Judgment be denied.

Respectfully Submitted,

/s/ W. Kelly Lundrigan
Robert E. Manley      (000849)
W. Kelly Lundrigan   (0059211)
Manley Burke
225 West Court Street
Cincinnati, Ohio 45202
Telephone:    (513) 721-5525
Facsimile:    (513) 721-4268
email wkl@manleyburke.com
**Trial Attorneys For Plaintiff**

17

## CERTIFICATE OF SERVICE

I hereby certify that the foregoing Memorandum is being served via electronic

notification through the court to all parties entitled to service under Rule 5 of the Federal Rules

of Civil Procedure on the 24th day of November, 2003.

/s/ W. Kelly Lundrigan
W. Kelly Lundrigan

**SERVICE LIST:**

Lawrence E. Barbiere
Schroeder, Maundrell, Barbiere & Powers
11935 Mason Road
Suite 110
Cincinnati, Ohio 45249-3703
lbarbiere@schroederlaw.com

Thomas J. Harris
Assistant City Solicitor
Room 214 City Hall
Cincinnati, Ohio 45202
tom.harris@cincinnati-oh.gov

N:\CLIENTS\Moore, Antonio\Civil Rights Matter\Pleadings\Memo Opposition MSJ.doc