1              HAMILTON COUNTY MUNICIPAL COURT

2                  HAMILTON COUNTY, OHIO

3                    CRIMINAL DIVISION

4                        - - -

5    STATE OF OHIO,            :

6           Plaintiff,         :

7                              :

8        vs.                   : CASE NO. 01 CRB 204079

9                              :

10   ANTONIO MOORE,            :

11         Defendant.          :

12                        - - -

13          COMPLETE TRANSCRIPT OF PROCEEDINGS

14                        - - -

15   APPEARANCES:

16         Gertrude Garland, Esq.,

17              On behalf of the Plaintiff.

18         Edward C. Perry, Esq.,

19              On behalf of the Defendant.

20              BE IT REMEMBERED that upon the

21   Trial of this cause, in the Hamilton County

22   Municipal Court, before the Honorable John H.

23   Burlew, one of the said judges of the said court,

24   on the date stated herein, the following

25   proceedings were had, to wit:

EXHIBIT
A
Burlew No. 5298

1                            I N D E X

2    *WITNESSES*

3    For Plaintiff:                              page

4    OFFICER MARCUS McNEIL
      Direct Examination by  Ms. Garland        5:22
5      Cross-Examination by  Mr. Perry          10:8

6    OFFICER MICHAEL SCHULTE
      Direct Examination by  Ms. Garland        11:13
7

8    *EXHIBITS*

9

10   *For Plaintiff*:

11   1       Photo of Truck parked
     Identified                                 7:18
     Received                                   18:18
12
     *For Defendant*:
13
     1       Photo of Sign
14   Marked for Identification                  17:13

15

16

17

18

19

20

21

22

23

24

25

1       MORNING SESSION, July 24, 2001

2           (State's Exhibit Number 1 was marked

3       for identification.)

4           MS. GARLAND:  Antonio Moore.

5           MR. PERRY:  Ready for trial, Judge.

6           THE COURT:  Swear the witnesses.

7           (witnesses sworn.)

8           MS GARLAND:  State would request

9       separation of witness, Your Honor.

10          THE COURT:  All right.  Any

11      witnesses, except the first witness, step

12      into the hallway.  Please do not discuss

13      your testimony with each other until this

14      case is over.

15          (Rule invoked.)

16          THE COURT:  Opening statements?

17          MS. GARLAND:  State would waive

18      opening.

19          MR. PERRY:  We have an opening,

20      Judge.

21          Your Honor, the evidence will show

22      that Tony Moore is 42 years old.  He's

23      married.  He's been married for 14 years.

24      He's had three children.  He's a lifelong

25      resident of the Cincinnati area.  And he

1    was educated in Cincinnati.

2          After he graduated from college at

3    UC, he began to work for five years at

4    Milicron.  He left Milicron for GE, where

5    he worked for 13 years.  When he left

6    General Electric he bought a minimall.  It

7    is also the subject of today's proceedings.

8    He owns and operates four stores at the

9    minimall.

10          As the owner and operator he works

11    between 12-hour and 14-hour days.  On June

12    21, 2001, Tony had worked a full day.  It

13    was about eight o'clock when he drove over

14    to the Fifth Third branch located in the

15    Kroger store.  It was about five minutes

16    before closing.  He had gone to the Fifth

17    Third bank to make his daily deposits, as

18    he does every night.  Tony parked in a spot

19    in the -- marked with a sign that said:

20    Reserved For Police.

21          The evidence will show that a police

22    officer asked Tony to move his truck.  Tony

23    did not move the truck as requested, but he

24    did tell the officer that should he think

25    to propose a citation, it would be in

1    order, or a ticket would be in order, or

2    even towing the car would be in order.  A

3    citation was not issued.  The car was not

4    towed.  The evidence will show that Tony

5    was arrested.  The evidence will show that

6    Tony's conduct was not criminal.  And did

7    not rise to the level of disorderly

8    conduct.  That's all we have right now,

9    Judge.

10    THE COURT:  Thank you very much.

11    First witness?

12    MS. GARLAND:  First witness is

13    Officer McNeil.

14    OFFICER MARCUS MCNEIL

15    having been first duly sworn, was examined and

16    testified as follows:

17    THE COURT:  Officer, will you state

18    your name into the microphone.  Place of

19    assignment.

