IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| **ANTONIO MOORE** | : | Case No. C-1-02-430 |
| | : | |
| Plaintiff, | : | Honorable Judge Weber |
| | : | |
| | : | |
| | : | |
| v. | : | |
| | : | **PLAINTIFF'S PROPOSED** |
| | : | **FINDINGS OF FACT AND** |
| | : | **CONCLUSIONS OF LAW  AND** |
| | : | **HIGHLIGHTED RESPONSES TO** |
| **KROGER COMPANY, et al.** | : | **DEFENDANTS' PROPOSED** |
| | : | **FINDINGS OF FACT AND** |
| | : | **CONCLUSIONS OF LAW AND** |
| | : | **MOTION TO FILE SAME OUT OF** |
| | : | **TIME** |
| Defendants. | | |

Plaintiff Antonio Moore submits his Proposed Findings of Fact and Conclusions of Law along with Plaintiff's highlighted version of Defendants' Proposed Findings of Fact and Conclusions of Law, attached as Exhibits A, (Defendant Kroger Company), and Exhibit B, (Defendants McNeil, Schulte and Bley), and moves the Court to accept the Proposed Findings and Conclusions out of time. Plaintiff's counsel believed he had filed the Proposed Findings of Fact and Conclusions of Law electronically on the day of November 25, 2003, after being informed the day before that the highlighted versions must be submitted electronically and highlighted using Adobe software rather than hand written highlighting, (which will not show up in color on the electronic filing), but through inadvertent mistake evidently did not successfully achieve electronic filing of the Proposed Findings and Conclusions on the 25th of November.

Counsel did not notice and was unaware of its mistake until receiving Defendant Kroger Company's Reply Memorandum on December 4, 2003, in which the omitted filing was raised. Counsel subsequently discovered its original highlighted Adobe file was corrupt, and has hopefully successfully reworked the file as herein. Counsel will also serve hard copies of this filing today, and apologizes for any inconvenience due to the error.

I.      **PROPOSED FINDINGS OF FACT**

1.      The record evidence brought forth by Plaintiff Antonio Moore establishes that Plaintiff Moore was arrested for a violation of Defendant Kroger Company's parking policy by Defendant off-duty Cincinnati Police Officer McNeil who was acting as an employee of Defendant Kroger Company, and by on-duty Defendant Cincinnati Police Officers Schulte and Bley.

2.      These three Defendant Police Officers, while acting under color of state law and utilizing the power and authority vested in them by the State of Ohio to arrest, and while wearing the uniform of the City of Cincinnati Police Department and City issued guns and badges, arrested and incarcerated Plaintiff Moore because he parked in a parking spot marked "Reserved for Police" by Defendant Kroger Company.

3.      Plaintiff Moore did not engage in and was not arrested for "disorderly conduct" as defined by O.R.C. §2917.11(A).

4.      The facts that support this finding are as follows. Plaintiff Moore is self-employed, and owns his own business.

5.      Plaintiff Moore does the banking for his business at the Fifth Third Bank branch located in the Defendant Kroger Company grocery store at 4777 Kenard Avenue, in Cincinnati.

6. On June 21, 2001, Plaintiff Moore needed to make a deposit for his business after work, and arrived at Defendant Kroger Company shortly before the store was scheduled to close.

7. A Cincinnati Police substation is located within the Defendant Kroger Company's store, for use by on-duty police officers and for off-duty detail officers who are working at Defendant Kroger Company.

8. Defendant Kroger Company hires off-duty Cincinnati Police Officers to work for the store on a 24 hour rotational basis; Defendant McNeil among is among them.

9. As part of the off-duty detail requirements at Defendant Kroger Company, Officers sign in inside the store, and patrol inside and outside on the store property.

10. Officers receive briefings from Defendant Kroger Company's managers on specific problems regarding the store.

11. Among the duties off-duty office perform are enforcing parking regulations in the parking lots of the stores.

12. Defendant McNeil considers himself an employee of Defendant Kroger Company while working the detail at Defendant Kroger Company, and is paid by Defendant Kroger Company.

