EXHIBIT B.

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
## WESTERN DIVISION

| | | |
|---|---|---|
| **ANTONIO MOORE** | : | Case No: C-1-02-0430 |
| **3740 Washington Avenue** | | |
| **Cincinnati, Ohio 45229** | : | (Judge Weber) |
| | | |
| **Plaintiff,** | : | |
| | | **POLICE OFFICER MARCUS** |
| | : | **MCNEIL ET AL.'S** |
| **vs.** | | **PROPOSED FINDINGS OF** |
| | : | **FACT AND CONCLUSIONS OF** |
| | | **LAW** |
| **POLICE OFFICER MARCUS** | | |
| **MCNEIL ET AL.** | : | |
| **801 Plum Street** | | |
| **Cincinnati, Ohio 45202** | : | |
| | | |
| **Defendant.** | : | |

## I. FINDINGS OF FACT

1. Plaintiff filed the above captioned case under the above captioned case number against the Kroger Company, City of Cincinnati Police Officer Marcus McNeil, City of Cincinnati Police Officer Michael Paul Schulte and City of Cincinnati Police Lt. Dale Bley concerning an incident which occurred on June 21, 2001 in the parking lot of a Krogers Grocery store located at 477 Kenard Avenue, Cincinnati, Ohio. *(Plaintiff's Complaint).*

2. *On July 21, 2001, at or around 8:00 p.m., Plaintiff parked his truck in a parking space reserved for City of Cincinnati Police Officers on a parking lot owned by Krogers Grocery Stores.* *(Moore Deposition. Pg. 25; McNeil Deposition. Pg. 43).*

3. *Prior to entering the store, Plaintiff was directed to move his truck by Officer Marcus McNeil.* *(Moore Deposition. Pg. 26; McNeil Deposition. Pg. 43).*

4. Officer McNeil was working a special duty detail for the Kroger company. *(McNeil Deposition. Pg. 40).*

5. Officer McNeil had been a City of Cincinnati Police Officer for approximately three years as of July 21, 2001. *(McNeil Deposition. Pg. 6.)*

6. This off-duty detail required Officer McNeil to provide security for the store and the Kroger parking lot. *(McNeil Deposition. Pg.31).*

7. While patrolling the parking lot, Officer McNeil witnessed Plaintiff exit from his truck parked in the parking space reserved for police cars. *(McNeil Deposition. Pg.43).*

8. This was not the first time Plaintiff parked in the reserved parking space for police officers nor was it the first time that Officer McNeil asked Plaintiff not to park there. *(McNeil Deposition. Pgs. 50-51; Moore Deposition. Pg.25).*

9. On previous occasions, Plaintiff simply walked past Officer McNeil without comment when directed by Officer McNeil or other Officers not to park in the reserved parking space. *(McNeil Deposition. Pgs. 50-51; Moore Deposition. Pg. 25).*

10. On June 21, 2001, however, Plaintiff stopped and confronted Officer McNeil about his request. *(McNeil Deposition. Pg. 50).*

11. While expressing his displeasure about Officer McNeil's request, Plaintiff became loud, confrontational and agitated. *(McNeil Deposition. Pg. 43).* Plaintiff's conduct attracted a crowd of approximately ten people who gathered behind Officer McNeil. *(McNeil Deposition. Pg. 47).*

12. Concerned about Plaintiff's conduct and the uncertainty of the crowds reaction to the confrontation he was having with Plaintiff, Officer McNeil called for a backup patrol car. *(McNeil Deposition. Pg.53).*

13. Officer McNeil did not tell Plaintiff that he could not enter the store nor did Officer McNeil approach Plaintiff before back-up officers arrived. *(Officer McNeil Deposition. Pg. 48)*

14. Officer Michael Schulte, responded to the call. *(Schulte Deposition. Pg. 15).* Upon arriving at the Krogers parking lot, Officer Schulte saw a crowd of approximately ten people near Officer McNeil. *(Schulte Deposition. Pg. 18 ).*

15. In an effort to calm Plaintiff and disperse the crowd of approximately 10-12 onlookers, Officer Schulte asked Plaintiff to move his truck and continue on with his affairs. *(Schulte Deposition. Pg. 21-22).*

16. Plaintiff, refused Officer Schulte's request and again became agitated displaying unruly and offensive conduct in front of the gathered crowd. *(Schulte Deposition. Pg. 22,23).*

17. Officer Schulte tried even after Plaintiff's earlier disorderly and offensive conduct to calm Plaintiff. *(Schulte Deposition. Pg. 22,23,26).* Plaintiff, however, continued his unruly and disorderly behavior. *(Schulte Deposition. Pg.24).* For this reason, Officer Schulte placed Plaintiff under arrest for disorderly conduct. (Schulte deposition. Pg. 24).

18. Shortly after Plaintiff was handcuffed and placed in Officer Schulte's patrol car, Sgt. Dale Bley arrived on scene. *(Bley Deposition. Pg. ).* Sgt. Bley, as did Officer Schulte before him, spoke with Plaintiff and asked him to simply move his car

and continue on with his day. (Moore Deposition. Pgs. 55-61). Plaintiff again refused. (*Bley Deposition. Pgs. 57-61*).

19. Plaintiff's disorderly behavior formed the basis for arrest on July 21, 2001 after he parked in the space reserved for police officers. (*Officer Schulte Deposition. Pg. 50*).

## II. CONCLUSIONS OF LAW

1. Fed. R. Civ. Pro. 56. states that summary judgment is appropriate when there is no genuine issue of material fact for trial, and the moving party is entitled to judgment as a matter of law.

