**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**WESTERN DIVISION**

ANTONIO MOORE,

        Plaintiff,

     v.                               C-1-02-430

KROGER COMPANY, et al.,

        Defendants.

## <u>ORDER</u>

This matter is before the Court upon motions for summary judgment filed by defendants

The Kroger Company (Kroger) and the individual defendants Marcus McNeil, Michael Schulte

and Dale Bley (doc. 15, 18). Plaintiff opposes the motions and requests oral argument (doc. 23).

Also before the Court is plaintiff's unopposed motion to file proposed findings of fact and

conclusions of law and highlighted responses to defendants' filings out of time (doc. 28), which

the Court hereby grants.

### I. Introduction

Plaintiff Antonio Moore brings this action against defendants Kroger, police officers

Marcus McNeil and Michael Schulte, and retired police supervisor Dale Bley. The case arises

out of an alleged unlawful arrest and prosecution of plaintiff. Plaintiff makes the following

allegations in the complaint. On June 21, 2001, defendant McNeil was on duty as a special duty

officer of defendant Kroger at its store located on Kenard Avenue in Cincinnati, Ohio. On that

same date at approximately 8:00 p.m., plaintiff parked in a parking space near the door of the

Kroger store which was marked with a sign stating, "Reserved for Police Cars." After plaintiff

exited his vehicle, defendant McNeil demanded that plaintiff move his vehicle and stopped

plaintiff from entering the store. When plaintiff explained that he needed to make a deposit

before the bank inside the store closed, McNeil requested more uniformed Cincinnati police

officers to respond to the scene. Defendant Schulte responded to the request and threatened to

arrest plaintiff if he did not move his vehicle, which plaintiff refused to do. Plaintiff was

handcuffed and placed under arrest. Thereafter, while plaintiff was handcuffed and seated in the

back of the police cruiser, defendant Bley demanded that plaintiff move his vehicle or plaintiff

would be arrested. Defendant Schulte transported plaintiff to the Hamilton County Justice

Center, where he was photographed, fingerprinted, and incarcerated for several hours before

being released on bond. Plaintiff was charged with disorderly conduct. The Municipal Court

Judge presiding over plaintiff's trial dismissed the charge for lack of sufficient evidence after the

State had presented its case.

   Plaintiff brings the following claims for relief: (1) Arrest without probable cause in

violation of plaintiff's Fourth Amendment right to be free from unreasonable seizure (Count

One); (2) Malicious prosecution in violation of plaintiff's First and Fourth Amendment rights

(Count Two); (3) Retaliation in violation of plaintiff's First Amendment rights (Count Three);

(4) Intentional infliction of emotional distress (Count Four); (5) False imprisonment (Count

Five); (6) Tortious interference with business relations (Count Six); (7) Negligent supervision,

and Conspiracy in violation of 42 U.S.C. § 1985 (separate claims but both designated in the

Complaint as Count Seven); (8) Vicarious liability on the part of Kroger based on an agency

relationship between defendant Schulte and defendant Kroger (Count Eight); (9) Violation of 42

U.S.C. § 1983 (Count Nine); (10) Violation of 42 U.S.C. § 1988 (Count Ten); and (11) Punitive

damages (Count Eleven).

## II. Motions for summary judgment

Defendant Kroger moves for summary judgment on the claims against it on the ground

that it is not a state actor and therefore cannot be held liable pursuant to 42 U.S.C. §§ 1983, 1985

or 1988. Kroger asserts that defendants Schulte and Bley were not employees of Kroger, and it is

not responsible for the actions of defendant McNeil in connection with plaintiff's arrest because

McNeil was acting solely within the scope of his authority as a police officer of the City of

Cincinnati. Defendant also contends that plaintiff has failed to make a sufficient showing to

establish the existence of the elements necessary to establish his case with respect to each federal

and state claim. Defendant further argues that if the Court dismisses the federal claims against

Kroger, the state law claims should be dismissed without prejudice or, in the alternative,

summary judgment should be granted on those claims as well.