20    THE WITNESS:  Officer Marcus McNeil.

21    District 5.  McNeil, M-C-N-E-I-L.

22    DIRECT EXAMINATION

23    BY MS. GARLAND:

24    Q.    And, Officer, were you so employed on

25    June 21st of 2001?

1          A.    Yes, I was.

2          Q.    On that day, did you come in contact

3    with Antonio Moore?

4          A.    Yes, I did.

5          Q.    Is Mr. Moore in the courtroom today?

6          A.    Yes, he is.

7          Q.    Would you indicate where he's seated,

8    what he's wearing?

9          A.    Male black sitting at defense table,

10   with the black suit, white shirt.

11         Q.    Where were you when you came in

12   contact with the defendant?

13         A.    I was on an off-duty detail at Kenard

14   Krogers.

15         Q.    Is that location City of Cincinnati,

16   Hamilton County, Ohio?

17         A.    Yes, it is.

18         Q.    Okay.  Could you describe for the

19   Court what happened?

20         A.    Mr. Moore pulled into the parking

21   lot.  He parked in the space that's designed for

22   police vehicles only, due to the substation.  He

23   got out of his truck, walked into the store, where

24   I asked Mr. Moore to move his car.  He told --

25   this is the second time he's done this to me.  He

1  told me:  Fuck you, do what you have to do.

2  There's no city ordinance for parking in a parking

3  space that's designed for police vehicles.

4              I asked him again to move.  He told

5  me no, do what I have to do.  I then asked for

6  another car to come.

7       Q.    You say there's a subtation?

8       A.    Yes.

9       Q.    What does that mean?

10             THE COURT:  It's a minipolice

11       station.  I know.

12       Q.    Okay.  And the parking place spot is

13  reserved?

14       A.    Yes.  It's two spots up in front of

15  the store.  They face each other.  There's a pole

16  in the middle that says:  No Parking.  Police

17  Vehicles Only.

18       Q.    I'm going to hand you what's been

19  marked for identification as State's Exhibit

20  Number 1.  What is that?

21       A.    That's Mr. Moore's truck parked in

22  the parking space.

23       Q.    Okay.  And what else is in the

24  picture?  Or when was this picture taken?

25       A.    This was taken June 21, 2001.

1      Q.    Okay.  And was -- does that depict

2    the car parked in the --

3      A.    Yes.

4      Q.    -- spot that's reserved for the

5    police?

6      A.    That's correct.

7      Q.    Okay.  And when you called for

8    backup, what happened?

9      A.    The other car came.  We -- then we

10   still continued to ask Mr. Moore just to move his

11   car.  He -- then his behavior became

12   inappropriate.

13     Q.    What, specifically, did he do?

14     A.    He began to -- it wasn't real loud,

15   but he was persistent to where a crowd gathered,

16   and just that he was -- he had more opportunity to

17   park in that spot, just as well as we did.  There

18   was a thing about the justice department being

19   there, and he wanted to prove a point to everybody

20   that, you know, this is not a city ordinance that

21   he couldn't park there.

22     Q.    Okay.  How many people would you say

23   gathered?

24     A.    Maybe ten.

25     Q.    Okay.  And did this cause a problem

1    for the police?

2        A.    Yes.

3        Q.    How so?

4        A.    People gathered, and everybody wanted

5    to know what was going on, and then kind of -- it

6    almost got in the way of what we were trying to do

7    on hand with Mr. Moore.  Everybody was trying to

8    figure out what was going on.  People exiting out

9    of the store.

10       Q.    Okay.  And how did you say it got in

11   the way?