13. Defendant Lt. Bley also considers off-duty detail officers, (a group which has included Lt. Bley), to be employees of the particular business for which they are doing the assignment.

14. The off-duty officers report any employment problems to Defendant Kroger Company management.

15. Defendant Kroger Company's managers are made aware of any police activity in the property.

16. The off-duty Cincinnati Police Officer Defendant McNeil which Defendant Kroger Company hired to work on June 21, 2001, received virtually no training from Defendant Kroger Company at all, and specifically, no training or instruction with regard to how to enforce Defendant Kroger Company's parking policy and how to police its parking lot and deal with its customers.

17. The off-duty Cincinnati Police Officer Defendant McNeil which Defendant Kroger Company hired to work on June 21, 2001, had unfettered discretion to implement and enforce the parking policy of Defendant Kroger Company as established by the sign at issue in this case.

18. On June 21, 2001, Defendant McNeil was working the security detail for Defendant Kroger Company.

19. Defendant McNeil was wearing his regular Cincinnati Police Division uniform, badge and utility belt with a City-issued nightstick, service weapon and radio.

20. When Plaintiff Moore arrived at the store shortly before 8 p.m., Plaintiff Moore saw an empty parking space near the door of the Defendant Kroger Company store. A sign marked "Reserved for Police Cars" was on the pole in front of the parking space.

21. The sign was Defendant Kroger Company's sign.

22. Parking in that parking spot by a non-policeperson is a parking violation of Defendant Kroger Company parking policy, and not a criminal violation of any public law.

23. Plaintiff Moore parked in the parking space due to the lateness of the hour, the fullness of the parking lot, and the fact that he still had to count the deposit items and fill out the deposit slip for his bank deposit.

24. Plaintiff Moore had on previous occasions parked in that parking space while in Defendant McNeil's presence.

25. Unmarked cars and sport utility vehicles regularly parked in the space marked "Reserved for Police Cars."

26. After Plaintiff Moore left his car, Defendant McNeil stopped Plaintiff Moore and in a very rude and offensive voice, demanded he move his vehicle.

27. Plaintiff Moore explained that he needed to make a deposit before the bank closed, that he would only be a minute, and that Defendant McNeil could ticket the car or tow it if he had to do that.

28. Defendant McNeil responded that Plaintiff Moore could "move his vehicle or go to jail."

29. Plaintiff Moore again told Defendant McNeil to ticket the vehicle or tow it if he had to, but that he really needed to make the deposit.

30. Defendant McNeil responded to Plaintiff Moore stating "your going to jail."

31. Plaintiff Moore demanded to speak to McNeil's supervisor; a request which was ignored by Defendant McNeil.

32. Normally, Defendant McNeil would ask the Defendant Kroger Company Manager how to handle this specific situation, and it would be Defendant Kroger Company's decision as to how to handle it, but Defendant McNeil admits he did not do so on this occasion.

33. Defendant Kroger Company's parking lot is private property of Defendant Kroger Company.

34. Defendant McNeil requested more Cincinnati Police officers respond to the scene.

35. Defendant Schulte responded to the request, which he says was not "an emergency" call.

36. Defendant Police Officer Lieutenant Dale Bley was the final officer to arrive at the scene in response to the radio request from Officer McNeil.

37. Defendant Lt. BIey asked Defendant McNeil after he arrived on the scene "your not arresting him because he parked in that parking place, are you....?"

38. Defendant Lt. Bley told Plaintiff Moore at the scene "this whole thing could have been avoided had he not parked his truck there to begin with, and the purpose for the sign there..." and "just move your car back and we'll just let all this stuff go."

39. Plaintiff Moore still refused to move his vehicle.

40. Defendant Schulte handcuffed Plaintiff Moore, put him in the back of his police car before patrons and employees of the Defendant Kroger Company store and Fifth Third Bank where he regularly was seen and conducted business,.

41. The complaint against Plaintiff Moore was for "disorderly conduct."

42. The complaint relates that Plaintiff Moore's refusal to move his car was the factual basis for the disorderly conduct charge. Plaintiff Moore was never informed by any of the officers of the charge for which he was under arrest.