2. In deciding a motion for summary judgment, the court must view the evidence and draw all reasonable inferences in favor of the non-moving party. *See. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 474 U.S. 574, 587 (1986),* The judge is not to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial. *Anderson v. Liberty Lobby, Inc. 477 U.S. 242, 249 (1986).*

3. A genuine issue for trial exists when there is sufficient "evidence on which the jury could reasonably find for the plaintiff." *Id. at 252.* Because no genuine issue of material fact exits in this case, summary judgment must be granted in favor of Officer McNeil et al., for the various alleged 42 U.S.C. Section 1983, 1985, 1988, First Amendment retaliation  claims and the pendent state law claims.

4. All governmental officials who perform discretionary functions are generally entitled to qualified immunity and are protected from civil damages so long as their conduct does not violate a clearly established statutory or constitutional right

of which a reasonable person would have known." *Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982).*

5. In analyzing a 42 U.S.C. Section 1983 claim, courts must first determine if the plaintiff has alleged a violation of a clearly established constitutional right. *Dickerson v. McClellan, 101 F.3d 1151, 1158 (6th Cir.1996).*

6. If the court determines that an established constitutional right was violated, the court must then discern whether or not the plaintiff has alleged sufficient facts supported by sufficient evidence to indicate that what the official did was objectively unreasonable in light of the clearly established constitutional rights. *Dickerson v. McClellan, 101 F.3d 1151, 1158 (6th Cir.1996); Anderson v. Creighton, 483 U.S. 635,640 (1987); Saucier v. Katz, 533 U.S. 194, 200-201 (2001).*

7. The Officers had probable cause to arrest Plaintiff for his disorderly conduct on July 21, 2001. Therefore they did not violate an established constitutional right afforded to Plaintiff.

8. Disorderly Conduct as defined by Ohio Revised Code 2917.11(A)(5) is conduct which creates a condition that is physically offensive to persons or that presents a risk of physical harm to persons or property, by any act that serves no lawful and reasonable purpose of the offender.

9. Officers acting under color of state law cannot arrest a person without probable cause. *Monroe v. Pape, 81 S.Ct. 473 (1961).*

10. Probable cause is defined as "a reasonable grounds for belief, supported by less than *prima facie* proof but more than mere suspicion." *United States v. Bennett, 905 F.2d 931, 934 (6th Cir. 1990).*

11. Probable cause exists if there can be determined that there was a "fair probability" at the time of the arrest that the person arrested committed an offense. *Sherwood v. Muldhill, 113 F.3d 396, (3rd Cir. 1997).*

12. This standard is established if the facts within the arresting officers knowledge would lead a **reasonable** officer in the same or similar situation to determine that a crime has been or is being committed by the person arrested. *Orsatti v. New Jersey State Police, 71 F.3d 482 (3rd Cir. 1995).*

13. Plaintiff was not engaged in First Amendment protected speech as defined in *Brandenburg v. Ohio 395 U.S. 444, 447 (1969).* Plaintiff's actions served no lawful purpose as defined by O.R.C. 2917.11(A)(5). Therefore the Officers did not violate a constitutionally protected right.

14. A conspiracy pursuant to 42 U.S.C. Section 1985 requires a showing of an agreement between two or more persons designed to harm another person by some unlawful action. *Hooks v. Hooks, 771 F.2d 935 (6th Cir. 1985).* Plaintiff was arrested because of his disorderly behavior after being asked to move his truck pursuant to the disorderly conduct statue R.C. 2917.11(A).

15. The Officers did not violate an established constitutional law pursuant to 42 U.S.C. Section 1983 or Section 1985. As such, any claim for attorneys fees pursuant to 42 U.S.C Section 1988 are invalid.

16. If the Officers violated a constitutionally protected right afforded Plaintiff, the Officers are entitled to summary judgment as a matter of law concerning Plaintiffs claims under 42 U.S.C Section 1983, Section 1985, Section 1988, First Amendment retaliation claims and the pendent state law claims because the Officer's actions were not unreasonable. *Saucier v. Katz, 533 U.S. 194, 200-201 (2001).*

17. Plaintiff's pendent state law claims should be dismissed for lack of subject matter jurisdiction.

18. "Generally, if the federal claims are dismissed before trial, the state claims should be dismissed as well." *Taylor v. First of Am. Bank-Wayne, 973 F.2d 1284,1287 (6th Cir. 1992).*

19. For the foregoing reasons, Officer Marcus McNeil, Officer Michael Schulte and Lt. Dale Bley are entitled to summary judgment as a matter of law on all of Plaintiff's claims raised herein.

Respectfully submitted,

Julia L. McNeil (0043535)
City Solicitor


/s/ Thomas J. Harris
Thomas J. Harris (0065946)
Assistant City Solicitor
Room 214, City Hall
Cincinnati, Ohio 45202
(513) 352-3321
Fax: (513) 352-1515
Email: tom.harris@cincinnati-oh.gov

<u>**CERTIFICATE OF SERVICE**</u>

I hereby certify that a true copy of the foregoing Motion has been sent by regular

U.S. Mail to Margaret Allen, Esq. Manley Burke, 225 W. Court Street, Cincinnati, Ohio

45202, Lawrence Barbiere, Esq. Schroeder, Maundrell, Barbiere & Powers, 11935 Mason

Road, Suite 110, Cincinnati, Ohio 45249, this 19th day of September 2003.

/s/ Thomas J. Harris_____
Thomas J. Harris (0065946)
Assistant City Solicitor