The individual defendants move for summary judgment on the federal claims against

them on the ground that they are entitled to qualified immunity because (1) they did not violate a

clearly established constitutional right of plaintiff in that they had probable cause to arrest him,

and (2) their actions were not unreasonable. Defendants also claim that there is no valid First

Amendment retaliation claim or claim for tortious interference with a business relationship.

Defendants further allege that there is no evidence of a conspiracy to inflict harm upon plaintiff

through some unlawful action. Finally, defendants contend that because plaintiff's substantive

claims are without merit, plaintiff cannot recover attorney fees pursuant to § 1988 and the

supplemental state law claims should be dismissed for lack of subject matter jurisdiction.

In response to defendants' motions, plaintiff disputes that he was arrested for engaging in

3

disorderly conduct and asserts that he was instead arrested for violation of Kroger's parking policy. Plaintiff claims that an arrest for violation of that policy is not authorized by any criminal statute or ordinance and therefore was not supported by probable cause. Plaintiff claims that at the very least, there is a disputed question of fact for the jury to resolve as to whether the defendant officers had probable cause to arrest him. Plaintiff further alleges that Kroger is a state actor for purposes of liability under § 1983. Plaintiff claims that because there is no legal authority for plaintiff's arrest, the individual defendants' actions were solely on behalf of the private interests of Kroger while clothed in the authority of state law. Plaintiff asserts that whether viewed from a standpoint of "*respondeat superior*, affirmatively engaging in joint action or a conspiracy with the officers, or from a standpoint of failing to adequately train the off-duty officers who are employees of Krogers (sic)", Kroger is not entitled to summary judgment. As to plaintiff's state law claims, plaintiff asserts that genuine issues of material fact exist as to each of these claims and it is clear that respondeat superior liability does exist as to such claims.

### III. Request for oral argument

The legal and factual issues involved in this case are not complex and they have been fully briefed by the parties. Pursuant to Rule 7.1 of the Local Rules of the United States District Court for the Southern District of Ohio, the Court finds that oral argument is not necessary and plaintiff's request for same is denied.

### IV. Undisputed facts

1.    On June 21, 2001, plaintiff went to a Kroger store for the purpose of making a deposit at the Fifth/Third Bank located inside the store.

2.  Plaintiff regularly visited this particular Kroger store. He had parked in a spot at the store parking lot owned by Kroger which was marked "Reserved for Police Cars" on prior occasions. Plaintiff had been told once by Officer McNeil and once by another officer that he should not park in that spot. On those prior occasions, no discussions ensued with the officer present, plaintiff was not arrested, and his truck was not towed.

3.  There is nothing written on any of the signs around the parking spot indicating that if someone parked there they would be towed or arrested.

4.  On June 21, 2001, McNeil was working a detail assignment at Kroger, which is off-duty work that a Cincinnati police officer does for an establishment which requires a police officer presence. McNeil was in full Cincinnati police uniform consisting of a duty weapon, night stick and radio. McNeil's duties as an off-duty officer of Kroger consisted of basic police patrol work.

5.  McNeil considers himself an employee of Kroger while working the off-duty Kroger detail, and he is paid by Kroger for that work. McNeil was not told anything about rules and regulations of Kroger while doing detail work for Kroger. McNeil never received a Kroger employee manual instructing him in any rules and regulations of Kroger.

6.  McNeil had been a police officer with the City of Cincinnati for about three years and had worked Kroger details for approximately one year as of June 2001. Prior to becoming a Cincinnati police officer, he had received 22 weeks of training in all aspects of law enforcement, including field training and classroom training. Part of that training included training on how to effectuate an arrest and training in the law of probable cause. McNeil had also received training related to citations for non-moving violations.

7.   On June 21, 2001, plaintiff pulled his truck into the reserved space at the Kroger lot. Prior to entering the store, Officer McNeil directed plaintiff to move his truck.