12       A.    Well, we were on the apron, the front

13   apron, which is just the walkway in front of the

14   store, which it's not wide enough for more than

15   two or three people to stand on.  We were there,

16   and these people coming out of the store, it

17   started getting crowded.

18       Q.    And now you say at one time the

19   defendant cursed at you, fuck you.  Did he make

20   any other specific statements?

21       A.    No, that was just it.  I'm going to

22   the store.  I got business to do with the bank.

23   Do what you have to do.

24       Q.    Okay.  And how many times would you

25   say you asked him to move his car?

1          A.    Myself, maybe eight times.

2          Q.    And who placed the defendant under

3     arrest?

4          A.    Officer Schulte.

5               MS. GARLAND:  Okay.  That's all I

6          have, Your Honor.

7               THE COURT:  Cross-examine, Mr. Perry?

8                    CROSS-EXAMINATION

9     BY MR. PERRY:

10         Q.    Did the conversation between you and

11    Tony take place inside of Krogers?

12         A.    It took place right in the -- as you

13    walk to the first set of double doors, where they

14    keep the basket carts at.

15         Q.    It didn't happen out in the parking

16    lot?

17         A.    No.

18               MR. PERRY:  Nothing further.

19               THE COURT:  Redirect?

20               MS. GARLAND:  No, Your Honor.

21               THE COURT:  You may step down,

22          Officer.

23               (Witness excused.)

24               MS. GARLAND:  State will call Officer

25          Schulte.

1

2                    OFFICER MICHAEL SCHULTE

3      having been first duly sworn, was examined and

4      testified as follows:

5                    THE COURT:  Officer, could you state

6           your name into the microphone?

7                    THE WITNESS:  Officer Michael

8           Schulte, S-C-H-U-L-T-E.

9                    THE COURT:  Your place of assignment?

10                   THE WITNESS:  Assigned at District 5,

11          second shift.

12                   THE COURT:  Ms. Prosecutor?

13                        DIRECT EXAMINATION

14     BY MS. GARLAND:

15          Q.    Officer, were you so assigned on June

16     21, 2001?

17          A.    Yes, I was.

18          Q.    Okay.  On that date, did you have

19     occasion to come in contact with Antonio Moore?

20          A.    Yes, ma'am, I did.

21          Q.    Okay.  Where did that contact occur?

22          A.    It occurred at the Krogers on Kenard

23     Avenue, I believe it's 4777 Kanard.

24          Q.    What was the occasion?  How did you

25     happen to be there?

1          A.     There was a detail officer that was

2    working a detail at that particular Krogers, and

3    he came over the radio and asked for a uniform

4    police vehicle to meet him at Krogers.

5          Q.     When you arrived at the location,

6    what happened?

7          A.     He had called reference a disorderly

8    customer, or something of that nature.  When we

9    arrived there, he told us that Mr. Moore had

10   parked in a spot that was reserved for police

11   vehicles, due to the substation being located in

12   Krogers, and that the defendant refused to move

13   his vehicle and was acting, you know, disorderly,

14   you know, when Officer McNeil approached him about

15   it.

16         Q.     Now, did you have an opportunity to

17   observe the defendant, once you arrived at the

18   scene?

19         A.     Yes, I did.

20         Q.     And what did you observe about the

21   defendant?

22         A.     When I arrived on the scene, like I

23   said, I didn't know who the defendant was at

24   first.  I asked the defendant (sic), you know, who

25   it was.  He told me it was Mr. Moore.  He was

1    standing there, was, you know, there's pillars in

2    front of the main entrance, and he was leaning

3    against the pillar, kind of with his hands

4    crossed.

5        Q.    The defendant?

6        A.    That's correct.

7        Q.    Okay.  Did you have contact with him?

8        A.    Yes, I did.  I asked him, you know,

9    what was going on.  You know, he said that, you

10   know, the officer asked him to move his vehicle.