43. Defendant McNeil made it repeatedly clear during his encounter and conversation with Plaintiff Moore that he was going to be arrested for refusing to move his car, and, in fact, did arrest Plaintiff Moore for Plaintiff Moore failing to move his vehicle from the parking spot.

44. There was no crowd gathered during the encounter between Plaintiff Moore and Defendant Officers McNeil, Bley and Schulte and Plaintiff Moore never engaged in any

offensive, unruly, disorderly, disruptive, aggressive or threatening conduct of any sort during any of the events.

45. Defendant Officer Lt. Bley later was told to instruct Defendant Officer Schulte that "those signs were not enforceable as far as police powers were concerned" as the result of an after-the-fact investigation of the entire incident by the Department.

46. Defendant Officer McNeil believes he reported the arrest to Defendant Kroger Company management the same evening it happened.

47. Defendant Officer Schulte transported Plaintiff Moore to the Hamilton County Justice Center where Plaintiff Moore was photographed and fingerprinted, and Plaintiff Moore was incarcerated far several hours before he was released an bond.

48. Plaintiff Moore was charged with a violation of Ohio Revised Code §2917.11(A), a fourth degree misdemeanor, for "engaging in conduct that was physically offensive and served no lawful purpose.

49. Plaintiff Moore hired an attorney to defend against the criminal charge assigned case number/01lCRB/204079 an the docket of the Hamilton County Municipal Court.

50. The transcript .of the criminal trial is in the record and is attached as Exhibit B to the Plaintiff Moore's Affidavit.

51. On July 24,2001, after the State presented its evidence, Hamilton County Municipal Court Judge John Burlew dismissed the charge pursuant to Ohio Criminal Rule 29, which provides the Court shall acquit a defendant if the evidence is insufficient to sustain a conviction.

**II.    PROPOSED CONCLUSIONS OF LAW**

  1.  The violation of Defendant Kroger Company's parking policy occurred in Defendant Kroger Company's private parking lot and was not a violation of any state law or city ordinance for which arrest and criminal charges could lie.

  2.  The arrest of Plaintiff Moore by the three Defendant Cincinnati Police Officers was not supported by probable cause.

  3.  Plaintiff Moore's arrest was illegal, was unsupported by any existing law, and was a violation of Plaintiff Moore's constitutional rights under the Fourth and Fifth Amendments to the United States Constitution, made applicable to the State of Ohio through the Fourteenth Amendment.

  4.  The three Defendant Police Officers are not entitled to qualified immunity as the arrest of Plaintiff Moore violated his clearly established rights secured by the Fourth and Fifth Amendments to the United States Constitution.

  5.  Defendant Kroger Company engaged in the use of state authority by its hiring of Defendant Police Officer McNeil to enforce Defendant Kroger Company's policy, including its parking policies, and to enforce security on its property and premises, by hiring Defendant Police Officer McNeil to work in that capacity using his City of Cincinnati issued police uniform, gun, badge, radio, and other equipment, and to utilize this equipment and his authority as a Cincinnati Police Officer to accomplish these goals.

  6.  Defendant Police Officer McNeil was an employee of Defendant Kroger Company and Defendant Kroger Company is liable for his actions on Plaintiff Moore's 42 U.S.C. § 1983 claims under the doctrine of *respondeat superior.Groom v. Safeway, Inc.* (W.D. Washington 1997), 973 F.Supp. 987.

7. Defendant Police Officer McNeil was an employee of Defendant Kroger Company and Defendant Kroger Company is liable for his actions on Plaintiff Moore's state law claims under the doctrine of *respondeat superior. Evans v. Smith* (Hamilton Cty. 1994),97 Ohio. App.3d 59.

8. Defendant Kroger Company acted as a state actor, and in joint action in a joint venture with Defendant Police Officer McNeil to accomplish Defendant Kroger Company's private goals for which it hired Defendant Police Officer McNeil. *Adickes v. S.H. Kress & Co.*(1970), 398 U.S.144; *Groom v. Safeway, Inc.* (W.D. Washington 1997), 973 F.Supp. 987.