8.   The parties dispute what occurred next. The individual defendants contend that McNeil requested plaintiff to move his vehicle; when plaintiff did not comply with his request, a dialogue ensued between plaintiff and McNeil which lasted a few minutes; plaintiff became loud, confrontational, and agitated; a crowd began to gather behind McNeil and to shout in a profane way that plaintiff did not have to follow McNeil's directive; McNeil eventually called dispatch for backup, reporting that he had a "disorderly subject"; and after Schulte arrived at the scene and McNeil had told him about plaintiff's actions, Schulte told McNeil plaintiff could be charged with disorderly conduct. Plaintiff disputes each of these contentions.

9.   Officer Schulte asked plaintiff to move his truck and continue on with his affairs. Plaintiff refused Officer Schulte's request. Defendants contend that Officer Schulte placed plaintiff under arrest for disorderly conduct, which plaintiff denies. Plaintiff avers that he was arrested for parking in the reserved spot.

10.   Shortly after Schulte had handcuffed plaintiff and placed him in the back of Schulte's vehicle, defendant Bley arrived on the scene. Bley made an offer to plaintiff to resolve the matter without an arrest by simply moving his truck.

11.   Defendant Schulte transported plaintiff to the Hamilton County Justice Center where he was photographed, fingerprinted, and incarcerated for several hours before being released on bond.

6

12.   Officer McNeil did not ask anyone from Kroger to sign a complaint and did not ask

      Kroger if it wanted to have plaintiff's vehicle towed. There was no Kroger manager

      outside the store during this incident with whom McNeil spoke about the incident.

13.   Plaintiff was charged with a violation of Ohio Revised Code § 2917.11(A), a fourth

      degree misdemeanor, for "engaging in conduct that was physically offensive and served

      no lawful purpose."

14.   On June 24, 2001, after the State had presented its evidence, the trial judge dismissed the

      charge against plaintiff pursuant to Ohio Criminal Rule 29, which provides that the Court

      shall acquit a defendant if the evidence is insufficient to sustain a conviction.

15.   The violation of Kroger's parking policy occurred in its private parking lot and was not a

      violation of any state law or city ordinance for which arrest and criminal charges could

      lie.

### V. Applicable law

#### A. Summary Judgment Standard

Fed. R. Civ. P. 56 allows summary judgment to secure a just and efficient determination

of an action. This Court may only grant summary judgment as a matter of law when the moving

party has identified, as its basis for the motion, an absence of any genuine issue of material fact.

*Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986).

The party opposing a properly supported motion for summary judgment "may not rest

upon the mere allegations or denials of his pleading, but . . . must set forth specific facts showing

that there is a genuine issue for trial." *Anderson v. Liberty Lobby*, 477 U.S. 242, 248 (1986)

(quoting *First Nat'l Bank of Arizona v. Cities Serv. Co.*, 391 U.S. 253 (1968)). The evidence of

the nonmovant is to be believed and all justifiable inferences are to be drawn in his favor. *Anderson*, 477 U.S. at 255 (citing *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 158 (1970)).

The court is not to weigh the evidence and determine the truth of the matter but is to decide whether there is a genuine issue for trial. *Anderson*, 477 U.S. at 249. There is no genuine issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party. *Id.* at 249 (citing *Cities Serv.*, 391 U.S. at 288-289). If the evidence is merely colorable, *Dombrowski v. Eastland,* 387 U.S. 82, 84 (1967), or is not significantly probative, *Cities Serv.*, 391 U.S. at 290, judgment may be granted. *Anderson*, 477 U.S. at 249.