11   He refused, and I asked him why he wouldn't move

12   his vehicle.  He said he was trying to prove a

13   point, and that, you know, we didn't have any

14   right to enforce the parking there.  I explained

15   to him, you know, that was for police vehicles,

16   because there was a substation, you know, we go in

17   there to do reports, and they do details there

18   daily.  You know, there was a crowd gathering, for

19   Mr. Moore -- like I said, we were standing right

20   at the main entrance, there were people going in

21   who stopped to listen, people coming out.  There

22   was a small group gathering.

23            Finally, after at least ten minutes

24   of trying to talk him into moving his vehicle, you

25   know, and trying to discontinue his behavior, I

1  told him if you don't stop and move your vehicle,

2  we're going to place you under arrest for

3  disorderly conduct.  And his reaction was, he

4  said, let me get this straight.  If I don't stop

5  and move my car, you're gonna take me to jail.  I

6  said, that's exactly what we're gonna do.  He

7  said, well, fuck it then, take me to jail.

8         Q.    So you placed the defendant under

9  arrest at that point?

10        A.    That's correct.

11              MS. GARLAND:  Nothing further.

12                  CROSS-EXAMINATION

13  BY MR. PERRY:

14        Q.    Why didn't you ticket the car?

15        A.    I did not -- after we transported him

16  to the Justice Center, we were done with the

17  contact.  We were called --

18        Q.    Well, you were up at the store for a

19  while, and you talked to him; is that right?

20        A.    That's correct.

21        Q.    Why didn't you just ticket the car,

22  if he refused to move it?

23        A.    Why did we just not ticket the car?

24        Q.    Right.

25        A.    I don't believe there is a section.

1  I know we can write parking tickets for blocking a

2  fire hydrant and handicapped parking, that's

3  correct.

4       Q.    Well, he wasn't parked in handicapped

5  parking?

6       A.    No, sir.

7       Q.    He wasn't blocking a fire hydrant?

8       A.    No.  Like I said, it was a spot that

9  has a sign posted that says it's for police

10  vehicles.

11       Q.    It says:  For Police Vehicles, but

12  you do not have the authority to cite the car,

13  ticket the car?

14       A.    We didn't cite the car, no.

15       Q.    Could you have towed the car?

16       A.    I believe we could have asked Krogers

17  to tow it, if we wanted it towed, yes.

18       Q.    Did you ask Kroger to tow the car?

19       A.    No, we didn't.  We believed taking

20  Mr. Moore to the Justice Center was sufficient.

21       Q.    When you arrived, was Tony inside the

22  Krogers or outside the Krogers?

23       A.    He was outside.

24       Q.    And you said that he had his arms

25  crossed, like this.  He was leaning against the

1    outside on a pillar or something?

2         A.    Yeah.   When you walk into the Krogers

3    there's a -- like an awning, I guess, for people

4    to walk in if it's raining, and they have cement

5    pillars.

6         Q.    Was it raining on this evening?

7         A.    No.

8         Q.    Oh, okay.  So he was outside.   Where

9    was the other officer?

10        A.    The other officer was standing a few

11   feet away from him.

12        Q.    Okay.  So when you describe

13   disorderly behavior, what you're describing is a

14   man standing against the pillar with his arms

15   crossed?

16        A.    Well, like I said, the behavior

17   isn't, you know, disorderly, doesn't have to be,

18   you know, you can be standing there, but your

19   vocal actions could also be disorderly, like I

20   said.

21        Q.    Was he yelling?

22        A.    No, but when we would say something

23   to him, he would repeat it loud enough to cause a

24   crowd to gather.

25        Q.    Have you got the picture, Officer?

1      A.    No, this is just my workbook.

2      Q.    No, there was a picture the other

3 officer had.

4            MS. GARLAND:  He must have taken it.

5            MR. PERRY:  I'll ask him real quick.

6            MS. GARLAND:  I'll get it.

7      Q.    This photograph was taken on June 21?

8      A.    Yes, it was.

9      Q.    Is there anything different -- if

10 that photograph were to be taken today, would

11 there be anything different about it?