9. Summary Judgment Summary judgment is appropriate only when no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law. *Celotex v. Catrett*, (1986),477 U.S.317, Syll.1, 106 S, Ct. 2548, 91 L. Ed. 2d 265.

10. "It is not enough to move for summary judgment without supporting the motion an in any way or with a conclusory assertion that the plaintiff has no evidence to prove his case." *Id* at 328.

11. In considering a motion for summary judgment, the Court must construe the evidence in favor of the nonmoving party and give that party the benefit of all inferences that can be drawn therefrom. *Cornett v. Roadway Express, Inc.*, (S.D. Ohio 1988), 704 F. Supp. 804, 806.

12. When the record evidence of this case is reviewed, it is apparent that Defendants fail to meet their burden of demonstrating that "no genuine issues of material fact exist, and summary judgment in favor of the Defendants must be denied.

13. "Government officials who perform discretionary functions are generally entitled to qualified immunity and are protected from civil damages so long as their conduct does not

violate a clearly established statutory or constitutional right of which a reasonable person would have known." *Harlow v. Fitzgerald* (1982), 457 U.S. 800, 818.

14.     Defendant Police Officers McNeil, Schulte and Lt. Bley are not to qualified immunity under the standards set forth in *Harlow v. Fitzgerald* (1982), 457 U.S. 800, applicable to 42 U.S.C. § 1983 claims.

15.     Plaintiff Moore had a clearly established constitutional right under the Fourth Amendment right to be free from unreasonable seizure.

16.     There is no criminal statute nor ordinance which would authorize Plaintiff Moore's arrest for a violation of Defendant Kroger Company's private parking policy on Defendant Kroger Company's private lot.

17.     Therefore, probable cause could not exist for Plaintiff Moore's arrest for violation of Defendant Kroger Company's parking policy and Plaintiff Moore's arrest is legally unsupportable.

18.     The issue of probable cause, which is ordinarily one of fact to be resolved at trial, may be determined as a matter of law upon a record that allows for only one reasonable conclusion. *Evans v. Smith* (Hamilton Cty. 1994),97 Ohio. App.3d 59.

19.     Here the resolution of the issue of probable cause depends on whether the trier of fact believes the Plaintiff Moore or the Defendant Officers and summary judgment is inappropriate. *Id.*

20.     The case of *Dickerson v. McClellan* (6th Cir. 1996), 101 F 3d 1151, cited by the Defendant Officers in support of their assertion that their actions were "reasonable" as a matter of law, involves facts and legal issues bearing no resemblance to the issues at hand, and is inapplicable.

21.    In the case at hand, it is of critical importance that no violation of any public law forms the basis for Plaintiff Moore's arrest by the three Defendant Police Officers.

22.    Because there was no violation of any criminal law, there was no obligation or duty on the part of the Defendant Police Officers to act in their official capacity as police officers in apprehending Plaintiff Moore. Rather, the Defendant Police Officers acted as private agents of Defendant Kroger Company; and there are no facts which could remove their actions from the realm of acting on behalf of the private interests of Defendant Kroger Company's and into the realm of acting solely as police officers protecting a public right and preventing violation of a public statute. *Groom v. Safeway, Inc.* (W.D. Washington 1997), 973 F.Supp. 987; *Evans v. Smith* (Hamilton Cty. 1994),97 Ohio. App.3d 59.

23.    "A private entity acts under color .of state law where it is a willful participant in a joint action with the State or its agents." *Adickes v. S.H. Kress & Co.*(1970), 398 U.S.144.

24.    Here, Defendant Kroger Company did more than cloak itself with the authority of the state, it also hired an instrument of the state's power. Defendant Police Officer McNeil, his uniform, his badge, and his gun were all hired to serve Defendant Kroger Company's private interests.

25.    There is no reason to find that *respondeat superior* should not apply to private employers clothed with the authority of the state, as the same policy considerations which apply to public employers, requiring an official policy or custom resulting in a constitutional violation, do not apply in this context. *Groom v. Safeway, Inc.* (W.D.Wash.,1997), 973 F.Supp. 987, 992.