## B. Qualified immunity

Government officials performing discretionary functions are generally immune from liability for civil damages so long as their actions do not violate clearly established statutory or constitutional rights of which a reasonable person would have known. *Harlow v. Fitzgerald,* 457 U.S. 800, 818 (1982). The contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right. *Anderson v. Creighton,* 483 U.S. 637, 640 (1987). That is, "in the light of pre-existing law the unlawfulness must be apparent." *Id.* "If officials of reasonable competence objectively could disagree on the law, immunity should be recognized." *Cameron v. Seitz,* 38 F.3d 264, 272 (6th Cir. 1994)(citing *Mumford v. Zieba,* 4 F.3d 429, 432 (6th Cir. 1993)). The burden is on the plaintiff to allege and prove that the defendant violated a clearly established right. See *Tucker v. Callahan,* 867 F.2d 909, 913-14 n. 3 (6th Cir. 1989).

## C. § 1983

To establish a claim under § 1983, the plaintiff must establish that he was deprived of a right secured by the Constitution and laws of the United States and that the deprivation was caused by a person acting under color of state law. *Ellison v. Garbarino,* 48 F.3d 192, 194 (6th Cir. 1995). A private party qualifies as a state actor and may be held liable pursuant to § 1983 where that party has conspired with state officials to violate an individual's constitutional rights. *Memphis, Tn. Area Local, American Postal Workers Union, AFL-CIO v. City of Memphis,* 361 F.3d 898, 905 (6th Cir. 2004)(citing *Cooper v. Parrish,* 203 F.3d 937, 952 n. 2 (6th Cir. 2000); *Moore v. City of Paducah,* 890 F.2d 831, 834 (6th Cir. 1989)). The same is true where the private party has willfully participated in joint action with state agents. *Id.* (citing *Dennis v. Sparks,* 449 U.S. 24, 27-28 (1980); *United States v. Price,* 383 U.S. 787 (1966)).

The doctrine of respondeat superior does not apply in § 1983 lawsuits to impute liability onto supervisory personnel, see *Monell v. Dep't of Social Servs. of New York,* 436 U.S. 658, 691-95 (1978), unless it is shown "that the supervisor encouraged the specific incident of misconduct or in some other way directly participated in it." *Bellamy v. Bradley,* 729 F.2d 416, 421 (6th Cir.1984); see also *Bass v. Robinson,* 167 F.3d 1041, 1048 (6th Cir. 1999)(citing *Leach v. Shelby County Sheriff,* 891 F.2d 1241, 1246 (6th Cir. 1989))("Supervisory liability under § 1983 does not attach when it is premised on a mere failure to act" but "must be based on active unconstitutional behavior" and "upon more than a mere right to control employees.").

When addressing an alleged failure to train police officers in the context of imposing § 1983 liability on a municipality, the United States Supreme Court has held that "the inadequacy of police training may serve as the basis for § 1983 liability . . . only where the failure to train

9

amounts to deliberate indifference to the rights of persons with whom the police come into contact." See *Cherrington v. Skeeter,* 344 F.3d 631, 646 (6th Cir. 2003)(citing *City of Canton v. Harris,* 489 U.S. 378, 388 (1989)(footnote omitted)). The Sixth Circuit has stated, "Only where a municipality's failure to train its employees in a relevant respect evidences a 'deliberate indifference' to the rights of its inhabitants can such a shortcoming be properly thought of as a city 'policy or custom' that is actionable under § 1983." *Id.* (citing *City of Canton,* 489 U.S. at 389).

An individual who brings a wrongful arrest claim under § 1983 must prove that the police lacked probable cause for the arrest. *Keyes v. Ervin,* 92 Fed.Appx. 232, 236 (6th Cir. 2004)(not published in Fed. Reporter)(citing *Fridley v. Horrighs,* 291 F.3d 867, 872 (6th Cir. 2002), *cert. denied,* 537 U.S. 1191 (2003)). For purposes of federal law, probable cause to arrest and prosecute is based on the "facts and circumstances within the officer's knowledge that are sufficient to warrant a prudent person ... in believing ... that the suspect has committed, is committing, or is about to commit an offense." *Hinchman v. Moore,* 312 F.3d 198, 204 (6th Cir. 2002) (citing *Criss v. City of Kent,* 867 F.2d 259, 262 (6th Cir. 1988)). When a lack of probable cause is the underlying issue in a § 1983 case, "the question of whether probable cause existed is left for the jury, unless there is only one reasonable determination possible." *Keyes,* 92 Fed. Appx. at 236 (citing *Crockett v. Cumberland College,* 316 F.3d 571, 581 (6th Cir. 2003); *Pyles v. Raisor,* 60 F.3d 1211, 1215 (6th Cir. 1995)).