12     A.    I would have to say no.

13           (Defendant's Exhibit 1 was marked for

14           identification.)

15     Q.    I've just handed you what's been

16 marked as Defense Number 1.  What is that a

17 photograph of?

18     A.    It's a photograph of the parking --

19 the sign that's in this picture.

20     Q.    It's the same sign?

21     A.    No, I believe there's an additional

22 sign added at the bottom.

23     Q.    Do you know if that sign was added

24 after this incident?

25     A.    I imagine it was, since it's not in

1    this picture.

2            MR. PERRY:  I have nothing further,

3        Judge.

4            THE COURT:  Redirect?

5            MS. GARLAND:  No, Your Honor.

6            THE COURT:  Officer, you may step

7        down.

8            THE WITNESS:  Thank you, Your Honor.

9            (Witness excused.)

10           MS. GARLAND:  Your Honor, state would

11       request to move exhibit, State's Exhibit

12       Number 1 into evidence.

13           MR. PERRY:  Your Honor, no objection.

14       The fact that -- maybe it's premature, but

15       I'd also like to move Defense Number 1 into

16       evidence as well.

17           THE COURT:  No, I'll accept 1.

18           (State's Exhibit Number received into

19       evidence.)

20           THE COURT:  I will not receive two at

21       this time.  They will be admitted.

22           MS. GARLAND:  Your Honor, at this

23       time the state would rest.

24           THE COURT:  Mr. Perry?

25           MR. PERRY:  Judge, we would like to

1   start with a Rule 29 motion for acquittal.

2       THE COURT:  All right.

3       MR. PERRY:  Should I argue it, Judge?

4   I will.

5       THE COURT:  No.  You don't need to

6   argue.

7       MS. GARLAND:  Your Honor, the

8   defendant was charged with causing

9   annoyance to the officers by engaging in

10  conduct that was physically offensive and

11  served no lawful purpose.  At this time he

12  caused a crowd to gather at the main

13  entrance of Krogers, speaking abusively to

14  the police officers.  They requested that

15  he move his truck that was parked in a

16  space that was designated for the officers.

17  He persisted in that behavior without

18  regard to the police.  The state requests

19  the Rule 29 be overruled on that basis,

20  Your Honor.

21      THE COURT:  Would you bring the

22  witnesses in?  I'm gonna to grant the

23  motion.  I'll give my reason.

24      The defense has raised a motion

25  pursuant to Rule 29, and I'm gonna grant

1    it, and I want to explain why.  The

2    evidence has shown one thing beyond a

3    reasonable doubt, is that the defendant has

4    not the best of manners, I would say bad

5    manners, and your interaction, at least in

6    terms of the police officers, could have

7    been a lot better, but this is a case where

8    speech is said to be legal.  And when you

9    do that, there are very specific

10    requirements on those cases.  They are

11    contained in Cheplinsky (phonetic) versus

12    New Hampshire, Cincinnati versus Karla, and

13    primarily, when speech is gonna be made

14    illegal, it has to be fighting words or

15    words of such a nature that are gonna

16    provoke people to immediate violence.  In

17    that case, speech will be -- can be

18    punishable.  I commend both you officers

19    for giving me the testimony completely and,

20    apparently, the way it was, unfortunately,

21    the Supreme Court has said that you can say

22    F the pigs, F this, F that.

23        That alone is not illegal.  Both of

24    you, the way it is described, in terms of

25    having the collateral behavior, is just not

1    sufficient enough to show that the words

2    were illegal.

3        Officer Schulte, particularly, when

4    you came in, the one thing you have to do

5    is be pointed to the defendant, which means

6    the behavior was not such, at least when

7    you observed it, that you say this is

8    illegal behavior.  Once things were recited

9    to you, once the defendant wouldn't leave,

10   then to charge a disorderly seemed

11   appropriate, but those words have a legal

12   meaning, not the ordinary meaning of those

13   words of the English language, very

14   disorderly, proper.  Any ordinary use of

15   those words, probably.  Were people

16   attracted to that location?  Probably.  Was

17   it inconvenient to the merchant?  Maybe.