26.    A private employer of a police officer should be held vicariously liable for the officer's acts committed within the scope of his employment pursuant to *respondeat superior*, particularly where, as here, the Defendant Police Officers were acting *solely* to accomplish the

interests of the private employer. *Groom v. Safeway, Inc.* (W.D.Wash.,1997), 973 F.Supp. 987, 992.

27. An additional independent basis for liability under 42 U.S.C. § 1983 on the part of Defendant Kroger Company exists here, regardless of its liability under the doctrine of *respondeat superior.* Defendant Kroger Company itself engaged in action and inaction jointly and in conspiracy with the three Defendant Police Officers which subjects it to liability under §1983. Defendant Kroger Company is subject to liability on theories of conspiracy, joint action and deliberate indifference and recklessness with regard to its utter and complete failure to train Defendant Police Officer McNeil in how to enforce Defendant Kroger Company's parking policy and how to police its parking lot and deal with its customers, despite its employment agreement with Defendant Officer McNeil. *See Adickes v. S.H. Kress & Co.*(1970), 398 U.S.144; *Groom v. Safeway, Inc.* (W.D.Wash.,1997), 973 F.Supp. 987, 992; *Hooks v. Hooks* (6th Cir. 1985), 771 F.2d 935; 42 U.S.C. §1985. There is evidence of record in this case which supports a finding of liability under any or all of these theories, making summary judgment inappropriate.

28. Plaintiff Moore's state law claims are likewise not appropriate for summary judgment. Defendants' arguments on each of these claims is practically identical to that already made with regard to the Plaintiffs § 1983 claims, namely that the Defendant Officers were acting solely in their capacity as Cincinnati Police Officers enforcing the law when engaged in the conduct at issue.

29. As already discussed, that assertion is contradicted by the record evidence, making summary judgment inappropriate. The Defendant Officers were implementing and enforcing Defendant Kroger Company's private parking policy, and not any criminal law.

30. *Respondeat superior* liability does exist on the part of Defendant Kroger Company for Plaintiff Moore's state tort law claims. *See Evans*, *supra*.

31. With regard to Plaintiff Moore's malicious prosecution claim, malice may be inferred from a lack of probable cause, which is sharply disputed here. *See Evans*, *supra.*

32. Defendant Kroger Company's reliance upon the City of Cincinnati's training of the Defendant Officers to argue that Plaintiffs negligent supervision claim fails as a matter of law is misplaced. The Defendant Officers were not acting as Cincinnati Police Officers to enforce the laws of either Ohio or the City of Cincinnati, but the parking policy of Defendant Kroger Company.

33. Finally, with regard to Plaintiff Moore's claim for intentional infliction of emotional distress, the evidence of Defendant's violation of Plaintiff Moore's rights by an unconstitutional and illegal public arrest and subsequent incarceration are outrageous enough to survive summary judgment. A reasonable juror could find that arresting and incarcerating the Plaintiff for something which the Defendant Officers knew was not an arrestable offense, in a public manner at a place where Plaintiff Moore did business on a regular basis is so outrageous as to justify liability for this tort.

34. All Defendants Motions for Summary Judgment are denied.

/s/ W. Kelly Lundrigan
Robert E. Manley            (0000849)
W. Kelly Lundrigan          (0059211)
Manley Burke LPA
225 West Court Street
Cincinnati, Ohio  45211
(513) 721-5525
Fax (513) 721-4268
email: wkl@manleyburke.com
Attorneys for Plaintiff
Antonio Moore

**CERTIFICATE OF SERVICE**

I hereby certify that the foregoing Affidavit is being served via electronic notification through the court to all parties entitled to service under Rule 5 of the Federal Rules of Civil Procedure on the 8th day of December, 2003.

        /s/ W. Kelly Lundrigan
        W. Kelly Lundrigan

**SERVICE LIST:**

Lawrence E. Barbiere
Schroeder, Maundrell, Barbiere & Powers
11935 Mason Road
Suite 110
Cincinnati, Ohio 45249-3703
lbarbiere@schroederlaw.com

Thomas J. Harris
Assistant City Solicitor
Room 214 City Hall
Cincinnati, Ohio 45202
tom.harris@cincinnati-oh.gov