10

### D. Section 1985(3)

Section 1985(3) states, in pertinent part,

> If two or more persons in any State or Territory conspire . . . for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws . . . [and] cause to be done, any act in furtherance of the object of such conspiracy, whereby another is injured in his person or property, or deprived of having and exercising any right or privilege of a citizen of the United States, the party so injured or deprived may have an action for the recovery of damages occasioned by such injury or deprivation, against any one or more of the conspirators.

The elements of a claim under § 1985(3) are: "(1) a conspiracy; (2) for purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws; and (3) an act in furtherance of the conspiracy; (4) whereby a person is either injured in his person or property or deprived of any right or privilege of a citizen of the United States." *Conklin v. Lovely,* 834 F.2d 543, 548 (6th Cir. 1987)(citing *United Bhd. of Carpenters, Local 610 v. Scott,* 463 U.S. 825 (1983)).

### E. First Amendment

In determining whether speech is constitutionally protected for First Amendment purposes, the Court must first ascertain whether the plaintiff's speech may be fairly characterized as constituting speech on a matter of public concern. *Rahn v. Drake Center, Inc.,* 31 F.3d 407, 411 (6th Cir. 1994). Whether speech addresses a matter of public concern is a question of law. *Id.* A matter of public concern generally involves "a matter of political, social, or other concern to the community." *Jackson v. Leighton ,* 168 F.3d 903, 909 (6th Cir. 1999)(citing *Connick v. Myers,* 461 U.S. 138, 146 (1983)).

11

## VI. Opinion

### A. Claims against the individual defendants

Upon careful review of the record, the Court finds that the defendant police officers are not entitled to summary judgment on plaintiff's claims against them, with the exception of plaintiff's First Amendment retaliation claim. (Count Three). In support of this claim, plaintiff alleges that he was arrested and charged with a crime for refusing to move his car when no law required him to do so. The mere act of parking in a lawful spot and refusing to move when directed to do so does not qualify as constitutionally protected speech. Plaintiff has not alleged any additional facts which would support a finding that he engaged in protected speech as required in order to establish a violation of his First Amendment rights. The individual defendants are therefore entitled to summary judgment on this claim.

The record discloses that there are genuine issues of material fact as to the reason for plaintiff's arrest and whether there was probable cause for the arrest. There are likewise genuine issues of material fact underlying resolution of the issue of whether the individual defendants' actions were reasonable in light of clearly established Fourth Amendment law. Finally, there are genuine issues of fact as to whether the individual defendants conspired to violate plaintiff's clearly-established Fourth Amendment rights. Resolution of these issues requires further development of the record and credibility determinations which the Court is not authorized to make on summary judgment. Rather, it is for the jury to make the necessary credibility determinations and resolve the contested factual issues underlying resolution of plaintiff's claims. In light of the existence of numerous disputed issues of material fact, the individual defendants are not entitled to summary judgment on plaintiff's federal claims on the basis of

12

qualified immunity. Accordingly, defendants' motion for summary judgment is denied as to plaintiff's Fourth Amendment claim brought under § 1983 (Counts One and Nine), plaintiff's § 1985(3) conspiracy claim (Count Seven, p. 11 of the Complaint), and plaintiff's claim for attorney fees under 42 U.S.C. § 1988 (Count Ten).

The individual defendants have not addressed the merits of plaintiff's state law claims.[1] They simply urge the Court to dismiss those claims for lack of subject matter jurisdiction based on plaintiff's alleged failure to present a legitimate claim under federal law. Because the Court has determined that the individual defendants are not entitled to summary judgment on certain federal claims asserted by plaintiff, the Court will not dismiss the state law claims for lack of supplemental jurisdiction.