18   In terms of a crowd gathering, but were

19   these words sufficient to be construed as

20   fighting words?  No, they were not.

21       And the consistent behavior that you

22   have to have, to make speech illegal, to

23   me, under the cases I've indicated

24   previously, just is not there.  For that

25   reason alone I will grant the Rule 29

1  motion, but to you, sir, it's not a badge

2  of courage, you know.  You've got an

3  establishment, and there will come a time

4  where you'll need and want, you know,

5  assistance.  And you'll want help, and

6  there are better and more civilized ways to

7  interact.  But insofar as determining this

8  conduct is guilty or not, I have to say no.

9  If there's no authority to take the car,

10  you can't use the taking of the body as a

11  substitute for the taking of the car.

12  Unfortunately, you have that gap, which is

13  no match.  Rule 29 motion for judgment of

14  acquittal is grant.

15      Rule 29 for judgement of acquittal is

16  granted.

17      MR. PERRY:  Thank you, Judge.

18      THE COURT:  Thank you.

19      (Proceedings concluded.)

20

21

22

23

24

25

C E R T I F I C A T E

     I, Sharlene D. Hall, RPR, the undersigned, do hereby certify that at the time and place stated herein, I did transcribe Shannon Schmitt's stenotype and thereafter did transcribe said stenographic notes into typewriting the within (22) pages; and that the foregoing transcript of proceedings is a true, complete and accurate transcription of said stenographic notes.

     IN WITNESS WHEREOF, I have hereunto set my hand at Cincinnati, Ohio, on this 15th day of January, 2002.


                        _____
                        Sharlene D. Hall, RPR
                        Official Court reporter

**HAMILTON COUNTY MUNICIPAL COURT**
**JOURNAL ENTRY - MITTIMUS**

CASE: 01-CRB-20479

DEFENDANT: Moore Antonio

JUDGE:

CTLNO: 773353   TICKET:

PROB. VIOL: _____

SEC. VIOL: 2917-11A
CHARGE: DC

ARREST DATE: 6-21-01
JMS_NUMBER:
SEX:   D.O.B. 2-9-59
DEF. COUNSEL: ED PERRY
PROS. WIT:

CLERK'S USE ONLY
INITIALS: _____
PAYMENT DATE: _____   RECEIPT NO: _____
FINE: _____   COSTS: _____   CONCAR: _____
WIT FEES: _____   JURY FEES: _____   P.D. FEES _____
LIP FEE: _____   BMV FEE: _____   TOTAL PAID _____

TO THE SHERIFF OF HAMILTON COUNTY, GREETINGS: Where as, the above defendant was arrested and charged with the above section number. For good cause shown, the defendant is ordered to give bail in the sum indicated below. You are, therefore, commanded to receive the defendant into your custody until the trial date, or until he/she gives bail as ordered. Or, whereas, the above defendant, having been tried and convicted of said charge(s) is sentenced, as indicated below. Therefore, we command you to receive the defendant into your custody, there to remain until he/she has fully executed the terms of the sentence, or until otherwise discharged by due course of law.

| DATE | ACTION | SIGNATURE OF JUDGE |
|------|--------|--------------------|
| | Arraignment - Probable cause to hold demonstrated ( ) YES ( * ) NO  THE BOND SHALL BE $_____ MAY BE AT 10% ( ) YES ( ) NO | |
| 7-24-01 | Not Guilty - Rule 29 Motion for Judgment of Acquittal at close of State's Case Granted. No fighting words | Burlowej |
| | I, Gregory Hartmann, Clerk of the Hamilton County Municipal Court, Hamilton County, Ohio, hereby certify the above to be a true and correct copy of the original. By _____ Deputy Court Clerk | |



EXHIBIT
B