### B. Claims against defendant Kroger

The Court finds that defendant Kroger is entitled to summary judgment on plaintiff's claims under §§ 1983, 1985 and 1988. The law of this Circuit is clearly established that supervisory liability cannot be imposed under § 1983 based on a theory of respondeat superior. Plaintiff has not alleged any facts to show that Kroger engaged in active unconstitutional behavior which led to a deprivation of his constitutional rights. Nor has plaintiff alleged any facts which demonstrate that Kroger conspired with the individual defendants or acted jointly with them to deprive plaintiff of his constitutional rights. Finally, plaintiff has not come forward with binding or persuasive authority to support the proposition that Kroger can be held liable for the individual defendants' actions on a failure to train theory, and he has not produced evidence

---

[1] Although it is not clear from the complaint, plaintiff apparently brings his malicious prosecution claim under state law. (See opposing memo, p. 15). The Court will therefore treat the malicious prosecution claim as a state law claim for summary judgment purposes.

13

to show that a failure by Kroger to train defendant McNeil in any pertinent respect led to a deprivation of plaintiff's constitutional rights. For these reasons, defendant Kroger is entitled to summary judgment on plaintiff's federal claims against it. (Counts One, Three, Seven, Nine and Ten).

Defendant Kroger contends that plaintiff's state law claims should be dismissed for lack of subject matter jurisdiction based on the absence of a valid federal claim against it. Defendant also argues that plaintiff's state law claims should be dismissed because plaintiff has not presented sufficient evidence to sustain those claims.

The Court finds that dismissal of the state law claims against Kroger under 28 U.S.C. § 1367(c) based on a lack of subject matter jurisdiction is not warranted since the federal claims against the individual defendants remain pending. Defendant Kroger is entitled to summary judgment on the tortious interference with business relations claim since that claim is based solely on the actions of defendant Schulte, and plaintiff has not alleged facts to support a finding that Schulte was acting as an agent of Kroger at the time of plaintiff's arrest. As to the remaining state law claims, the Court finds that there are genuine issues of material fact regarding the merits of those claims and Kroger's vicarious liability for the acts of defendant McNeil so as to preclude a grant of summary judgment in Kroger's favor on such claims. Kroger contends that it cannot be held vicariously liable for the alleged violations of state law by defendant McNeil because McNeil's actions were taken solely in his capacity as a Cincinnati police officer. The record does not clearly establish Kroger's allegation and, in fact, McNeil concedes that he considers himself to be an employee of Kroger when he is working the special duty detail at the Kroger store on Kenard Avenue. Whether McNeil's actions at the time of plaintiff's arrest were

14

taken in his capacity as an employee of Kroger is a matter for the jury to determine based on the circumstances surrounding the arrest.

### VII. Conclusion

In accordance with the foregoing, plaintiff's unopposed motion to file proposed findings of fact and conclusions of law and highlighted responses to defendants' filings out of time (doc. 28) is **GRANTED.** Defendant Kroger's motion for summary judgment (doc. 15) is **GRANTED** as to plaintiff's federal claims against Kroger and plaintiff's claim against Kroger for tortious interference with business relations (Counts One, Three, Six, Seven (§ 1985 conspiracy claim), Nine and Ten) and **DENIED** as to plaintiff's remaining claims (Counts Two, Four, Five, Seven (negligent supervision), Eight, and Eleven). The individual defendants' motion for summary judgment (doc. 18) is **GRANTED** with respect to plaintiff's First Amendment retaliation claim (Count Three) and **DENIED** with respect to the remaining claims against them. This case will proceed to trial in accordance with the schedule established by the Court.

**IT IS SO ORDERED.**

S/ Herman J. Weber
HERMAN J. WEBER
SENIOR JUDGE, UNITED STATES DISTRICT COURT

J:\HJWA\02-430civrtsmsj.wpd

15